CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC., a Nevada corporation; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST, an Illinois limited liability company; DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:25-cv-3643<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br><br>2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>3. **COMMON COUNT: GOODS AND SERVICES RENDERED**<br><br>4. **ACCOUNTING**<br><br>**DEMAND FOR TRIAL BY JURY** |

## COMPLAINT

Plaintiff Northern Light Medical Management, LLC, for its Complaint against Defendants American Healthcare Systems Corp., Inc., Waukegan Illinois Hospital Company, LLC, d.b.a. Vista Medical Center East, and Does 1 through 50, inclusive (collectively, "Defendants"), alleges as follows:

## THE PARTIES

1.     Plaintiff Northern Light Medical Management, LLC ("NLMM" or "Plaintiff") is, and at all relevant times mentioned herein was, a limited liability company organized and existing under the laws of the State of Wyoming, with its principal place of business in Hollywood, Florida.

2.     Defendant American Healthcare Systems Corp., Inc. ("AHSC") is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Nevada, with its principal address at 505 North Brand Blvd., Suite 1110, Glendale, California 91203.

3.     Defendant Waukegan Illinois Hospital Company, LLC, d.b.a. Vista Medical Center East ("Vista") is, and at all relevant times mentioned herein was, a limited liability company organized and existing under the laws of the State of Illinois, with its principal address at 505 North Brand Blvd., Suite 1200, Glendale, California 91203. Plaintiff is informed and believes, and on that basis alleges, that Vista is a wholly owned subsidiary of AHSC, and that AHSC maintains complete or substantially complete ownership and control over Vista's management, operations, finances, and decision-making processes, such that Vista is a mere instrumentality or alter ego of AHSC. For instance, Vista's managers are Faisal Gill, Jonathan E. Burket, and Mike Sarian, each of whom maintains an address at AHSC's corporate headquarters. Faisal Gill serves as AHSC's corporate Secretary, Mike Sarian serves as AHSC's Chief Executive Officer, and Jonathan E. Burket acts as AHSC's registered agent for service of process and was the signatory of AHSC's initial corporate filings and its most recent Statement of Information filed with the California

Secretary of State on June 14, 2024.[1] Moreover, in its dealings with NLMM, AHSC consistently held itself out as liable for Vista's debts and obligations.

4.     Plaintiff is informed and believes, and on that basis alleges, that Defendants Does 1 through 50, inclusive, are individually and/or jointly liable to Plaintiff for the conduct alleged herein. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 50, inclusive, are unknown to Plaintiff at this time. Accordingly, Plaintiff sues Defendants Does 1 through 50, inclusive, by fictitious names and will amend this Complaint to allege their true names and capacities once ascertained.

5.     Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times mentioned herein, Defendants, and each of them, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents or employees of the others in doing the acts complained of herein, each and all acting within the course and scope of the agency of and/or employment by the others, each and all acting in concert one with the other and all together.

6.     Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times mentioned herein, Defendants, and each of them, were, and are, the agents, servants, alter egos and/or employees of each of the other Defendants, and all the things alleged to have been done by Defendants were done in the capacity of and as agent, servant, alter ego and/or employee of and for the other Defendants, with their knowledge, approval, and ratification.

---

[1] AHSC's website identifies these same three individuals—Michael Sarian (Chairman and CEO), Jonathan Burket (Chief Compliance Officer), and Faisal Gill (Chief Legal Officer)—as comprising the senior executive leadership of AHSC. *See* American Healthcare Systems, *Our Corporate Leadership Team*, https://www.amhealthsystems.com/home/our-corporate-leadership-team/ (last visited Apr. 23, 2025).

7.    Without limiting the foregoing, Plaintiff is informed and believes and, based thereon alleges, that there is such a unity of interest and ownership that the individuality, or separateness, of AHSC and Vista has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances of this case, sanction a fraud or promote injustice.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy far exceeds $75,000, exclusive of interest and costs. Plaintiff is a limited liability company organized under the laws of the State of Wyoming with its principal place of business in the State of Florida; Defendant AHSC is a corporation organized under the laws of the State of Nevada with its principal place of business in the State of California; and Defendant Vista is a limited liability company organized under the laws of the State of Illinois with its principal place of business in the State of California. Plaintiff is informed and believes, and on that basis alleges, that none of Defendant Vista's members are citizens of Wyoming or Florida.

