CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC., a Nevada corporation; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST, an Illinois limited liability company; DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:25-cv-03643-MCS-BFM<br><br>*Assigned to: Hon. Mark C. Scarsi*<br><br>**PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT**<br><br>*Filed concurrently with (i) Notice of Application and Hearing for Right to Attach Order and Writ of Attachment; (ii) Application for Right to Attach Order and Writ of Attachment; (iii) Right to Attach Order and Order for Issuance of Writ of Attachment; (iv) and Declaration of Mark Rabinovich*<br><br>Hearing:<br>Judge:  Hon. Brianna Fuller Mircheff<br>Date:    June 17, 2025<br>Time:    10:00 a.m.<br>Crtrm.: 780 (7th Floor)<br>         Roybal Federal Building<br>         255 E. Temple Street<br>         Los Angeles, California 90012<br><br>Action Filed:    April 24, 2025 |

52832.1

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND .................................................. 2

III.  LEGAL STANDARD ON ATTACHMENT IN CALIFORNIA ...................... 5

IV.  PLAINTIFF IS ENTITLED TO A RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT. ...................................................................... 7

    A.  Plaintiff's Claim is Unsecured and for a Fixed or Readily Ascertainable Amount ........................................................................ 7

    B.  Plaintiff Has Established the Probable Validity of its Breach of Contract Claim. ................................................................................ 8

        1.  Choice of Law ............................................................................ 9

        2.  Breach of Contract .................................................................. 10

        3.  Quantum Meruit ...................................................................... 12

    C.  Plaintiff Seeks Attachment Solely For the Purpose of Recovering Upon the Claim On Which its Application is Based. ................................ 14

    D.  The Amount to Be Secured by the Attachment is Greater Than Zero ...... 15

    E.  Plaintiff Will File an Undertaking Prior to the Issuance of the Writ of Attachment. ...................................................................................... 15

V.  CONCLUSION ............................................................................................ 16

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*ABF Cap. Corp., a Delaware Corp. v. Osley*,
   414 F.3d 1061 (9th Cir. 2005) ................................................................. 9

*Blastrac, N.A. v. Concrete Sols. & Supply*,
   678 F. Supp. 2d 1001 (C.D. Cal. 2010) ............................................... 6, 9

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC*,
   28 F. Supp. 3d 1006 (C.D. Cal. 2013) ................................................... 10

*ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*,
   2010 WL 11570434 (C.D. Cal. Oct. 13, 2010) ..................................... 15

*House v. Fed. Home Loan Mortg. Corp.*,
   261 F. Supp. 3d 623 (E.D.N.C. 2016), *aff'd,* 699 F. App'x 259 (4th
   Cir. 2017) .............................................................................................. 10

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., Div. of Goodyear
   Tire & Rubber Co.*,
   112 F. Supp. 2d 1178 (C.D. Cal. 2000) ............................................... 5, 6

*S. California Painters & Allied Trade Dist. Council No. 36 v. Best
   Interiors, Inc.*,
   359 F.3d 1127 (9th Cir. 2004) ............................................................... 11

*UPS Cap. Corp. v. Carpartsdepot, Inc.*,
   2014 WL 12768450 (C.D. Cal. Dec. 19, 2014) ...................................... 6

**California Cases**

*CIT Grp./Equip. Fin., Inc. v. Super DVD, Inc.*,
   115 Cal. App. 4th 537 (2004) .............................................................. 6, 7

*Hill v. Superior Ct. in & for Alameda Cnty.*,
   16 Cal. 2d 527 (1940) ........................................................................... 12

*N. Hollywood Marble Co. v. Superior Ct.*,
   157 Cal. App. 3d 683 (1984) ................................................................. 14

*Nedlloyd Lines B.V. v. Superior Ct.*,
    3 Cal. 4th 459 (1992) ..................................................................................... 9, 10

*Ochs v. PacifiCare of California*,
    115 Cal. App. 4th 782 (2004) ............................................................................. 13

*Pech v. Morgan*,
    61 Cal. App. 5th 841 (2021) ................................................................................. 8

**Other State Cases**

*Jackson v. Carolina Hardwood Co.*,
    120 N.C. App. 870 (1995) ................................................................................... 10

*Scott v. United Carolina Bank*,
    130 N.C. App. 426 (1998) ................................................................................... 13

**California Statutes**

California Code of Civil Procedure
    § 481.190 ........................................................................................................... 6, 8
    § 482.020 ................................................................................................................ 6
    § 483.010(a) ...................................................................................................... 7, 12
    § 483.010(d) ......................................................................................................... 12
    § 484.030 ................................................................................................................ 6
    § 484.090(a) .......................................................................................... 6, 8, 12, 15
    § 489.210 .............................................................................................................. 15
    § 489.220 .............................................................................................................. 15

**Federal Rules**

Federal Rule of Civil Procedure 64 .................................................................... 1, 5, 6

**Other Authorities**

Ahart, Cal. Practice Guide: Enforcing Judgments and Debts ................................. 12

CACI No. 371 ........................................................................................................... 13

52832.1

iii

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR
RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a straightforward action arising from Defendant American Healthcare Systems Corp., Inc.'s ("AHSC" or "Defendant") brazen refusal to meet its clear and unequivocal payment obligations under a valid and binding Master Services Agreement for Hospital-Based Radiology (the "Agreement") with Plaintiff Northern Light Medical Management, LLC ("NLMM" or "Plaintiff"). Despite NLMM's full performance of radiology services, AHSC has unjustifiably withheld payment of multiple invoices—amounts fixed, pre-agreed, and indisputably due—causing substantial and escalating harm to NLMM. At present, AHSC owes no less than $940,358.28 in overdue and clearly ascertainable debt to NLMM, which encompasses both professional services and contractually mandated pass-through costs that were invoiced to AHSC.

By withholding payment, AHSC is in open breach of Sections 5.02 and 5.03 of the Agreement, which require timely monthly payments and reimbursement of necessary operational costs and expenses incurred by NLMM in reliance on AHSC's contractual promises. Compounding this breach, AHSC has benefited from NLMM's performance without objection, while simultaneously ignoring its reciprocal obligations, despite clear and written demands for payment.

Therefore, NLMM seeks a right to attach order and issuance of a writ of attachment through this Application to secure its recovery and to prevent Defendant from dissipating or otherwise rendering unavailable assets necessary for the ultimate satisfaction of the monies owed to NLMM. Pursuant to Federal Rule of Civil Procedure 64 and the California Code of Civil Procedure, Plaintiff's entitlement to a prejudgment writ of attachment is clear: NLMM's underlying claim is contractual, unsecured, readily ascertainable, and indisputably valid; NLMM seeks attachment solely to ensure recovery of undisputed obligations; and the assets targeted for attachment are exclusively those of a corporate entity. As such, and as demonstrated

further below, NLMM has fully satisfied every statutory requirement necessary for the issuance of a right to attach order and writ of attachment. Accordingly, the Court should grant this Application to ensure that NLMM's rights are preserved and Defendant's assets remain available to satisfy the judgment ultimately obtained in this action.

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiff NLMM is a Florida-based medical practice management company that specializes in providing comprehensive hospital-based radiology services to healthcare facilities nationwide. (Declaration of Mark Rabinovich ["Rabinovich Decl."] ¶ 2.) Defendant AHSC is a healthcare management company that acquires, operates, and manages hospitals and outpatient healthcare facilities throughout the country.

On or about September 18, 2024, NLMM and AHSC entered into a written Master Services Agreement for Hospital-Based Radiology and related Facility Addenda (the "Agreement"). (*Id.* ¶ 3, Ex. A.) Under this Agreement, NLMM agreed to, *inter alia*, staff, manage, and oversee the provision of full-service radiology at two AHSC-owned outpatient healthcare facilities: Vista Medical Center East in Waukegan, Illinois ("Vista"), and Randolph Health Hospital in Asheboro, North Carolina ("Randolph"). (*See generally id.* Ex. A.) Among other things, NLMM committed to provide continuous onsite and remote radiological examinations, interpretations, consultations, physician recruitment, administrative oversight, and regulatory compliance services to ensure around-the-clock professional coverage at AHSC's facilities. (*See id.* Ex. A §§ 2.01–2.03.)

In exchange, AHSC expressly agreed to compensate NLMM pursuant to an established invoicing and payment procedure, which included monthly payments due on the first day of each calendar month. (*Id.* Ex. A §§ 5.02(A)(1)–(3).) Initially, AHSC agreed to fixed monthly payments for the first four months based on applicable radiological interpretation averages, after which monthly payments would be adjusted

to reflect actual interpretation volumes through periodic reconciliations termed "True-Ups." (*Id.* Ex. A § 5.02(A)(3), (A)(6).) The fixed monthly amount for Vista was set at $183,533.08 based on an agreed-upon historical average of 5,798.83 interpretations per month. (*Id.* Ex. A at 29 [Facility Addendum for Vista].)

Additionally, AHSC agreed to reimburse NLMM for certain operational "pass-through" costs that exceeded predetermined expense allowances detailed in the Agreement. (*Id.* Ex. A § 5.03.) These reimbursable costs included, among others, credentialing fees, costs for locum tenens physician coverage, teleradiology services, and additional radiology workstation equipment. (*Id.* Ex. A § 5.03(A)–(E).) These pass-through costs were to be invoiced separately and became payable by AHSC within thirty days of its receipt of an undisputed invoice. (*Id.* Ex. A § 5.03(F).)

NLMM commenced performance under the Agreement on December 2, 2024, staffing Vista with qualified radiologists and providing radiology services consistent with all contractual obligations. (Rabinovich Decl. ¶ 10.) In accordance with the Agreement, NLMM timely issued monthly invoices to AHSC for radiology services at Vista. (*Id.* ¶ 11.) Specifically, NLMM issued Invoice Nos. 000171 (dated October 25, 2024), 000202 (November 14, 2024), and 000242 (December 12, 2024) to AHSC for the agreed-upon fixed monthly amount of $183,533.08. (*Id.* ¶ 11, Exs. B–D.) Despite AHSC making one partial payment of $75,000 on December 10, 2024, which was applied toward the first invoice, AHSC failed—and continues to fail—to remit payment to NLMM for the remaining balance totaling $475,599.24. (*Id.* ¶¶ 13–14.) Notably, AHSC has never objected to or disputed the accuracy, timeliness, or quality of NLMM's services or invoices. (*See id.* ¶ 10.)

NLMM also timely invoiced AHSC for permissible pass-through costs in excess of the anticipated operational cost allowances detailed in the Agreement's proformas, as contemplated by Section 5.03 of the Agreement. (*Id.* ¶ 9.) These included pass-through costs for locum tenens physician coverage (Invoice Nos. 000213, 000265, 000291, 000319) and radiology workstation equipment (Invoice No.

1  000294). (*Id.* ¶¶ 15, Exs. E–I.) AHSC has similarly failed, without justification, to

2  pay these clearly documented pass-through expenses totaling $464,759.04. (*Id.* ¶¶ 15–

3  16, Exs. E–I.)

4      AHSC also failed to fulfill its obligation under Section 3.05 of the Agreement,

5  which required it to provide "commercially reasonable cooperation" to integrate

6  NLMM's and Vista's software and technology platforms, including Vista's existing

7  electronic health record (EHR) system, Cerner. (*Id.* ¶ 8, Ex. A § 3.05.) This integration

8  was essential for NLMM to bill third parties for the contracted services. (*See id.* ¶ 22.)

9  However, AHSC neglected to timely pay Oracle Corporation (provider of the Cerner

10  platform) the sum of $47,912.00 required for this integration. (*Id.* ¶ 18.)

11      In light of AHSC's failure to timely pay Oracle Corporation for the Cerner

12  integration—which delayed the integration process—NLMM's CEO, Patrick F.

13  Santore, Jr., sent a letter dated November 7, 2024, to Vista's CEO, Kevin Spiegel,

14  memorializing NLMM's willingness to share the integration expenses. (*Id.* ¶¶ 19–20,

15  Ex. J.) Specifically, NLMM agreed to pay 50 percent of the one-time integration cost

16  (up to a maximum of $25,000) to facilitate the timely completion of integrating the

17  Cerner platform with NLMM's technology platform through an HL7 interface. (*Id.*)

18  Vista's CEO, Mr. Spiegel, expressly accepted and agreed to this arrangement in

19  writing on November 11, 2024. (*Id.*) Consistent with this supplemental agreement

20  (the "Cerner Agreement"), Vista sent NLMM an invoice on November 11, 2024 in

21  the amount of $23,956.00—representing NLMM's 50 percent share—which NLMM

22  promptly paid. (*Id.* ¶ 21 Ex. K.) Nevertheless, AHSC still failed to pay its own

23  remaining share of the integration costs, and, as a direct consequence, the Cerner

24  integration was never completed, which obstructed NLMM's ability to bill third-party

25  payors and disrupted its operations. (*Id.* ¶ 22.) Thus, on January 2, 2025, NLMM

26  issued <u>Invoice No. 000292</u> to AHSC as reimbursement for the $23,956.00 it paid to

27  Vista, which AHSC has still not paid. (*Id.* ¶ 22, Ex. L.)

28

52832.1

**4**

Despite written demands for payment—including a detailed formal demand letter sent to AHSC on February 27, 2025—AHSC has ignored its obligations and refused to rectify these breaches. (*Id.* ¶¶ 23–25, Ex. M.) To date, AHSC's outstanding debt to NLMM amounts to no less than $940,358.28. This sum represents clearly ascertainable overdue payments, exclusive of further sums likely due following a comprehensive reconciliation of actual interpretation volumes and data currently withheld by AHSC. (*Id.* ¶ 25.) AHSC's ongoing refusal to meet its clear contractual obligations has inflicted and continues to inflict substantial economic harm upon NLMM, leaving NLMM with no option but to seek judicial relief, including this Application for a Writ of Attachment, to secure the recovery it will ultimately obtain in this action.

## III.    LEGAL STANDARD ON ATTACHMENT IN CALIFORNIA

Prejudgment remedies, including prejudgment attachment, are governed by Federal Rule of Civil Procedure 64, which provides:

> (a) At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.
>
> (b) The remedies available under this rule include … attachment….

Fed. R. Civ. P. 64.

"The effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered." *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., Div. of Goodyear Tire & Rubber Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000).

"Attachment is a purely statutory remedy…." *Pos-A-Traction*, 112 F. Supp. 2d at 1181. Thus, California Code of Civil Procedure Sections 481.010 through 493.050 govern the procedure for obtaining an order for a prejudgment writ of attachment. *Id.* "Generally, an order of attachment may be issued only in an action for a claim of money which is based upon an express or implied contract where the total amount of

52832.1

5

such claim is a fixed or 'readily ascertainable' amount not less than $500.00." *Id.* at 1181–82 (citing Cal. Civ. Proc. Code § 483.010(a)); *see CIT Grp./Equip. Fin., Inc. v. Super DVD, Inc.*, 115 Cal. App. 4th 537, 540 (2004) ("It is a well-recognized rule of law in [California] that an attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite." (cleaned up)).

Notably, "[a] choice of law clause in a contract will not pre-empt Rule 64." *UPS Cap. Corp. v. Carpartsdepot, Inc.*, 2014 WL 12768450, at *3 (C.D. Cal. Dec. 19, 2014); *see, e.g.*, *Blastrac, N.A. v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001, 1006 n.6 (C.D. Cal. 2010) (explaining that even though the parties' agreement contained a Colorado choice-of-law provision, "California law govern[ed] the standards by which a writ of attachment can issue.").

Prior to a court's issuance of a right to attach order, it must find all of the following:

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

Cal. Civ. Proc. Code § 484.090(a).

To demonstrate that a claim has "probably validity," the moving party need only show that "it is more likely than not that [it] will obtain a judgment against the defendant on that claim." *Id.* § 481.190. Moreover, an application for a right to attach order is properly supported by an affidavit or declaration demonstrating with particularity that, based on the facts presented, the plaintiff is entitled to judgment on the claim upon which the attachment is based. *Id.* §§ 484.030, 482.020.

52832.1

6

## IV.    PLAINTIFF IS ENTITLED TO A RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT.

### A.    <u>Plaintiff's Claim is Unsecured and for a Fixed or Readily Ascertainable Amount.</u>

NLMM's claim arises directly from AHSC's breach of explicit payment obligations under the parties' Agreement. Its claim is also unsecured, as AHSC provided no collateral or other security interests guaranteeing its performance. (Rabinovich Decl. ¶ 26.)

Moreover, the amount owed by AHSC to NLMM is $940,358.28—$916,402.28 owed under the Agreement and $23,956.00 owed under the Cerner Agreement—as clearly set forth in undisputed invoices and calculated in accordance with the express terms of both agreements. (*See id.* ¶¶ 11–12, 14–17, 18–25, Exs. A–L; *see also* Ex. M.) California law provides for attachment where, as here, a plaintiff's claim is based on a contract and the damages sought constitute a fixed or readily ascertainable amount of not less than $500, and which are capable of calculation by reference to contractual terms and underlying documentation. *See* Cal. Civ. Proc. Code § 483.010(a); *CIT Grp.*, 115 Cal. App. 4th at 540 ("an attachment will lie upon a cause of action for damages for a breach of contract where the damages are readily ascertainable by reference to the contract and the basis of the computation of damages appears to be reasonable and definite." (citations omitted)). Although it is not required that the amount owed appear on the face of a contract, "the contract sued on must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof." *CIT Grp.*, at 540.

Here, there is no ambiguity or credible dispute regarding the calculation of the amounts invoiced and unpaid by AHSC. In fact, the three invoices NLMM issued to AHSC for professional radiology services rendered were for amounts fixed in the Agreement and pre-agreed by both parties based upon applicable interpretation averages at each facility. (Rabinovich Decl. Ex. A § 5.02(A)(3).) For Vista, the

"Interpretation Count" for each of the first four monthly invoices would be based on the historical average of 5,798.83 interpretations per month, resulting in an initial fixed monthly invoice amount of $183,533.08. (*Id.* Ex. A at 29.) Therefore, these invoiced sums were neither speculative nor subject to dispute.

With respect to the pass-through costs, the Agreement sets forth AHSC's obligation to reimburse NLMM for specifically enumerated expenses exceeding the operational cost allowances detailed in the Agreement's proformas. (*Id.* Ex. A § 5.03.) NLMM issued invoices to AHSC for locum tenens physician coverage and radiology workstation equipment, as well as costs associated with technology integration pursuant to the Cerner Agreement between the parties. (*Id.* ¶¶ 15–16, Exs. E–I.) AHSC has neither contested the accuracy nor the validity of these pass-through expenses, nor articulated any basis for disputing them. Consequently, the pass-through costs are similarly fixed and readily ascertainable by clear reference to the Agreement, the Cerner Agreement, and the subject invoices.

Accordingly, NLMM satisfies the first requirement of Section 484.090(a) by clearly demonstrating that its claims arise from a contract, seek monetary recovery greater than $500, and constitute fixed or readily ascertainable amounts. As such, NLMM's claims are the type upon which attachment may issue.

**B.** **Plaintiff Has Established the Probable Validity of its Breach of Contract Claim.**

"A claim has probable validity 'where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.'" *Pech v. Morgan*, 61 Cal. App. 5th 841, 854 (2021) (quoting Cal. Civ. Proc. Code § 481.190); *see also* Law Revision Commission Comment to 1974 Addition to Cal. Civ. Proc. Code § 481.190 ("The definition of 'probable validity' in Section 481.190 requires that, at the hearing on the application for a writ, the plaintiff must at least establish a prima facie case."). "'In determining the probable validity of a claim where the defendant makes an appearance, the court must consider the relative merits of the positions of the

respective parties and make a determination of the probable outcome of the litigation.'" *Blastrac*, 678 F. Supp. 2d at 1005 (quoting *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1120 (1985)).

### 1. Choice of Law

The Agreement contains a choice of law provision that provides as follows: "This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina. Notwithstanding the foregoing, the laws, rules, and regulation of each Applicable State shall govern the performance of the Services in that state." (Rabinovich Decl. Ex. A § 11.05.)

"'In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions.'" *ABF Cap. Corp., a Delaware Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (quoting *Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*, 38 Cal. App. 4th 1532, 1544 (1995)). In doing so, a court must first determine "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466 (1992). "A substantial relationship exists where one of the parties is domiciled or incorporated in the chosen state." *Osley*, 414 F.3d at 1065. Moreover, "[i]f one of the parties resides in the chosen state, the parties have a reasonable basis for their choice." *Nedlloyd*, at 467. Here, neither NLMM nor AHSC are incorporated, domiciled, or reside in North Carolina. The only "reasonable basis" for the North Carolina choice of law is that one of the two facilities that are the subject of the Agreement, Randolph Health Hospital, is located in North Carolina. Thus, where "neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law." *Id.* at 466 (footnote omitted).

However, should this Court find that either of the foregoing tests are met, the next step in the choice-of-law inquiry asks the Court to "determine whether the chosen

state's law is contrary to a *fundamental* policy of California." *Id.* (footnote omitted, italics in original). Here, North Carolina law does not conflict with any fundamental policy of California. Consequently, if the Court concludes there is a sufficient relationship or other reasonable basis for the parties' choice of North Carolina law, it should apply North Carolina law.

Nevertheless, for purposes of this Application, Plaintiff will analyze its asserted claims under both North Carolina and California law to demonstrate that its claims have probable validity, regardless of which state's law governs the Agreement.

### 2.    Breach of Contract

In North Carolina, "[a] breach-of-contract claim involves two elements: (1) the existence of a valid contract; and, (2) breach of the terms of that contract." *House v. Fed. Home Loan Mortg. Corp.*, 261 F. Supp. 3d 623, 635 (E.D.N.C. 2016), *aff'd,* 699 F. App'x 259 (4th Cir. 2017); *Jackson v. Carolina Hardwood Co.*, 120 N.C. App. 870, 871 (1995) (a breach of contract claim in North Carolina requires a plaintiff to prove that "a valid contract existed which terms were breached by the defendant.").

"In California, a cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1017 (C.D. Cal. 2013) (cleaned up) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

Under the laws of either jurisdiction, NLMM clearly establishes the probable validity of its breach of contract claim. First, there is no dispute regarding the existence and validity of the Agreement. The Agreement is a detailed, arm's-length contract, reduced to writing, and fully executed by duly authorized representatives of NLMM and AHSC. (Rabinovich Decl. ¶ 3, Ex. A.) The Cerner Agreement is valid for the same reasons: it is an arm's-length agreement representing a promise to split the cost of integrating the Cerner platform 50/50, memorialized in a writing sent by

NLMM's CEO and executed by Vista's CEO. (*Id.* ¶¶ 19–20, Ex. J.) Beyond that, both AHSC and NLMM performed in accordance with the Agreement's terms, as evidenced by NLMM providing radiology services and AHSC's partial payment of $75,000 on December 10, 2024, which NLMM applied toward Invoice No. 000171. (*Id.* ¶¶ 10, 13); *see S. California Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc.*, 359 F.3d 1127, 1133 (9th Cir. 2004) ("To determine whether a party has adopted a contract by its conduct, the relevant inquiry is whether the party has displayed 'conduct manifesting an intention to abide by the terms of the agreement.'"). Thus, a valid contract exists between the parties.

Second, NLMM fulfilled all of its material obligations under the Agreement. As demonstrated in the accompanying declaration and exhibits, NLMM timely provided a comprehensive array of radiology services at AHSC's facilities, as required under Sections 2.01–2.03 of the Agreement. Among other things, NLMM supplied AHSC with radiology services and timely issued accurate invoices—both for the professional services rendered and for expressly agreed-upon pass-through costs. (Rabinovich Decl. ¶¶ 10–16, Exs. B-I.) Similarly, NLMM performed under the Cerner Agreement by paying its 50 percent share of the integration cost, pursuant to an invoice sent to NLMM by Vista on November 11, 2024. (*See id.* ¶ 21, Ex. K; *see also* ¶ 22, Ex. L.)

Third, AHSC's material breaches of Sections 5.02 and 5.03 of the Agreement are undeniable. Under Section 5.02(A)(1), AHSC was obligated to remit payments to NLMM on the first day of each month, with invoice amounts clearly stipulated and ascertainable. AHSC has failed, without justification or lawful excuse, to pay multiple duly-issued invoices totaling at least $475,599.24 for radiology services rendered, despite NLMM's written demands. AHSC further breached the Agreement under Section 5.03 by failing to reimburse clearly invoiced and documented pass-through costs totaling at least $440,803.04, despite having expressly agreed to bear these costs

52832.1

11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

and having never timely raised any bona fide dispute. Finally, AHSC breached the Cerner Agreement by failing to pay its 50 percent share to Oracle, totaling $23,956.00.

Finally, as a direct consequence of AHSC's unjustified breaches, NLMM has sustained substantial and readily ascertainable damages. These damages include, but are not limited to, unpaid service charges and pass-through costs precisely invoiced pursuant to explicit terms in the Agreement, totaling no less than $940,358.28.

Because each requisite element for breach of contract—under both California and North Carolina law—is overwhelmingly satisfied by uncontroverted evidence, NLMM has firmly established that it is "more likely than not" to prevail on the merits of its claim. Thus, NLMM has shown the probable validity of succeeding on its breach of contract claim,[1] thus satisfying the second requirement of Section 484.090(a).

### 3. Quantum Meruit

In addition to a claim based on an express contract, an attachment may also issue based upon an implied contract. Cal. Civ. Proc. Code § 483.010(a) ("an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied…."); *see Hill v. Superior Ct. in & for Alameda Cnty.*, 16 Cal. 2d 527, 530–31 (1940); Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, ¶¶ 4:20, 4:21.

Apart from its breach of contract claim, NLMM also asserts a claim for the common count of goods and services rendered. (Compl. ¶¶ 68–73.) Although North Carolina does not have a specific common count claim for goods and services

---

[1] Although NLMM asserts additional claims in its Complaint, relief is appropriate here so long as its contract-based claim meets the statutory requirements for attachment. *See* Cal. Civ. Proc. Code § 483.010(d) ("An attachment may be issued pursuant to [Section 483.010] whether or not other forms of relief are demanded."); Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, ¶¶ 4:26–4:27 ("attachment may issue on a contract claim even though the complaint contains other alternative noncontract claims.… Likewise, attachment may issue on a contract claim where *equitable relief* is sought in addition to monetary recovery." (citations omitted, italics in original)).

rendered, it does allow for recovery based on a quantum meruit theory. Thus, under North Carolina law, "'[t]o recover in quantum meruit, plaintiff must show (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously.'" *Scott v. United Carolina Bank*, 130 N.C. App. 426, 429 (1998) (quoting *Env't Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 306 (1985)). "Quantum meruit claims require a showing that both parties understood that services were rendered with the expectation of payment." *Id.* However, "the law presumes that valuable services are rendered with the expectation of payment," unless those services were "rendered to a person by members of his or her immediate family." *Id.* at 430.

Similarly, to recover under a common count claim for goods and services rendered based upon quantum meruit in California, "a plaintiff must establish both that [it] was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Ochs v. PacifiCare of California*, 115 Cal. App. 4th 782, 794 (2004); CACI No. 371.

Here, NLMM readily satisfies each of these elements under the law of both jurisdictions. NLMM provided valuable radiology services pursuant to AHSC's explicit request, as memorialized in the Agreement. (Rabinovich Decl. ¶¶ 3, 5–6, 10, Exs. A–I.) AHSC knowingly, willingly, and continuously accepted these services without objection, fully aware that NLMM expected payment pursuant to the express terms and conditions outlined in the Agreement. (*Id.* ¶¶ 7–9, 11–13, 15–16, Exs. A–I.) Indeed, AHSC's partial payment of $75,000 on December 10, 2024, demonstrates its clear recognition and acceptance of its payment obligations. (*Id.* ¶ 13.) There is absolutely no suggestion—nor could there reasonably be—that NLMM provided these services gratuitously.

Thus, NLMM's claim for goods and services rendered, whether analyzed under the rubric of California's common count or North Carolina's quantum meruit theory,

has probable validity. Accordingly, NLMM's quasi-contract claim independently supports the issuance of a right to attach order and writ of attachment.

### C. Plaintiff Seeks Attachment Solely For the Purpose of Recovering Upon the Claim On Which its Application is Based.

NLMM's request for an attachment is not made for an improper purpose. It seeks a prejudgment writ of attachment for one clear, limited, and statutorily sanctioned purpose: to preserve and secure its ability to recover on its contract-based claims. NLMM's Application is narrowly tailored and targets only those assets of AHSC necessary to satisfy the readily ascertainable debt arising directly from AHSC's breaches of the Agreement. NLMM is not attempting to gain any improper advantage, nor is it attempting to harass, intimidate, or coerce AHSC through the attachment process.

Here, prejudgment attachment is an appropriate and a necessary means of ensuring that AHSC cannot escape its lawful obligations by concealing or dissipating assets. *See N. Hollywood Marble Co. v. Superior Ct.*, 157 Cal. App. 3d 683, 690 (1984) ("The primary purpose of the remedy of attachment is to allow unsecured creditors a procedure ancillary to their action by which to ensure that the alleged debtor's assets are not dissipated prior to the time the creditor can obtain and enforce the anticipated judgment on his claim."). Given the substantial sum at issue—exceeding $940,000—and AHSC's demonstrated unwillingness to pay acknowledged contractual obligations,[2] there is a concrete risk that AHSC may dissipate, conceal, or

---

[2] AHSC has recently faced scrutiny in the media due to its financial issues, unpaid debts to vendors, and regulatory violations at multiple hospital facilities. *See* Biswas, Soma, *A Company Taking Over Steward Hospitals Has Struggled With Its Own Portfolio*, WALL ST. J. (Oct. 7, 2024) https://www.wsj.com/articles/a-company-taking-over-steward-hospitals-has-struggled-with-its-own-portfolio-0d1bb8ca; Mclean, Bethany, *Plunder, sell, repeat*, BUS. INSIDER (Mar. 17, 2025) https://www.businessinsider.com/american-hospitals-bankrupt-closing-wealthy-investors-looting-reselling-private-equity-2025-3?utm_source=copy-link&utm_medium=referral&utm_content=topbar.

52832.1

**14**

otherwise render critical assets unavailable prior to entry of judgment, which would frustrate NLMM's ultimate recovery and defeat the remedial purpose of attachment. Therefore, NLMM conclusively satisfies the third requirement of California Code of Civil Procedure Section 484.090(a).

### D.    The Amount to Be Secured by the Attachment is Greater Than Zero.

The amount to be secured by NLMM's writ of attachment is $940,358.28, which is greater than zero. (*See* Rabinovich Decl. ¶ 25.) Therefore, NLMM has satisfied the final requirement of California Code of Civil Procedure Section 484.090(a).

### E.    Plaintiff Will File an Undertaking Prior to the Issuance of the Writ of Attachment.

Under California law, a party seeking a writ of attachment must file an undertaking. Cal. Civ. Proc. Code § 489.210 ("Before issuance of a writ of attachment,… the plaintiff shall file an undertaking to pay the defendant any amount the defendant may recover for any wrongful attachment by the plaintiff in the action."). Unless otherwise ordered by a court, the statutory amount of the undertaking is $10,000. Cal. Civ. Proc. Code § 489.220.

NLMM is fully prepared and willing to file an undertaking in the statutory amount of $10,000 upon this Court's granting of the Application and prior to the issuance of the writ of attachment. However, an undertaking need not be filed before the Court rules on an application for attachment, but rather "***[b]efore issuance of a writ of attachment***." Cal. Civ. Proc. Code § 489.210 (emphasis added); *see, e.g.*, *ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*, 2010 WL 11570434, at *7 (C.D. Cal. Oct. 13, 2010) (recognizing that the right to attach order and writ of attachment "will not be issued until plaintiff's undertaking is provided to the court"). Accordingly, NLMM will promptly comply with the statutory undertaking requirement following this

52832.1

15

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

1 Court's ruling on the instant Application and prior to its issuance of the writ of

2 attachment.

3 **V.    CONCLUSION**

4       For the foregoing reasons, Plaintiff NLMM respectfully requests this Court to

5 grant its Application and issue a right to attach order and writ of attachment against

6 AHSC in the amount of $940,358.28.

7

8 DATED: May 12, 2025             FROST LLP

9

10

11                              By: _____

12                                  CHRISTOPHER FROST
                                    BENJAMIN KASSIS
13                                  DAVID TIRATURYAN
                                    Attorneys for Plaintiff
14                                  NORTHERN LIGHT MEDICAL
                                    MANAGEMENT, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR
RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Northern Light Medical Management, LLC certifies that this brief contains 4,929 words, which complies with the word limit of L.R. 11-6.1.

DATED: May 12, 2025          FROST LLP


By: _____
      DAVID TIRATURYAN

52832.1

17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT