1  CHRISTOPHER FROST (SBN 200336)
   chris@frostllp.com
2  BENJAMIN KASSIS (SBN 298844)
   ben@frostllp.com
3  DAVID TIRATURYAN (SBN 350995)
   david1@frostllp.com
4  FROST LLP
   10960 Wilshire Boulevard, Suite 2100
5  Los Angeles, California 90024
   Telephone: (424) 254-0441
6  Facsimile: (424) 600-8504

7  Attorneys for Plaintiff
   NORTHERN LIGHT MEDICAL
8  MANAGEMENT, LLC

9            UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  NORTHERN LIGHT MEDICAL          Case No. 2:25-cv-03643-MCS-BFM
    MANAGEMENT, LLC, a Wyoming
13  limited liability company,      *Assigned to: Hon. Mark C. Scarsi*

14            Plaintiff,            **DECLARATION OF MARK
                                    RABINOVICH IN SUPPORT OF
15        vs.                       PLAINTIFF NORTHERN LIGHT
                                    MEDICAL MANAGEMENT, LLC'S
16  AMERICAN HEALTHCARE             APPLICATION FOR RIGHT TO
    SYSTEMS CORP., INC., a Nevada   ATTACH ORDER AND WRIT OF
17  corporation; WAUKEGAN ILLINOIS  ATTACHMENT**
    HOSPITAL COMPANY, LLC, d.b.a.
18  VISTA MEDICAL CENTER EAST, an   *Filed concurrently with (i) Notice of
    Illinois limited liability company, Application and Hearing for Right to
19                                   Attach Order and Writ of Attachment;
              Defendants.           (ii) Application for Right to Attach
20                                   Order and Writ of Attachment; (iii)
                                    Right to Attach Order and Order for
21                                   Issuance of Writ of Attachment; and (iv)
                                    Memorandum of Points and Authorities
22                                   in Support of Application for Right to
                                    Attach Order and Writ of Attachment*
23
                                    Hearing:
24                                   Judge:  Hon. Brianna Fuller Mircheff
                                    Date:    June 17, 2025
25                                   Time:    10:00 a.m.
                                    Crtrm.:  780 (7th Floor)
26                                            Roybal Federal Building
                                             255 E. Temple Street
27                                            Los Angeles, California 90012

28                                   Action Filed:   April 24, 2025

53983.2

## DECLARATION OF MARK RABINOVICH

I, Mark Rabinovich, declare as follows:

1.    I am the Executive Vice President of Northern Light Medical Management, LLC ("NLMM" or "Plaintiff"), which is a party to this action. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and, if called upon to testify as a witness, I could and would competently testify thereto. I make this Declaration in support of NLMM's Application for a Right to Attach Order and Writ of Attachment, filed concurrently herewith.

2.    NLMM is a medical practice management company headquartered in Hollywood, Florida, which specializes in staffing, managing, and overseeing comprehensive hospital-based radiology services nationwide.

3.    On or about September 18, 2024, NLMM and Defendant American Healthcare Systems Corp., Inc. ("AHSC" or "Defendant") entered into a written Master Services Agreement for Hospital-Based Radiology and related Facility Addenda (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

4.    I was directly involved in negotiating and drafting the terms and conditions of the Agreement and have personal knowledge of its contents and the obligations set forth therein.

5.    Pursuant to the Agreement, NLMM undertook to provide full-service radiology at two AHSC-owned facilities: Vista Medical Center East in Waukegan, Illinois ("Vista"), and Randolph Health Hospital in Asheboro, North Carolina ("Randolph").

6.    NLMM agreed to provide, among other things, continuous onsite and remote radiological examinations, interpretations, consultations, physician recruitment, oversight of radiology protocols, regulatory compliance, and administrative support services. (*See* Ex. A, §§ 2.01–2.03.)

53983.2

1

DECLARATION OF MARK RABINOVICH

7.    In exchange, AHSC agreed to pay NLMM fixed monthly amounts for radiology services rendered, based upon historical radiological interpretation averages.

8.    For services that NLMM performed at Vista, AHSC agreed to pay NLMM a fixed monthly amount of $183,533.08 for each of the first four months of the Agreement, corresponding to a historical average of 5,798.83 interpretations per month. (Ex. A at 29, Facility Addendum for Vista.)

9.    The Agreement also required AHSC to reimburse NLMM for certain contractually defined "pass-through" costs, including credentialing fees, locum tenens physician coverage, and radiology workstation equipment. These costs were to be invoiced separately and were payable by AHSC within thirty days of receipt of an undisputed invoice.

10.    NLMM commenced performance under the Agreement on December 2, 2024, staffing Vista with qualified radiologists and delivering comprehensive radiology services without interruption, consistent with all of its contractual obligations. Further, AHSC accepted the services rendered by NLMM without objection or complaint.

11.    In accordance with the Agreement, NLMM timely issued monthly invoices to AHSC for radiology services rendered at Vista. Specifically, NLMM issued the following invoices for services rendered at Vista:

    a.    Invoice No. 000171 on October 25, 2024;

    b.    Invoice No. 000202 on November 14, 2024; and

    c.    Invoice No. 000242 on December 12, 2024.

12.    True and correct copies of the invoices for radiology services issued by NLMM are attached hereto as **Exhibits B, C, and D**, respectively.

13.    On December 10, 2024, AHSC made a single partial payment of $75,000, which NLMM applied toward Invoice No. 000171.

53983.2

2

DECLARATION OF MARK RABINOVICH

14.    Notwithstanding this $75,000 payment, AHSC has failed, and continues to fail, to pay the remaining balance owed under Invoice No. 000171, as well as the entire amounts owed under Invoice Nos. 000202 and 000242. Thus, to date, the outstanding balance owed by AHSC for the radiology services rendered by NLMM totals $475,599.24, exclusive of accrued interest and any additional amounts due.

15.    NLMM also timely invoiced AHSC for permissible pass-through costs specifically authorized by Section 5.03 of the Agreement. Specifically, NLMM issued the following invoices for pass-through costs incurred at Vista:

a.    Invoice No. 000213 on November 22, 2024, for locum tenens physician coverage in October 2024;

b.    Invoice No. 000265 on December 23, 2024, for locum tenens physician coverage in November 2024;

c.    Invoice No. 000291 on December 31, 2024, for additional locum tenens physician coverage in November 2024;

d.    Invoice No. 000294 on January 6, 2025, for radiology workstation equipment; and

e.    Invoice No. 000319 on January 24, 2024, for locum tenens physician coverage in December 2024.

16.    True and correct copies of the invoices for pass-through costs issued by NLMM are attached hereto as **Exhibits E, F, G, H, and I**, respectively.

17.    To date, AHSC has failed, without justification or dispute, to reimburse NLMM for any of these pass-through costs, which total $440,803.04, exclusive of accrued interest and any additional amounts due.

18.    AHSC also failed to fulfill its contractual obligation under Section 3.05 of the Agreement—which required AHSC to provide NLMM "commercially reasonable cooperation" with technology integration—by neglecting to timely pay Oracle Corporation the sum of $47,912.00 necessary to integrate the Cerner electronic health record system used at Vista with NLMM's technology platform.

19.     In response to AHSC's failure to timely pay Oracle, and to mitigate further delays, NLMM agreed in writing to share the integration expenses with AHSC. On November 7, 2024, NLMM's CEO, Patrick F. Santore, Jr., memorialized NLMM's offer to pay 50 percent of the Cerner integration expenses, up to a maximum of $25,000.

20.     AHSC, through Vista's CEO Kevin Spiegel, accepted this arrangement in writing on November 11, 2024. A true and correct copy of this written agreement is attached hereto as **Exhibit J**.

21.     Consistent with this supplemental agreement, NLMM promptly paid its 50 percent share of the Cerner integration cost in the amount of $23,956.00, pursuant to an invoice sent to NLMM by Vista on November 11, 2024. A true and correct copy of the invoice Vista sent to NLMM is attached hereto as **Exhibit K**.

22.     Nevertheless, AHSC never paid its share of the integration cost, and as a result, the Cerner integration was never completed. Because of this, NLMM's operations were significantly impaired, and particularly, its ability to submit claims to third-party payors for reimbursement was disrupted. As a result, on January 2, 2025, NLMM sent AHSC Invoice No. 000292 for the $23,956.00 it had paid to Vista. A true and correct copy of Invoice No. 000292 is attached hereto as **Exhibit L**.

23.     On February 27, 2025, NLMM, through counsel, sent AHSC a detailed formal demand letter specifying all overdue sums and breaches. A true and correct copy of the demand letter is attached hereto as **Exhibit M**.

24.     To date, AHSC has not responded to the demand letter, nor has it made further payments toward its outstanding obligations.

25.     Thus, as of the date of this Declaration's execution, AHSC owes NLMM no less than $940,358.28 in clearly documented and undisputed debt. This amount excludes further compensation that NLMM anticipates will be due following reconciliation of actual interpretation volumes withheld by AHSC, as well as accrued interest and any other additional amounts due.

53983.2

4

DECLARATION OF MARK RABINOVICH

26.    The Agreement does not provide any collateral or other form of security guaranteeing AHSC's performance. Therefore, AHSC's outstanding obligations are unsecured.

27.    NLMM is seeking a right to attach order and writ of attachment solely to ensure recovery of these indisputably due obligations. Further, NLMM does not seek attachment for any improper purpose, but only to preserve and protect its legitimate interests in securing the eventual judgment it anticipates obtaining in this action.

28.    NLMM is fully prepared and willing to post an undertaking in the statutory amount of $10,000 promptly following the Court's granting of this Application, and prior to the issuance of the writ of attachment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of May, 2025, at Hollywood, Florida.

Signed by:

844755B34E7B433...
Mark Rabinovich