# EXHIBIT M



February 27, 2025

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

American Healthcare Systems Corp., Inc.
Attn: Faisal Gill
505 N. Brand Blvd., Suite 1110
Glendale, California 91203

    **Re:**    **Demand for Payment and Dispute Notice Pursuant to Master Services Agreement**

To Whom it May Concern:

Please be advised that this firm represents Northern Light Medical Management, LLC ("NLMM" or "our client") in connection with American Healthcare Systems Corp., Inc.'s ("AHSC") ongoing failure to fulfill its payment obligations under the Master Services Agreement for Hospital-Based Radiology (the "Agreement"), dated September 25, 2024.

Despite NLMM's full performance under the Agreement, AHSC has unjustifiably withheld payment on multiple undisputed invoices for professional radiology services and related pass-through costs. By failing to remit these sums, AHSC stands in direct violation of Sections 5.02(A) and 5.03 of the Agreement, which require timely payment for all services rendered and reimbursement of certain operational expenses incurred by NLMM.

Accordingly, NLMM has retained this firm to pursue all available legal and equitable measures under the Agreement and applicable law—including, if necessary, initiating litigation—to enforce AHSC's payment obligations and recover all amounts owed.

/ / /

/ / /

February 27, 2025
Page 2

Specifically, Section 5.02(A)(1) provides that AHSC is required to remit payment for services rendered on a monthly basis, with payments due on the first day of each calendar month. Sections 5.02(A)(3) and (A)(4), in conjunction with the Facility Addendum for Vista Medical Center East ("Vista"), establish that the first four invoices for professional radiology services at Vista are to be billed at a fixed rate of $183,533.08 per month, based on the historical average of 5,798.83 Interpretations[1] per month. NLMM issued the subject invoices in compliance with these provisions, which reflect the agreed-upon Interpretation volume and per-Interpretation rate.

AHSC has no basis for its failure to remit payment on these invoices, as these amounts were predetermined and agreed upon at the outset of the Agreement. NLMM has fully performed its obligations by providing on-site and remote radiology coverage. AHSC has received and benefitted from these services without any issue as to the quality or timeliness of NLMM's performance. Yet, notwithstanding a single $75,000 payment, AHSC has unjustifiably failed to remit payment for the remaining invoiced amounts.

In addition to withholding payment for services rendered, AHSC has also failed to reimburse our client for certain pass-through costs, as required under Section 5.03 of the Agreement. These costs include locum tenens coverage, workstation costs, and technology integration expenses, all of which were incurred to maintain uninterrupted radiology services at Vista.

Section 5.03(B)(1) expressly requires AHSC to reimburse our client for all labor costs exceeding the agreed-upon "Labor Cost Allowance" of $246,715.83 per month for Vista. (*See* Agreement, p. 29.) However, AHSC has failed to reimburse multiple invoices reflecting necessary locum tenens expenses for the months of October, November, and December 2024, which NLMM advanced in order to sustain proper coverage at Vista.

Additionally, Section 5.03(D) and (E) require AHSC to reimburse NLMM for workstation costs and other necessary expenses incurred in the course of providing radiology services at Vista. Section 5.03(D) provides that "[t]o the extent the number of workstations acquired for Physicians exceeds the number of workstations anticipated in the Proforma, the cost associated with the said excess shall be passed through to [AHSC]." NLMM acquired additional workstations to accommodate required radiology staffing and to ensure continuity of service, and AHSC is obligated to reimburse our client for these costs.

Under Section 3.05, AHSC was required to provide our client with commercially reasonable cooperation in the technology integration process. Moreover, Section 5.03(E) states that "any other expense which [AHSC] requires [NLMM] to incur, shall be passed through to and reimbursed by [AHSC] to the extent such expense is not otherwise included as an allowance under this Agreement or the relevant Facility Addendum."

In early November 2024, NLMM discovered that AHSC had failed to pay Cerner for necessary integration work. To prevent delays and ensure that NLMM could begin providing services on

---

[1] For reference, the Agreement defines an "Interpretation" as "a distinct diagnostic procedure corresponding to a single CPT Code." (*See* Agreement, § 1.02.)

February 27, 2025
Page 3

December 2, 2024, NLMM agreed—as a gesture of good faith—to cover 50% of the one-time Cerner integration costs, up to a maximum of $25,000.00. (*See* Ex. J [Memorandum from Patrick F. Santore, Jr.].) Despite NLMM's good-faith cooperation and financial contribution, AHSC failed to complete the integration as it was contractually obligated to do, preventing our client from billing third parties for services rendered at Vista. Indeed, AHSC not only failed to work with NLMM's team on integration but also refused to pay its own share of the associated costs. Therefore, AHSC's refusal to cooperate with NLMM and its failure to fulfill its payment obligations constitute yet another bad-faith breach of the Agreement.

Finally, under Section 5.03(F), AHSC was required to remit payment for all pass-through costs within thirty days of receiving an undisputed invoice. The outstanding invoices for locum tenens staffing, workstation procurement, and Cerner integration were properly issued in accordance with the Agreement. AHSC's failure to make any payments toward these invoices constitutes a material breach of Section 5.03.

As such, as of the date of this letter, AHSC owes our client at least $940,358.28 for professional services rendered and pass-through costs.[2] The following tables detail the outstanding invoices that remain due and payable:

| **UNPAID INVOICES FOR SERVICES RENDERED** | | | |
|---|---|---|---|
| **INVOICE NO.** | **INVOICE DATE** | **DESCRIPTION** | **AMOUNT DUE** |
| 000171 | Oct. 25, 2024 | First Monthly Invoice | $108,533.08[3] |
| 000202 | Nov. 14, 2024 | Second Monthly Invoice | $183,533.08 |
| 000242 | Dec. 12, 2024 | Third Monthly Invoice | $183,533.08 |
| **TOTAL** | | | $475,599.24 |

| **UNPAID INVOICES FOR PASS-THROUGH COSTS** | | | |
|---|---|---|---|
| **INVOICE NO.** | **INVOICE DATE** | **DESCRIPTION** | **AMOUNT DUE** |
| 000213 | Nov. 22, 2024 | Locum Tenens – Oct. 2024 | $28,721.74 |
| 000265 | Dec. 23, 2024 | Locum Tenens – Nov. 2024 | $41,449.39 |
| 000291 | Dec. 31, 2024 | Locum Tenens – Nov. 2024 | $51,710.00 |
| 000292 | Jan. 2, 2025 | Cerner Integration | $23,956.00 |
| 000294 | Jan. 6, 2025 | Workstations | $106,557.27 |
| 000319 | Jan. 24, 2025 | Locum Tenens – Dec. 2024 | $212,364.64 |
| **TOTAL** | | | $464,759.04 |

Accordingly, you are hereby demanded to provide a written response confirming your unconditional commitment to remit full payment of the outstanding balance of $940,358.28, as detailed above, and to comply with all future payment obligations under the Agreement, by no later than March 3, 2025.

---

[2] True and correct copies of all outstanding invoices, reflecting the amounts due under the Agreement, are enclosed herewith as **Exhibits A through I**.

[3] Although the original invoice amount was $183,533.08, NLMM received a $75,000 payment from AHSC on December 10, 2024, which was applied to this invoice, reducing the outstanding balance to $108,533.08.

February 27, 2025
Page 4

Should you fail to do so, NLMM will pursue all available legal and equitable remedies, including filing a legal action against AHSC and all other responsible parties to recover the full amount it is owed. Our client will also seek all available prejudgment remedies, including, but not limited to, a writ of attachment against AHSC's assets to secure payment. Additionally, NLMM will pursue the full extent of its damages, including compensatory damages, statutory interest, attorneys' fees and costs, and, where applicable, punitive damages arising from AHSC's bad-faith refusal to meet its contractual obligations. For the avoidance of doubt, although the amounts stated above reflect the current outstanding invoices, NLMM's claim is not limited to these unpaid sums. NLMM reserves the right to seek additional damages resulting from AHSC's contractual breaches, including, but not limited to, losses arising from service delays and unreimbursed costs caused by AHSC's misconduct.

In light of the foregoing, AHSC is hereby placed on formal notice of its duty to preserve all relevant documents, records, and electronically stored information related to the Agreement and the matters addressed in this letter. This includes, but is not limited to, all communications, financial records, invoices, payment histories, banking records, contracts, emails, text messages, and any other materials, whether in physical or electronic form, that relate in any way to the Agreement, the outstanding invoices, or any other matter addressed in this letter.

You are further instructed to immediately suspend any routine document destruction or modification policies that could result in the loss or alteration of relevant evidence. Your failure to comply with these obligations may result in serious legal consequences, including monetary penalties, exclusion of evidence in any future litigation, or other court-imposed sanctions.

This letter is not intended to serve as a full or complete recitation of all relevant facts or applicable law, and nothing herein is intended as, nor should it be construed as, a waiver or relinquishment of any of our client's rights, remedies, or claims, whether legal or equitable, all of which are expressly reserved. Our client's investigation is ongoing, and additional facts may come to light that could further substantiate existing claims or give rise to new ones, all of which our client expressly reserves the right to pursue.

NLMM strongly urges AHSC to resolve this matter without the need for legal action. Absent AHSC's full compliance by March 6, 2025, our client will take all necessary steps to enforce its rights.

Regards,

CHRISTOPHER FROST
chris@frostllp.com
FROST LLP