9.    This Court has personal jurisdiction over all Defendants because Defendants reside in California and/or transact business in California, and maintain their principal places of business at 505 North Brand Blvd., Suite 1110 and Suite 1200, Glendale, California 91203.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because one or more of the parties are located in or transact their affairs in this District, Defendants AHSC and Vista maintain their principal places of business in this District, and a substantial part of the acts, events, or omissions giving rise to the claims alleged in this Complaint occurred in this District.

## **GENERAL ALLEGATIONS**

11.     Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs, inclusive, of this Complaint as though fully set forth herein.

12.     Plaintiff NLMM is, and at all relevant times mentioned herein was, a Florida-based medical practice management company specializing in the administration, staffing, and delivery of comprehensive hospital-based radiology services. Through its unique partnership model, NLMM contracts with hospitals, outpatient facilities, and medical centers nationwide, including facilities operated by Defendants, to establish and oversee specialized radiology practices that deliver diagnostic imaging interpretations and interventional radiology procedures.

13.     Under these arrangements, NLMM—whether directly or through its affiliated managed organizations—recruits, employs, and manages board-certified radiologists who perform diagnostic, interventional, neuro-interventional, and other radiological services for patients of the contracted facilities. NLMM also provides critical support services, including physician credentialing, practice oversight, quality assurance, regulatory compliance, billing, and collections, to facilitate efficient and effective patient care and ensure seamless integration with the contracted facilities' operations.

14.     Defendant AHSC is, and at all relevant times mentioned herein was, a healthcare management organization that owns, operates, and manages hospitals and outpatient healthcare facilities in multiple states. AHSC's primary business involves acquiring distressed and insolvent hospitals, medical facilities, and healthcare providers nationwide, and thereafter providing management and operational oversight services to these entities.

### **The Agreement and its Terms**

15.     On or about September 18, 2024, Plaintiff NLMM and Defendant AHSC entered into a written Master Services Agreement for Hospital-Based Radiology and

related Facility Addenda (the "Agreement").[2] A true and correct copy of the Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

16.   Under the Agreement, NLMM agreed to staff, manage, and oversee full-service hospital-based radiology at two separate facilities owned and operated by AHSC: Vista Medical Center East in Waukegan, Illinois, and Randolph Health Hospital ("Randolph") in Asheboro, North Carolina.

17.   Specifically, NLMM undertook to provide AHSC with a full complement of hospital-based radiology services at Vista and Randolph, which included, among other things: (i) continuous onsite and remote radiological examinations and interpretations, such as X-Ray, CT, MRI, ultrasound, nuclear medicine, and mammography; (ii) remote radiological consultations for the facilities' medical staff; (iii) recruiting and maintaining physicians with appropriate credentials and qualifications, including board certifications in radiology; (iv) oversight of radiology protocols, quality control, and compliance monitoring; (v) facilitating patient informed-consent procedures; (vi) active participation in case reviews, tumor boards, and subspecialty conferences; (vii) cooperation and integration with the medical, nursing, and administrative departments of AHSC's facilities; (viii) appointment and maintenance of qualified Medical Directors of Radiology Services at each facility; (ix) continuous staffing of qualified radiologists providing 24-hour coverage, seven days per week; and (x) ensuring compliance with applicable federal, state, and local laws, accrediting body standards, and AHSC's own internal bylaws, regulations, policies, and compliance program requirements. (*See* Ex. A §§ 2.01–2.03.)

18.   In exchange for NLMM's provision of these services, AHSC agreed under the Agreement to compensate NLMM pursuant to an established invoicing and payment procedure. Specifically, AHSC agreed to pay NLMM monthly amounts

---

[2] Pursuant to Section 1.06 of the Agreement, Vista is deemed to have joined the Agreement, and is therefore bound by its terms. (*See* Ex. A § 1.06.)

based upon an agreed per-interpretation rate multiplied by applicable interpretation volumes and reconciled regularly through periodic reconciliation processes known as "True-Ups." (*Id.* § 5.02(A)(6).)

19. Under Section 5.02(A)(1) of the Agreement, AHSC was required to remit payments to NLMM on a monthly basis, with payments due on the first day of each calendar month, except that the initial payment was due no later than fifteen days prior to commencement of services.

20. For the first four monthly invoices applicable to each facility, the number of radiological interpretations invoiced (the "Interpretation Count") was expressly fixed according to historical averages as set forth in each facility's financial proforma. (*Id.* § 5.02(A)(3).) For instance, the parties agreed that for Vista, the Interpretation Count for each of the first four monthly invoices was fixed at a historical average of 5,798.83 interpretations per month, resulting in an initial fixed invoice amount of $183,533.08 per month. (*Id.* at 29.) Beginning with the fifth invoice, AHSC's monthly payments were to be adjusted based on the actual average monthly Interpretation Count from the two preceding months. (*Id.* § 5.02(A)(3).)

21. Additionally, under Section 5.03, AHSC agreed to reimburse NLMM for certain designated "pass-through" costs, specifically defined as necessary costs incurred by NLMM that exceeded the anticipated operational cost allowances detailed in the Agreement's proformas.

22. These pass-through costs included, but were not limited to: (i) hospital credentialing fees, to the extent AHSC failed or was unable to waive such fees; (ii) labor costs for physician coverage, such as locum tenens services, teleradiology fees to third-party vendors, and "fully encumbered compensation" for employed or contracted radiologists when actual labor costs exceeded the monthly "Labor Cost Allowance" identified in the applicable Facility Addendum; (iii) costs for physician participation and preparation for tumor boards and similar clinical committee meetings, compensable at the contractual rate of $500 per hour; (iv) costs associated

1  with acquiring additional radiology workstations above the anticipated number set
2  forth in the proformas; and (v) any other reasonable expense that AHSC requested
3  NLMM incur in order to maintain compliant, uninterrupted radiology services,
4  provided such expenses were not already included in the cost allowances under the
5  Agreement or Facility Addenda. (*Id.* § 5.03(A)–(E).)

6      23.    The Agreement also specified that pass-through expenses were to be
7  invoiced separately as they arose, payable by AHSC within thirty days following
8  receipt of an undisputed invoice. (*Id.* § 5.03(F).)

9      24.    With respect to technology integration, Section 3.05 of the Agreement
10  provided that NLMM, in its discretion, could integrate its radiology-specific software
11  applications—including PACS (Picture Archiving and Communication System),
12  voice recognition systems, and artificial intelligence software—with AHSC's own
13  systems. AHSC expressly agreed to provide "commercially reasonable cooperation"
14  to facilitate such integration. Due to the limited time available prior to the service
15  commencement date, the Agreement also required AHSC to grant NLMM temporary
16  remote access to AHSC's patient records and systems until the full integration was
17  complete.

**NLMM's Performance and AHSC's Subsequent**

**Breaches of the Agreement**

20      25.    NLMM commenced performance under the Agreement in good faith,
21  recruiting and staffing both Vista and Randolph with qualified board-certified
22  radiologists, installing necessary technological infrastructure, and integrating its
23  radiology team into the hospitals' clinical and administrative frameworks. At all
24  relevant times, NLMM fully discharged its duties under the Agreement, providing
25  consistent, uninterrupted, high-quality radiology coverage, diagnostic interpretations,
26  administrative support, and medical direction at both Vista and Randolph in
27  accordance with all applicable standards and contractual obligations.

28

26.    In accordance with the Agreement, NLMM timely issued monthly invoices to AHSC for the radiology services performed at Vista, along with certain agreed-upon pass-through costs. Specifically, for Vista, NLMM issued invoice number 000171 on October 25, 2024, in the fixed monthly amount of $183,533.08. Subsequently, NLMM issued invoice number 000202 on November 14, 2024, and invoice number 000242 on December 12, 2024, each similarly in the fixed monthly amount of $183,533.08 pursuant to the parties' agreement. True and correct copies of the foregoing invoices are attached hereto as **Exhibits B**, **C**, and **D** and incorporated herein by reference.

27.    On December 10, 2024, AHSC made a partial payment of $75,000, which NLMM applied to invoice number 000171, leaving an unpaid balance of $108,533.08 on that invoice. AHSC failed and continues to fail to remit payment for the remaining balance on invoice number 000171, as well as the entire amounts owed under invoices number 000202 and 000242, despite having never raised any dispute or objection as to the quality, accuracy, timeliness, or appropriateness of NLMM's radiology services or invoicing.

28.    Additionally, NLMM issued timely and accurate invoices to AHSC for pass-through expenses expressly permitted under the Agreement, including invoice number 000213 on November 22, 2024, in the amount of $28,721.74 for locum tenens physician coverage in October 2024; invoice numbers 000265 and 000291 on December 23 and December 31, 2024, totaling $41,449.39 and $51,710.00 respectively, for locum tenens coverage in November 2024; invoice number 000294 on January 6, 2025, totaling $106,557.27 for radiology workstation equipment; and invoice number 000319 on January 24, 2025, totaling $212,364.64 for locum tenens coverage in December 2024. True and correct copies of these invoices are attached hereto as **Exhibits E**, **F**, **G**, **H**, and **I** and incorporated herein by reference.

29.    AHSC's breaches and misconduct extended beyond mere nonpayment. Under Section 3.05 of the Agreement, AHSC was required to provide "commercially

reasonable cooperation" to facilitate technology integration between NLMM's radiology-specific software and AHSC's existing healthcare information systems. Integration was critical for NLMM to efficiently provide and bill third parties for the contracted services. However, AHSC failed to fulfill its obligations by neglecting to timely pay $47,912.00 to its own technology vendor, Oracle Corporation, for integration of the Cerner platform, causing, among other things, substantial delays and hindering NLMM's ability to submit claims to third-party payors for reimbursement.

30.    Upon discovering AHSC's failure to timely pay Oracle Corporation for costs associated with integrating Cerner—the electronic health record (EHR) platform used by Vista—NLMM promptly notified AHSC and engaged in good faith discussions to mitigate the integration delays. To memorialize NLMM's good-faith cooperation, on November 7, 2024, NLMM's CEO, Patrick F. Santore, Jr., sent a letter to Vista's CEO, Kevin Spiegel, and other Vista executives, outlining NLMM's agreement to pay fifty percent of the one-time costs, up to $25,000, for integrating Cerner with NLMM's own technology platform via an HL7 interface—costs for which AHSC alone was contractually responsible under Section 5.03(E) of the Agreement.

31.    Vista's CEO, Mr. Spiegel, expressly agreed to this arrangement by signing the letter on November 11, 2024, thus formally accepting NLMM's offer to pay half of the Cerner integration costs up to a maximum of $25,000. A true and correct copy of this letter, signed by Vista's CEO, is attached hereto as **Exhibit J** and incorporated herein by reference.

32.    Consistent with that undertaking, NLMM paid Vista $23,956.00—which represents its fifty-percent share of the $47,912.00 integration costs—and issued invoice number 000292 on January 2, 2025, to AHSC. A true and correct copy of this invoice is attached hereto as **Exhibit K** and incorporated herein by reference.

33.    Notwithstanding NLMM's partial payment toward Cerner integration costs, AHSC failed to take the necessary steps to ensure that the integration was properly completed. NLMM is informed and believes, and on that basis alleges, that Vista's share of the Cerner integration costs was never paid. As a direct result, NLMM was unable to fully integrate its core technology systems with Vista's EHR platform, which significantly impeded NLMM's ability to conduct essential billing functions, including submitting claims to third-party payors and verifying patient information, thereby causing additional harm to NLMM.

34.    Among other things, NLMM was unable to perform the contractually required "True-Up," which would have allowed it to reconcile its invoicing based upon the actual volume of interpretations performed by its physicians. (*See* Ex. A § 5.02(A)(6).) NLMM is informed and believes, and on that basis alleges, that additional compensation in the amount of at least $400,000.00 will be due and payable to NLMM on account of the missing actual interpretation volumes.

35.    The precise amounts of the additional compensation owed to NLMM in excess of the invoiced amounts cannot reasonably be determined without a comprehensive accounting due to the complexity of the underlying billing records, patient account data, actual interpretation volumes, and third-party reimbursement documentation, all of which remain exclusively within the possession, custody, or control of AHSC.

36.    In addition to the monetary harm arising from AHSC's failure to remit payment for outstanding invoices, AHSC's refusal or inability to complete the Cerner integration exposed NLMM to operational disruptions and loss of revenue streams. Although NLMM has repeatedly attempted to resolve these issues amicably, AHSC has continued to ignore its contractual responsibilities and the damage it is causing to NLMM's business.

37.    The following tables detail the outstanding invoices that remain due and payable to NLMM, excluding additional amounts expected to be due and payable

following reconciliation once AHSC provides the currently missing and withheld data:

| UNPAID INVOICES FOR SERVICES RENDERED | | | |
|---|---|---|---|
| INVOICE NO. | INVOICE DATE | DESCRIPTION | AMOUNT DUE |
| 000171 | Oct. 25, 2024 | First Monthly Invoice | $108,533.08 |
| 000202 | Nov. 14, 2024 | Second Monthly Invoice | $183,533.08 |
| 000242 | Dec. 12, 2024 | Third Monthly Invoice | $183,533.08 |
| TOTAL | | | $475,599.24 |

| UNPAID INVOICES FOR PASS-THROUGH COSTS | | | |
|---|---|---|---|
| INVOICE NO. | INVOICE DATE | DESCRIPTION | AMOUNT DUE |
| 000213 | Nov. 22, 2024 | Locum Tenens – Oct. 2024 | $28,721.74 |
| 000265 | Dec. 23, 2024 | Locum Tenens – Nov. 2024 | $41,449.39 |
| 000291 | Dec. 31, 2024 | Locum Tenens – Nov. 2024 | $51,710.00 |
| 000292 | Jan. 2, 2025 | Cerner Integration | $23,956.00 |
| 000294 | Jan. 6, 2025 | Workstations | $106,557.27 |
| 000319 | Jan. 24, 2025 | Locum Tenens – Dec. 2024 | $212,364.64 |
| TOTAL | | | $464,759.04 |

38.    On February 27, 2025, NLMM, through counsel, sent a formal demand letter to AHSC that detailed the numerous breaches and identified the outstanding sums due and payable under the Agreement. Despite being placed on notice, AHSC neglected to respond to the demand letter and failed to take any meaningful steps to rectify its delinquencies.

39.    Apart from the single partial payment of $75,000 received by NLMM on December 10, 2024, AHSC has not made *any* additional remittances toward the substantial outstanding balance owed to NLMM. Indeed, despite receiving multiple invoices and repeated demands from NLMM, the overdue amounts remain unpaid.

40.    As a result of AHSC's chronic breaches of the Agreement and bad-faith conduct, NLMM has suffered substantial and ongoing damages, including, but not limited to, significant out-of-pocket costs, lost revenue, and administrative burdens.

41.    Therefore, AHSC's deliberate and unjustified disregard of its contractual obligations has left NLMM with no recourse other than to seek relief from this Court.

# FIRST CLAIM FOR RELIEF

## Breach of Contract

## (Against All Defendants)

42.    Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs, inclusive, as though fully set forth herein.

43.    On or about September 18, 2024, Plaintiff NLMM and Defendant AHSC entered into a valid, binding, and enforceable written Master Services Agreement for Hospital-Based Radiology Services and related Facility Addenda, whereby NLMM agreed to, *inter alia*, staff, manage, and oversee full-service hospital-based radiology at two hospitals owned and operated by AHSC: Vista Medical Center East in Waukegan, Illinois, and Randolph Health Hospital in Asheboro, North Carolina. (*See* Ex. A.)

44.    Under the terms of the Agreement, NLMM was to provide comprehensive radiology services for AHSC, including, but not limited to, providing continuous onsite and remote radiological examinations, interpretations, and consultations; recruiting and staffing qualified, board-certified radiologists; managing radiology protocols, quality control, compliance monitoring, and related administrative support. (*See id.* §§ 2.01–2.03.)

45.    In exchange, AHSC expressly agreed to compensate NLMM pursuant to Sections 5.02 and 5.03 of the Agreement.

46.    Specifically, AHSC agreed to pay monthly invoices for radiology services rendered by NLMM at Vista, which were initially set at a fixed monthly amount of $183,533.08 for each of the first four months based on historical averages of radiological interpretations, followed by subsequent monthly amounts adjusted through periodic reconciliations. (See *id.* §§ 5.01, 5.02(A); *id.* at 29–30 [Facility Addendum for Vista].)

47.    AHSC further agreed to reimburse NLMM for certain designated pass-through costs, invoiced separately as they arose, and payable within thirty days of the issuance of the invoice. (*Id.* § 5.03.)

48.    NLMM fully performed all of its obligations under the Agreement, including the timely provision of professional radiology services at Vista, and promptly issuing invoices for services and agreed-upon pass-through costs.

49.    NLMM issued invoice numbers 000171, 000202, and 000242 to AHSC for monthly services it rendered at Vista in October, November, and December 2024, respectively, totaling $550,599.24, less one partial payment of $75,000 received from AHSC on December 10, 2024. (Exs. B, C, and D.) Thus, the remaining unpaid balance owed to NLMM under these invoices amount to $475,599.24.

50.    NLMM also timely invoiced AHSC for clearly defined and contractually approved pass-through costs associated with locum tenens physician coverage and additional workstation expenses, specifically invoice numbers 000213, 000265, 000291, 000294, and 000319, totaling $440,803.04, all of which remain unpaid. (Exs. E–I.)

51.    Additionally, under Section 3.05 of the Agreement, AHSC agreed to provide "commercially reasonable cooperation" to facilitate the integration of NLMM's technology platforms—including PACS, voice recognition, and artificial intelligence software applications—with AHSC's existing systems. This integration encompassed connecting Cerner, the EHR platform employed by AHSC at Vista, with NLMM's technology platform via an HL7 interface.

52.    However, AHSC neglected to timely pay its own technology vendor, Oracle Corporation, the sum of $47,912.00 required to complete the integration of Cerner with NLMM's technology platform.

53.    To avoid further delays, on November 7, 2024, NLMM's CEO sent a written letter to Vista memorializing NLMM's agreement to share in the Cerner integration expense by paying fifty percent of the one-time integration cost, up to a

maximum of $25,000. (Ex. J.) On November 11, 2024, Vista, through its CEO, Kevin Spiegel, accepted and agreed to this arrangement by signing, thus binding AHSC to this supplemental agreement. (*Id.*)

54.    Pursuant to this supplemental agreement, NLMM fully performed its obligation by paying Vista $23,956.00, which represented its fifty-percent share of the total Cerner integration invoice. (*See* Ex. K.)

55.    At all relevant times herein, NLMM fully performed each of its contractual obligations under the Agreement, as well as under the subsequent supplemental agreement to split the cost of Cerner integration. NLMM timely provided all required radiology services to Vista; incurred necessary and approved pass-through costs; timely invoiced AHSC pursuant to the invoicing procedures specified in Sections 5.01(A) and 5.03(F) of the Agreement; and paid its agreed-upon share of the Cerner integration costs.

56.    AHSC has never objected to, disputed, or otherwise challenged the quality, completeness, or accuracy of NLMM's performance or invoicing.

57.    Despite NLMM's full performance, AHSC materially breached the Agreement by failing and refusing to remit payments owed to NLMM, which include outstanding balances totaling $475,599.24 for radiology services and $440,803.04 for pass-through costs.

58.    Moreover, AHSC materially breached the supplemental agreement for technology integration by failing to remit payment of $23,956.00 to Oracle Corporation for its share of the Cerner integration costs. AHSC also breached Section 3.05 of the Agreement by failing to provide commercially reasonable cooperation to NLMM for technology integration, as integration of the Cerner platform was never completed.

59.    There are no conditions, defenses, or reasonable justifications that would excuse AHSC's failure to perform.

60.    As a direct and proximate result of AHSC's unjustified and continuing breaches of contract, NLMM has suffered, and continues to suffer, substantial damages, including, but not limited to, unpaid invoiced amounts and other special or consequential damages, the precise amounts of which shall be determined at trial, but in no event less than the outstanding invoiced amount of $940,358.28 for the services rendered and pass-through costs.

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

61.    Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs, inclusive, as though fully set forth herein.

62.    The Agreement and related Facility Addenda entered into between NLMM and AHSC on or about September 18, 2024, as well as the subsequent supplemental agreement regarding Cerner integration that was memorialized on November 11, 2024, constitute valid, binding, and enforceable contracts between the parties. (*See* Exs. A, J.)

63.    Implied within each of these contracts is a covenant of good faith and fair dealing, requiring that neither party engage in conduct that unfairly frustrates, interferes with, or deprives the other of the benefits of the agreements.

64.    At all times relevant hereto, NLMM performed all, or substantially all, of its obligations under the Agreement, Facility Addenda, and the supplemental agreement, including, but not limited to: providing continuous, high-quality radiology services at Vista; promptly and accurately invoicing AHSC for both professional services and approved pass-through costs; cooperating in good faith toward integrating the Cerner EHR platform; and paying its agreed-upon share of the Cerner integration expenses.

65.    Despite NLMM's exemplary and timely performance, Defendants engaged in a continuous pattern of objectively unreasonable, unfair, and bad faith

conduct designed to frustrate NLMM's rights and reasonable expectations under the Agreement and the supplemental agreement. Defendants' misconduct included, without limitation, the following acts:

a.    Withholding payments owed to NLMM for professional radiology services rendered at Vista, despite AHSC's acceptance of NLMM's services without objection or dispute;

b.    Failing to reimburse NLMM for substantial pass-through costs that NLMM incurred under the Agreement and pursuant to AHSC's contractual assurances;

c.    Neglecting, without justification, to timely pay Oracle Corporation for Cerner integration costs, despite their knowledge that this integration was critical for NLMM's operations and its ability to bill third-party payors;

d.    Inducing NLMM into sharing the cost of integrating the Cerner platform under the supplemental agreement, but subsequently failing to perform corresponding obligations by paying Vista's share of the cost, which obstructed completion of the integration and deprived NLMM of its anticipated benefits under both the Agreement and the supplemental agreement; and

e.    Failing to provide the "commercially reasonable cooperation" expressly promised by AHSC in Section 3.05 of the Agreement, thus frustrating NLMM's ability to efficiently integrate its technology systems with AHSC's EHR platform.

66.    Defendants' deliberate course of unfair and bad-faith conduct has both materially breached explicit terms of the Agreement and supplemental agreement and also violated the implied covenant of good faith and fair dealing by depriving NLMM of the full benefits it reasonably anticipated under these contracts. Indeed, Defendants' actions were objectively unreasonable and inconsistent with NLMM's justified expectations.

67.     As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, NLMM has sustained substantial damages, including but not limited to the unpaid invoiced amounts, significant administrative burdens, disruption to NLMM's operations, delays in NLMM's ability to bill third-party payors, lost revenue opportunities, and other consequential damages, the precise amounts of which shall be determined at trial.

**THIRD CLAIM FOR RELIEF**

**Common Count: Goods and Services Rendered**

**(Against All Defendants)**

68.     Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs, inclusive, as though fully set forth herein.

69.     Between approximately October 2024 and January 20, 2025, Defendants became indebted to Plaintiff in the sum of at least $940,358.28 for radiology services, pass-through costs (including locum tenens physician coverage and workstation equipment), and technology integration costs, all of which were provided at the request and for the use and benefit of Defendants at Vista Medical Center East.

70.     Specifically, Plaintiff NLMM provided comprehensive radiology services and staffed qualified radiologists, incurred necessary pass-through costs, and paid a portion of integration costs for Cerner at the request and for the benefit of Defendants. Defendants knowingly accepted and benefited from the services NLMM provided and the costs it incurred.

71.     In exchange, Defendants were obligated and expected to pay NLMM for the value of these services and expenses upon receipt of invoices. Indeed, NLMM provided these services and incurred these costs under the reasonable expectation and mutual understanding that Defendants would fully compensate and reimburse NLMM.

72.     Despite NLMM's demands for payment, Defendants have failed and refused, without justification or reasonable excuse, to compensate and reimburse

1   NLMM for the amounts owed, except for a single, partial payment of $75,000 on

2   December 10, 2024 that was applied to invoice number 000171.

3        73.    Therefore, the sum of at least $940,358.28 remains due and payable from

4   Defendants to NLMM, notwithstanding applicable interest and additional amounts to

5   be determined at trial.

6   **FOURTH CLAIM FOR RELIEF**

7   **Accounting**

8   **(Against AHSC)**

9        74.    Plaintiff realleges and incorporates herein by reference all of the

10   foregoing paragraphs, inclusive, as though fully set forth herein.

11        75.    Pursuant to Section 5.02(C) of the Agreement, AHSC expressly agreed

12   to grant NLMM reasonable access to AHSC's billing, patient, reimbursement, and

13   related records necessary for NLMM to perform billing, collection, accounting, and

14   specifically to conduct periodic reconciliations of invoicing known as "True-Ups."

15   (*See* Ex. A § 5.02(C); *see also id.* § 5.02(A)(6).)

16        76.    Under the Agreement, NLMM's monthly invoicing after the initial four-

17   month period was to be calculated based on the actual average monthly radiological

18   interpretation volumes. Accurate performance of such True-Ups required AHSC to

19   provide detailed and complete information regarding the actual interpretation counts

20   performed by NLMM's radiologists at each facility, including at Vista.

21        77.    Despite multiple demands and requests by NLMM, AHSC has failed and

22   refused, without justification or lawful excuse, to provide NLMM with the required

23   records and data necessary to accurately perform the True-Ups as specified in the

24   Agreement.

25        78.    As a direct result of AHSC's failure to supply NLMM with this

26   information, NLMM has been prevented from reconciling the invoiced amounts to

27   the actual interpretation counts performed, thus depriving NLMM of compensation to

28   which it is contractually entitled.

79.     Due to the complexity and volume of billing records, patient accounts, interpretation data, third-party payer reimbursements, and related accounting matters involved, an ordinary legal action demanding a fixed sum is impracticable. Determining the precise amounts due and payable to NLMM under the True-Up provisions of the Agreement requires detailed analysis and examination of records that are within the sole possession, custody, or control of AHSC.

80.     Upon information and belief, an additional sum of at least $400,000.00 in compensation will be owed to NLMM by AHSC, following a proper accounting and reconciliation based on actual interpretation volumes and related adjustments mandated by the Agreement.

81.     Absent an accounting, NLMM has no adequate remedy at law to ascertain these amounts precisely. AHSC's unjustified withholding of the necessary records and information has deprived, and continues to deprive, NLMM of its contractual rights, thus requiring an accounting under the equitable powers of this Court.

82.     Accordingly, NLMM is entitled to an order from the Court directing AHSC to immediately provide NLMM and/or its representatives with reasonable and complete access to all records necessary to perform a full and proper accounting, including but not limited to billing data, patient and interpretation volume records, reimbursement information from third-party payers, and all documents necessary to complete the True-Up specified under the Agreement.

83.     NLMM further requests that this Court order AHSC to pay all additional amounts identified as due and owing to NLMM through such accounting, in an amount to be determined at trial, but presently estimated to be at least $400,000.00.

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For general damages, according to proof at trial;

2.      For special damages, according to proof at trial;

3.      For compensatory damages, according to proof at trial, but in no event less than the outstanding invoiced amount of $940,358.28;

4.      For punitive and exemplary damages, according to proof at trial;

5.      For pre-judgment and post-judgment interest at the maximum legal rate;

6.      For attorneys' fees and costs, as permitted by applicable law;

7.      For an attachment or continuation of any other provisional remedy obtained in this action, to remain in effect until satisfaction of the judgment obtained herein, as permitted by applicable law;

8.      For an accounting, compelling AHSC to provide complete and accurate information and all records necessary for NLMM to perform a full and proper reconciliation, and for payment by AHSC to NLMM of all additional sums found due and payable as a result of such accounting, in an amount to be determined at trial but presently estimated to be at least $400,000.00; and

9.      For such other and further relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action triable by a jury.

DATED: April 24, 2025                    FROST LLP


By: _____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC