1  CHRISTOPHER FROST (SBN 200336)
   chris@frostllp.com
2  BENJAMIN KASSIS (SBN 298844)
   ben@frostllp.com
3  DAVID TIRATURYAN (SBN 350995)
   david1@frostllp.com
4  FROST LLP
   10960 Wilshire Boulevard, Suite 2100
5  Los Angeles, California 90024
   Telephone: (424) 254-0441
6  Facsimile: (424) 600-8504

7  Attorneys for Plaintiff
   NORTHERN LIGHT MEDICAL
8  MANAGEMENT, LLC

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  NORTHERN LIGHT MEDICAL          Case No. 2:25-cv-03643-MCS-BFM
    MANAGEMENT, LLC, a Wyoming
13  limited liability company,       *Assigned to: Hon. Mark C. Scarsi*

14            Plaintiff,             **REPLY MEMORANDUM IN
                                     SUPPORT OF PLAINTIFF
15      vs.                          NORTHERN LIGHT MEDICAL
                                     MANAGEMENT, LLC'S
16  AMERICAN HEALTHCARE              APPLICATION FOR RIGHT TO
    SYSTEMS CORP., INC., a Nevada    ATTACH ORDER AND WRIT OF
17  corporation; WAUKEGAN ILLINOIS   ATTACHMENT
    HOSPITAL COMPANY, LLC, d.b.a.
18  VISTA MEDICAL CENTER EAST, an    *Filed concurrently with Declaration of
    Illinois limited liability company;  Mark Rabinovich*
19  DOES 1 through 50, inclusive,
                                     Hearing Information
20            Defendants.            Judge:  Hon. Brianna Fuller Mircheff
                                     Date:   July 1, 2025
21                                   Time:   10:00 a.m.
                                     Crtrm.: 780 (7th Floor)
22                                           Roybal Federal Building
                                             255 E. Temple Street
23                                           Los Angeles, California 90012
24
25                                   Action Filed:   April 24, 2025
26
27
28

# <u>**TABLE OF CONTENTS**</u>

I.  INTRODUCTION ............................................................................................. 1

II.  ARGUMENT .................................................................................................... 2

    A.  AHSC Does Not Rebut NLMM's Showing of Probable Validity On its Breach of Contract Claim. ........................................................... 3

        1.  NLMM Has Presented Clear and Undisputed Evidence of Its Contractual Entitlement to Payment. .................................... 3

        2.  AHSC's Purported Performance Complaints Are Unpersuasive and Do Not Rebut NLMM's Right to Payment. ............................... 4

        3.  AHSC's Failure to Use Available Contractual Remedies Belies Its Argument. ..................................................................... 6

        4.  NLMM Satisfied All Labor Cost Allowance Requirements, and AHSC Remains Liable for Excess Locum Tenens Costs. .................. 8

        5.  NLMM Staffed a Medical Director at Vista. ....................................... 8

        6.  AHSC's Fraud Argument Fails and Does Not Preclude Attachment. ...................................................................... 9

    B.  NLMM's Common Count Claim for Goods and Services Rendered Has Probable Validity. .......................................................... 11

    C.  The Evidence AHSC Proffers is Unpersuasive. ...................................... 12

III.  CONCLUSION ............................................................................................. 15

i

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Blastrac, N.A. v. Concrete Sols. & Supply*,
5
    678 F. Supp. 2d 1001 (C.D. Cal. 2010) ................................................................. 3

6

*ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*,
7
    No. CV103108DSFAJWX, 2010 WL 11570434 (C.D. Cal. Oct. 13,
8
    2010) ..................................................................................................................... 11

9

*Greer v. Cnty. of San Diego*,
    726 F. Supp. 3d 1058 (S.D. Cal. 2023) ................................................................ 13
10

*Henry v. Napa Valley Unified*,
11
    No. 16-CV-04021-MEJ, 2016 WL 7157670 (N.D. Cal. Dec. 8,
12
    2016) ..................................................................................................................... 12

13

*Intervest Mortg. Inv. Co. v. Skidmore*,
14
    No. CIV S08-1543LKK/DAD, 2008 WL 5385880 (E.D. Cal. Dec.
15
    19, 2008) ................................................................................................................. 9

*MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*,
16
    No. 5:18-CV-01096-RGK-JC, 2019 WL 6655398 (C.D. Cal. May
17
    15, 2019) ................................................................................................................. 5

18

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
19
    904 F.3d 821 (9th Cir. 2018), *holding modified by Anderson v.
    Edward D. Jones & Co., L.P.*, 990 F.3d 692 (9th Cir. 2021) ................................ 7
20

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
21
    790 F. Supp. 2d 1134 (C.D. Cal. 2011) ................................................................. 9

22

*Pet Food Exp. Ltd. v. Royal Canin USA Inc.*,
23
    No. C 09-01483 MHP, 2009 WL 2252108 (N.D. Cal. July 28, 2009) .................. 4

24

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., Div. of Goodyear
25
    Tire & Rubber Co.*,
26
    112 F. Supp. 2d 1178 (C.D. Cal. 2000) ............................................................ 6, 12

27

*Roling v. E*Trade Sec. LLC*,
    860 F. Supp. 2d 1035 (N.D. Cal. 2012) ................................................................ 7
28

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................................................ 12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................... 9

**California Cases**

*Higgins v. Desert Braemar, Inc.*,
    219 Cal. App. 2d 744 (1963) ............................................................................. 11

*Hill v. Superior Ct. in & for Alameda Cnty.*,
    16 Cal. 2d 527 (1940) ....................................................................................... 11

*Leoni v. Delany*,
    83 Cal. App. 2d 303 (1948) ............................................................................... 11

*Loeb & Loeb v. Beverly Glen Music, Inc.*,
    166 Cal. App. 3d 1110 (1985) ......................................................................... 2, 3

*Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*,
    41 Cal. App. 5th 357 (2019) ............................................................................... 5

*Maglica v. Maglica*,
    66 Cal. App. 4th 442 (1998), *as modified on denial of reh'g* (Sept.
    28, 1998) ........................................................................................................... 12

*Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*,
    18 Cal. App. 5th 881 (2017) ............................................................................... 2

**Other State Cases**

*Ricky Spoon Builders, Inc. v. EmGee LLC*,
    286 N.C. App. 684 (2020) .................................................................................. 6

**Federal Statutes**

42 U.S.C.
    § 1320d-6 .......................................................................................................... 4

Health Insurance Portability and Accountability Act ............................................... 4

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT,
LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

## California Statutes

Cal. Civ. Proc. Code
    § 481.190 .................................................................................. 2
    § 483.015 .................................................................................. 6
    § 483.015(b) ............................................................................. 6
    § 484.050(b) ............................................................................. 2
    § 484.090 ............................................................................ 9, 15

Confidentiality of Medical Information Act (Cal. Civ. Code
    § 56 *et seq.*) ............................................................................ 4

## Other State Statutes

Illinois Medical Patient Rights Act (410 Ill. Comp. Stat. 50/0.01 *et
    seq.*) .......................................................................................... 4

## Federal Rules

Fed. R. Evid. 106 ............................................................................ 13

Fed. R. Evid. 701, 702 ................................................................... 13

Fed. R. Evid. 901(a) ....................................................................... 13

Fed. R. Civ. P. 5.2 .......................................................................... 4

Fed. R. Civ. P. 9(b) ........................................................................ 9

## Local Rules

C.D. Cal. R. 5-4.3.2 ....................................................................... 4

C.D. Cal. R. 5.2-1 .......................................................................... 4

## Other Authorities

Ahart, *Enforcing Judgments and Debts,* ¶ 4:20 (2025 rev.) ...................................... 11

Ahart, *Enforcing Judgments and Debts,* ¶¶ 4:145–4:156 (1998 rev.) ...................... 12

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

## I.       INTRODUCTION

Defendants' Opposition to Plaintiff's Application for a Writ of Attachment is an exercise in deflection and revisionist history. Confronted with incontrovertible proof of its obligation to pay Plaintiff at least $940,358.28, Defendants attack only the "probable validity" element of the Application by attempting to muddy the waters with generalized and unsupported allegations of performance deficiencies—none of which, even if true, relieve Defendants of their crystal clear payment obligations under the governing Master Services Agreement and incorporated Facility Addenda (the "Agreement"). The Opposition resorts to assertions of subjective dissatisfaction, isolated and immaterial incidents of alleged delays, and purported quality complaints that were never raised through the proper channels during the term of the Agreement. Most notably, Defendants do not deny their express obligation under the Agreement to make fixed, monthly payments for radiology services rendered during the initial four months of service. Yet, now that Plaintiff has sued, Defendants allege purported performance issues as defenses to the payment obligations that *Defendants* have breached. A defendant cannot avoid attachment merely by raising subjective performance complaints that were untimely, waived by continued acceptance of services, or immaterial to its unconditional contractual payment obligations.

Nor does American Healthcare Systems Corp., Inc's ("AHSC") challenge to Northern Light Medical Management, LLC's ("NLMM") invoices for pass-through costs have merit. AHSC incorrectly asserts that NLMM improperly invoiced excess locum tenens costs without meeting the monthly $246,715.83 "Labor Cost Allowance" specified in the Agreement. However, NLMM submits evidence demonstrating that it has, in fact, satisfied that requirement. (*See* Declaration of Mark Rabinovich ISO Reply Mem. ["Supp. Rabinovich Decl."] ¶¶ 2–4, Ex. A.) Likewise, AHSC disputes workstation expenses exceeding the three initially estimated in the Proforma, yet the Agreement provides for passing through precisely these excess workstation costs. (*See* ECF No. 14-4 ["Agreement"] § 5.03(D).)

1

AHSC's arguments are also belied by its own conduct: despite now alleging material breaches, AHSC never issued a formal notice of breach or demand for cure during the term of the Agreement. To the contrary, AHSC continued to accept and benefit from NLMM's services without objection. Further, AHSC's effort to recast its dissatisfaction as purportedly fraudulent conduct by NLMM is unsupported. AHSC's declarations fail to identify any specific, actionable misrepresentation by NLMM and instead rely on conclusory assertions that NLMM overstated its staffing capabilities, which are directly contradicted by the services NLMM rendered and the detailed provisions in the Agreement contemplating variable staffing arrangements and pass-through staffing costs.

Accordingly, NLMM respectfully requests that the Court grant its Application and issue the requested Right to Attach Order and Writ of Attachment to secure payment of the undisputed amounts due to it under the Agreement.

## II.    ARGUMENT

At this preliminary stage of the litigation, NLMM need not conclusively prove its claims, but must merely demonstrate their probable validity—i.e., NLMM must show that it is "more likely than not" to obtain a judgment on its asserted claims. Cal. Civ. Proc. Code § 481.190; *Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*, 18 Cal. App. 5th 881, 885 (2017). This is because "[t]he usual and main purpose of an attachment is to secure and insure the payment of any judgment that may be recovered in the successful prosecution of an action in order that the ends of successful litigation are not fruitlessly pursued or frustrated." *Loeb & Loeb v. Beverly Glen Music*, Inc., 166 Cal. App. 3d 1110, 1118 (1985); *see Santa Clara*, 18 Cal. App. 5th at 889. However, "[w]hether [the applicant's] claims are 'actually valid' is determined in a subsequent proceeding and not affected by the court's order on the applications for prejudgment attachment." *Santa Clara*, 18 Cal. App. 5th at 889 (citing Cal. Civ. Proc. Code § 484.050(b)).

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

"'In determining the probable validity of a claim where the defendant makes an appearance, the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation.'" *Blastrac, N.A. v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001, 1005 (C.D. Cal. 2010) (quoting *Loeb & Loeb*, 166 Cal. App. 3d at 1120).

Here, NLMM has demonstrated that its breach of contract claim and its common count claim for goods and services rendered have probable validity, and AHSC's Opposition does not meaningfully rebut that showing.

**A.    AHSC Does Not Rebut NLMM's Showing of Probable Validity On its Breach of Contract Claim.**

**1.    NLMM Has Presented Clear and Undisputed Evidence of Its Contractual Entitlement to Payment.**

NLMM has established the probable validity of its breach of contract claim by presenting evidence demonstrating: (i) the existence and enforceability of the Agreement; (ii) NLMM's performance of its contractual obligations, including providing the requisite radiology services, issuing timely and accurate invoices, and complying with all material terms of the Agreement; and (iii) AHSC's undisputed failure to remit payments for clearly documented invoices totaling no less than $940,358.28. (*See generally* ECF No. 14-3, Declaration of Mark Rabinovich ISO Appl. for Writ of Attachment ["Rabinovich Decl."]; ECF Nos. 14-4–14-15 [Exs. A– L to Rabinovich Decl.].)

AHSC has not contested these foundational facts. AHSC tacitly concedes both the validity of the Agreement and that NLMM provided radiology services at Waukegan Illinois Hospital Company, LLC's ("Vista") facility. AHSC's partial payment of $75,000 on December 10, 2024, further confirms that it accepted its payment obligations. (*See* Rabinovich Decl. ¶ 13.) Thus, the essential elements of NLMM's claim remain unrebutted on the present record, and AHSC's obligation to pay NLMM under the Agreement is clearly established.

3

**2.** **AHSC's Purported Performance Complaints Are Unpersuasive and Do Not Rebut NLMM's Right to Payment.**

Faced with NLMM's prima facie showing, AHSC attempts to cloud the issue by invoking its purported dissatisfaction with aspects of NLMM's services, pointing to its supporting declarations[1] and attaching isolated email exchanges to show performance-related issues. Even if accepted at face value, the generalized assertions in AHSC's supporting declarations fail to rebut NLMM's clear entitlement to payment. *See Pet Food Exp. Ltd. v. Royal Canin USA Inc.*, No. C 09-01483 MHP, 2009 WL 2252108, at *5 (N.D. Cal. July 28, 2009) (stating that an applicant for prejudgment attachment must show that the non-moving party's claimed defense is "less than fifty percent likely to succeed" to establish probable validity).

First, AHSC does not demonstrate that NLMM's entitlement to payment under the Agreement was conditioned upon AHSC's unilateral determination of the adequacy of NLMM's services. Under Section 5.02(A)(3) of the Agreement, AHSC agreed to pay NLMM a *fixed* amount of $183,533.08 for the first four months of radiology services provided at Vista, subject to adjustments for actual fee-for-service

---

[1] Several exhibits attached to AHSC's supporting declarations contain confidential, personally identifiable patient medical information and patient birth dates which were electronically filed publicly without proper redaction. (*See, e.g.*, ECF No. 20-1, Declaration of Michele Newby at 6, 7, 10, 12, 14, 15, 16, 17, 18, 19, 33, 35, 37, Exs. 1 & 3; ECF No. 20-2, Declaration of Michael Tartakovsky at 4, Ex. 1.) This violates, among other things, Federal Rule of Civil Procedure 5.2, Local Rules 5.2-1 and 5-4.3.2, the Health Insurance Portability and Accountability Act ("HIPAA"), California's Confidentiality of Medical Information Act (Cal. Civ. Code § 56 *et seq.*), and Illinois' Medical Patient Rights Act (410 Ill. Comp. Stat. 50/0.01 *et seq.*). *See also* 42 U.S.C. § 1320d-6 (providing criminal penalties for unauthorized disclosure of individually identifiable health information maintained by a HIPAA-covered entity). This District's Local Rules specifically require counsel to "carefully examine" and redact sensitive personal identifiers from filings, and further warn that failure to comply may subject counsel and parties to discipline. C.D. Cal. R. 5.2-1; C.D. Cal. R. 5-4.3.2.

4

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

collections under the Agreement's Collection Adjustment and True-Up provisions. (*See* Agreement § 5.02(A)(3), (5)–(6); *id.* at 29 [Facility Addendum for Vista].)

AHSC's cited arguments, therefore, primarily reflect post hoc complaints rather than genuine contractual defenses. Nonetheless, these alleged performance issues do not void AHSC's obligation to remit payment to NLMM, particularly as to the three fixed monthly invoices of $183,533.08 each for radiology services rendered at Vista. Indeed, AHSC's partial payment of $75,000 on December 10, 2024—applied to the first invoice after receiving over a month of NLMM's services (*see* Rabinovich Decl. ¶¶ 13–14)—constitutes an acknowledgment of both the validity of the invoices and AHSC's satisfaction with NLMM's performance at that time. Having accepted the services and acknowledged the debt through a partial payment, AHSC cannot now retroactively manufacture performance deficiencies to escape its remaining $475,599.24 obligation for these fixed-amount invoices. *See MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, No. 5:18-CV-01096-RGK-JC, 2019 WL 6655398, at *5 (C.D. Cal. May 15, 2019) (finding waiver where party accepted breaching party's untimely payments and continued performing on the contract after the alleged breach, noting that "treating the contract as binding after full knowledge of the breach is a waiver of the right to rescind the contract for the material breach").

Even assuming, for the sake of argument, that AHSC's asserted complaints have merit—which NLMM disputes—such complaints would at most establish minor deviations from NLMM's contractual obligations and are insufficient to constitute a material breach excusing AHSC's obligation to pay. Under California law, "[s]ubstantial performance is sufficient, and justifies an action on the contract, although the other party is entitled to a reduction in the amount called for by the contract, to compensate for the defects." *Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*, 41 Cal. App. 5th 357, 364 (2019) (quotation marks omitted). Even if the Court were to apply North Carolina law to the Agreement, "North Carolina recognizes the equitable doctrine of substantial performance, which 'allow[s] a party to recover on a

contract although [it] has not literally complied with its provisions.'" *Ricky Spoon Builders, Inc. v. EmGee LLC*, 286 N.C. App. 684, 690, ¶ 18 (2020) (citation omitted, alterations in original). Thus, AHSC's evidence reflects, at worst, isolated or correctable performance issues, which are precisely the kind of minor defects the doctrine of substantial performance contemplates.

Moreover, California law contemplates a mechanism to address precisely such issues: any amount to be secured by attachment may be reduced by the amount necessary to compensate for any minor deficiencies in performance. *See* Cal. Civ. Proc. Code § 483.015(b); *see also Pos-A-Traction*, 112 F. Supp. 2d at 1183 ("'[T]o sustain reduction in a writ amount, most courts require that the defendant [or counterdefendant] provide enough evidence about its counterclaims [or claims] and/or defenses to prove a prima facie case.'" (alterations in original, citation omitted)). To the extent the Court finds that any of AHSC's purported defenses or claimed offsets have probable validity or have sufficient merit to satisfy the statutory criteria under Code of Civil Procedure section 483.015—although NLMM maintains that none of AHSC's assertions rise to that standard—the appropriate remedy is to reduce the amount secured by the writ of attachment accordingly, not to deny NLMM's application outright.

Therefore, even if the Court were inclined to credit AHSC's allegations, such minor deviations do not negate the probable validity of NLMM's breach of contract claim or AHSC's corresponding obligation to pay the invoiced amounts. At this preliminary stage, any dispute regarding minor performance defects, even if accepted as true, do not negate the probable validity of NLMM's claims.

### 3. AHSC's Failure to Use Available Contractual Remedies Belies Its Argument.

AHSC's assertion of purported dissatisfaction is notably inconsistent with AHSC's own conduct during the relevant contractual period. Specifically, the Agreement provided AHSC a clear remedy if it genuinely believed NLMM had

materially breached its performance obligations by way of a right to notify NLMM in writing of specific breaches and demand cure within thirty days. (Agreement § 9.02(B).) If NLMM failed to cure any alleged deficiency, AHSC had the right to terminate the Agreement. (*Id.*; *see also id.* § 9.02(A) [allowing either party to terminate the Agreement "with or without cause" upon providing 120 days' written notice of intent to terminate].)

Yet, AHSC never invoked these contractual remedies. At no time did AHSC provide NLMM with written notice demanding cure, nor did AHSC unilaterally seek to terminate the Agreement or even threaten such termination based upon NLMM's alleged deficiencies.[2] (Supp. Rabinovich Decl. ¶ 7.) Instead, it continued to accept and benefit from NLMM's services, thus waiving its ability to now raise these alleged breaches as defenses against payment. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 833 (9th Cir. 2018), *holding modified by Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692 (9th Cir. 2021) ("As a general rule, when a contracting party has knowledge of a breach by the other party and nonetheless accepts some performance of the contract, he or she has waived the breach."); *Roling v. E*Trade Sec. LLC*, 860 F. Supp. 2d 1035, 1039 (N.D. Cal. 2012) ("where a plaintiff has knowledge of the defendant's breach and continues to perform under the contract and/or accepts the defendant's performance without notifying the defendant of the breach, a waiver is fairly implied.").

Nonetheless, AHSC's failure to exercise this right to terminate despite its purported gripes with NLMM's performance belies any suggestion that these issues were serious enough to excuse non-payment. In other words, AHSC cannot credibly

---

[2] Had AHSC genuinely contested NLMM's performance under the Agreement, it could have, at the very least, raised those concerns in response to the demand letter NLMM sent to AHSC on February 27, 2025. (*See* ECF No. 14-16.) Instead, AHSC chose not to respond at all.

claim performance deficiencies justified its payment default when it chose to retain NLMM's services instead of exercising its express termination rights.

### 4. NLMM Satisfied All Labor Cost Allowance Requirements, and AHSC Remains Liable for Excess Locum Tenens Costs.

Contrary to AHSC's assertions, NLMM satisfied its monthly "Labor Cost Allowance" obligation of $246,715.83 by absorbing all labor expenses up to this threshold, as required by Section 5.03(B). (Supp. Rabinovich Decl. ¶¶ 2–4, Ex. A.) Only after satisfying this threshold obligation did NLMM invoice AHSC for excess locum tenens costs, which the Agreement expressly permits as a designated pass-through cost. (*Id.* ¶ 4; *see* Agreement § 5.03(B) [providing that "actual Applicable Labor Costs" in excess of the specified allowance "will be a pass-through expense to [AHSC]"].) The invoiced amounts therefore represent these contractually authorized pass-through expenses that exceeded NLMM's required contribution, which AHSC knowingly agreed to and must now honor. (*See* Rabinovich Decl. ¶ 15–16, Exs. E–G, I [ECF Nos. 14-8–14-10, 14-12]; Supp. Rabinovich Decl. ¶¶ 2–4, Ex. A.)

### 5. NLMM Staffed a Medical Director at Vista.

NLMM did, in fact, staff a qualified Medical Director at Vista. (Supp. Rabinovich Decl. ¶ 5.) Specifically, NLMM appointed Dr. Bradley Abramson to serve as Medical Director, with Dr. Neil Rosenquist acting as interim Medical Director before Dr. Abramson's appointment, both of whom were available to perform all duties outlined in Schedule 2.01. (*Id.*) Further, the Medical Director role does not require an on-site presence (*see* Agreement, § 2.03), and thus the physical presence or absence of either individual from the facility does not indicate the position was unfilled. AHSC's suggestion that NLMM never provided a Medical Director is therefore inaccurate.

**6.      AHSC's Fraud Argument Fails and Does Not Preclude Attachment.**

"Section 484.090 requires prediction of the probable outcome of the litigation, and the affirmative defenses and counterclaims will potentially influence this outcome." *Intervest Mortg. Inv. Co. v. Skidmore*, No. CIV S08-1543LKK/DAD, 2008 WL 5385880, at *7 (E.D. Cal. Dec. 19, 2008). Concurrent with its Opposition, AHSC filed an Answer and Counterclaim in which it asserts an affirmative defense and claim for fraud against NLMM. (ECF No. 19.) In its Opposition, AHSC similarly claims that it relied on "NLMM [*sic*] false statements" that "they experienced [*sic*] in the practice of radiology services" and "had highly qualified doctors ready to provide services to their hospitals and would help recruit doctors to their facility," which caused it to "enter into a contract with NLMM for their services." (ECF No. 20, Opp.'n at 6–7; *see also* ECF No. 19, Countercl. ¶¶ 88–115.) This argument fails both legally and factually.

As an initial matter, AHSC's fraud claim fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which requires allegations of fraud to be pleaded with particularity. Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). AHSC's fraud allegations fall far short of satisfying that standard. For instance, "when a defendant is a business entity and not a person, Plaintiffs must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1140 (C.D. Cal. 2011). AHSC, however, broadly attributes statements to NLMM as an entity without alleging who specifically made the statements, their positions, their authority to speak on NLMM's behalf, or to whom the statements were made. (*See, e.g.*, ECF No. 19, Countercl. ¶¶ 92–96, 99, 112; ECF No. 20, Opp'n. at 6 ["NLMM stated to AHS…"]; ECF No. 20-

9

4 ["Gill Decl."] ¶¶ 3–6 ["NLMM presented their experience and abilities…"; "representatives for Northern Lights stated…"; "They further stated"; "NLMM also assured us"].)

Second, AHSC's assertion that NLMM fraudulently represented its experience and staffing capabilities rests entirely upon AHSC's dissatisfaction with certain aspects of NLMM's performance. This theory of fraud misconstrues both the nature of NLMM's contractual obligations and NLMM's performance. AHSC's dissatisfaction does not establish that NLMM's statements regarding its experience or its ability to recruit physicians were false when made. Indeed, AHSC's own evidence establishes that NLMM provided radiology services to Vista and staffed the hospital with multiple physicians. (*See, e.g.*, ECF No. 20-1 ["Newby Decl."] ¶¶ 8–9, Exs. 1, 2, 4; ECF No. 20-3 ["Sunzeri Decl."], Ex. 1; ECF No. 20-2 ["Tartakovsky Decl."] ¶ 4.) The mere fact that NLMM utilized locum tenens physicians or experienced turnover is insufficient to support AHSC's conclusory assertion that NLMM knowingly misrepresented its staffing capabilities.

Moreover, the Agreement specifically contemplated that staffing might vary and included detailed provisions allowing NLMM to invoice AHSC for precisely those pass-through costs that AHSC now contests, including locum tenens coverage. (Agreement § 5.03(B).) AHSC's argument effectively attempts to transform legitimate contractual arrangements into evidence of fraud, which is devoid of both logic and merit. AHSC has not presented sufficient evidence indicating that NLMM lacked its claimed radiology experience or failed to recruit qualified radiologists. At best, AHSC has alleged dissatisfaction with NLMM's performance; dissatisfaction alone, however, cannot form the basis for fraud. Simply put, AHSC's allegations amount to ordinary breach-of-contract claims improperly repackaged as fraud, which, regardless, still fail. Therefore, AHSC's fraud allegations lack probable validity and do not defeat NLMM's entitlement to attachment.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

### B.    NLMM's Common Count Claim for Goods and Services Rendered Has Probable Validity.

Even if the Court were to find, at this preliminary stage, that NLMM has not established the probable validity of its breach of contract claim, its alternative claim for the common count of goods and services rendered independently satisfies the requirements for attachment.[3] *See ET Publ'g Int'l Inc. v. Pac. Periodicals LLC*, No. CV103108DSFAJWX, 2010 WL 11570434, at *3 (C.D. Cal. Oct. 13, 2010) ("Under California law, common counts for money had and received, open book account, and account stated are implied-in-law or quasi-contract claims that can support issuance of a writ of attachment.") (citing *Hill v. Superior Ct. in & for Alameda Cnty.*, 16 Cal. 2d 527, 530–31 (1940)); Ahart, *Enforcing Judgments and Debts,* ¶ 4:20 (2025 rev.) ("an attachment ordinarily may issue only upon a *claim for money* based upon an *express or implied contract* (such as a 'common count')" (italics in original)).

The undisputed evidence establishes every element of NLMM's quantum meruit claim under both California and North Carolina law. AHSC requested radiology services through a written agreement, NLMM provided those services for months without contemporaneous objection, and AHSC accepted and benefited from the services, even making a $75,000 partial payment acknowledging the value

---

[3] Although NLMM maintains its breach of contract claim has probable validity, California law permits pleading contract and common count claims in the alternative. *See Higgins v. Desert Braemar, Inc.*, 219 Cal. App. 2d 744, 751–52 (1963) ("a party who has fully performed his part of a contract for the rendition of services, where nothing remains to be done except the payment of money by the other, [may] sue specially on the contract or generally on the common count…" (citations omitted)); *Leoni v. Delany*, 83 Cal. App. 2d 303, 307 (1948) ("where a person seeks to recover for services rendered and there is a fair and reasonable doubt as to whether he is entitled to recover upon an express or implied contract, he is entitled to plead a claim upon each and to recover according to the proof."). Here, NLMM fully performed radiology services and nothing remains except AHSC's payment obligation; thus, alternative pleading is appropriate.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT,
LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

received. (Rabinovich Decl. ¶¶ 10–14.) Further, no party suggests these services were gratuitous.

AHSC's Opposition does not address NLMM's common count claim, which effectively concedes its validity. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[i]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (quotation marks and citation omitted)); *Henry v. Napa Valley Unified*, No. 16-CV-04021-MEJ, 2016 WL 7157670, at *4 (N.D. Cal. Dec. 8, 2016) ("Typically, failure to address in an opposition arguments raised in an opening motion, as Plaintiff did here, constitutes waiver or concession of the argument."). This silence is unsurprising: AHSC cannot dispute that it requested professional radiology services, that NLMM provided them, or that it accepted and partially paid for them. Further, the reasonable value of these services is readily ascertainable from the parties' agreed pricing terms and NLMM's invoices. *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449 (1998), *as modified on denial of reh'g* (Sept. 28, 1998) ("The measure of recovery in *quantum meruit* is the reasonable value of the services rendered *provided* they were of direct benefit to the defendant." (italics in original, quotation marks and citation omitted)).

Thus, NLMM's common count claim provides an independent basis for attachment, which AHSC notably does not contest.

### C.    The Evidence AHSC Proffers is Unpersuasive.

For purposes of a prejudgment attachment, "[a]ll documentary evidence… must be presented in admissible form, generally requiring proper identification and authentication, and admissibility as nonhearsay evidence or under one or more of the exceptions to the hearsay rule, such as the business records exception." *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co., Div. of Goodyear Tire & Rubber Co.*, 112 F. Supp. 2d 1178, 1182 (C.D. Cal. 2000) (citing Ahart, *Enforcing Judgments and Debts,* ¶¶ 4:145–4:156 (1998 rev.)). The declarations and evidence AHSC submits in

12

opposition, however, are conspicuously deficient, incomplete, and often internally contradictory. A careful examination of AHSC's proffered evidence finds that these submissions fail to provide a clear or reliable factual basis for defeating NLMM's entitlement to attachment.

The Declaration of Michele Newby illustrates AHSC's problematic presentation of evidence. For instance, Exhibit 4 to Ms. Newby's Declaration—an apparent excerpt of a text message conversation—lacks foundation and is not properly authenticated. Although the recipient appears to be Mr. Brian Schenker, Ms. Newby does not identify who sent these messages or how she obtained them, and she makes no reference to this exhibit in her Declaration. (*See generally* Newby Decl.) Without proper authentication, this document is inadmissible. Fed. R. Evid. 901(a); *see Greer v. Cnty. of San Diego*, 726 F. Supp. 3d 1058, 1073 (S.D. Cal. 2023) ("authentication is a precondition to admissibility"). Moreover, the exhibit violates the rule of completeness by presenting only selective portions of what appears to be a longer conversation, with Mr. Schenker's response cut off mid-message. *See* Fed. R. Evid. 106. Exhibit 1 to Newby's Declaration contains an isolated request to complete addenda on two radiology reports from early November 2024, to which Mr. Schenker responded and confirmed that corrective action was underway. (Newby Decl. at 4, Ex. 1.) Exhibit 1 contains another discrete instance in December 2024, again met by an immediate acknowledgment and assurance from NLMM that the matter would be addressed. (*Id.* at 8, Ex. 1 [Mr. Schenker responding: "We take this matter very seriously and will be evaluating the situation and providing a solution soon."].) Ms. Newby also offers improper lay opinion testimony, characterizing work as "unprofessional" (*id.* ¶ 12) without establishing her qualifications to assess radiology interpretation standards or physician competency in diagnostic imaging. *See* Fed. R. Evid. 701, 702.

The Declaration of Michael Tartakovsky suffers from similar deficiencies. Mr. Tartakovsky claims NLMM "would have over 300 cases backlogged for almost thirty

13

(30) days" (Tartakovsky Decl. ¶ 7), but his exhibits show varying backlog numbers without clear context. His January 6, 2025 email reports "280" unread cases "going back to December 13" (*id.* at 5), which is less than thirty days. By January 9, 2025, he reports "353" cases "going back to December 19" (*id.* at 6), which is three weeks, not thirty days. Critically, these emails provide no context for what constitutes a normal or acceptable backlog in radiology practice, nor does AHSC explain as much in its Opposition. Moreover, backlog is merely a measure of unread studies at the end of a given shift and is not necessarily indicative of substandard performance or delay. NLMM's ability to effectively monitor physician performance depended directly upon AHSC integrating NLMM's system, which AHSC never completed. (*See* Rabinovich Decl. ¶¶ 18–22.) AHSC's suggestion that NLMM's physicians were slow or inefficient is therefore disingenuous at best.

The Declaration of AHSC's Chief Financial Officer, Anthony Sunzeri, is also problematic. Mr. Sunzeri challenges Invoice No. 000294 for workstation expenses (ECF No. 14-11), claiming NLMM charged for "doctors who never even received temporary privileges" (Sunzeri Decl. ¶ 7). Yet, Exhibit 1 to his Declaration directly contradicts this assertion, showing that 9 of the 16 invoiced physicians did receive temporary privileges. (*Id.* at 3, Ex. 1.) More fundamentally, Mr. Sunzeri overlooks basic operational realities: workstations must be purchased and configured *in advance* of physician credentialing to ensure physicians can begin providing services immediately upon receiving privileges. (*See* Supp. Rabinovich Decl. ¶ 8.) Credentialing is the final administrative step before a physician can treat patients, but the infrastructure—including workstations—must already be in place for them to commence work without delay. (*Id.*)

Moreover, Mr. Sunzeri's claim that these charges were "in stark contrast to the pro forma invoice calling for three (3) workstations at $6,000.00 each" (Sunzeri Decl. ¶ 7) is rebutted by his own exhibit. The itemized breakdown shows that standard radiology workstations were actually *under* $6,000 each—with the sole exception of

14

one workstation at $6,543.70—ranging from $1,866 to $5,958 (*id.* at 7, Ex. 2), which is consistent with the pricing in the Agreement's Proforma (*see* Agreement at 29). Only the specialized mammography radiology workstations exceeded this amount, ranging from $15,682 to $18,301 each (Sunzeri Decl. at 7), reflecting the higher cost of specialized equipment. Critically, Exhibit 2 to Mr. Sunzeri's Declaration shows that NLMM credited AHSC $18,000 for three workstations at $6,000 each and only passed through the excess costs of $106,557.27. (*Id.* at 6; ECF No. 14-11.) This is precisely what the Agreement contemplated. (*See* Agreement § 5.03(D) ["To the extent the number of workstations acquired for Physicians exceeds the number of workstations anticipated in the Proforma, the cost associated with the said excess shall be passed through to [AHSC]."].)

Therefore, AHSC's declarations and supporting exhibits, which lack foundation and are mostly inadmissible, do not establish a valid rationale for excusing its payment obligations under the Agreement.

## III.   CONCLUSION

AHSC's Opposition contests only one of the four statutory requirements under California Code of Civil Procedure section 484.090(a): probable validity. AHSC does not dispute that NLMM's claims are contractual in nature, seek amounts exceeding $500, or that attachment is sought solely to secure recovery. As demonstrated above, NLMM has established probable validity of both its breach of contract and common count claims. Having satisfied all statutory prerequisites, NLMM is entitled to the attachment order it seeks.

For the foregoing reasons, and for the reasons set forth in its moving papers, NLMM respectfully requests that this Court grant its Application and issue an order granting prejudgment attachment against AHSC's assets in the amount of $940,358.28, or in any amount the Court deems just and proper, to secure the probable judgment in NLMM's favor.

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

1  DATED: June 17, 2025               FROST LLP

2

3

4                                     By: _____

5                                     CHRISTOPHER FROST

                                      BENJAMIN KASSIS

6                                     DAVID TIRATURYAN

                                      Attorneys for Plaintiff

7                                     NORTHERN LIGHT MEDICAL

8                                     MANAGEMENT, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT

1

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on June 17, 2025.

DATED: June 17, 2025          FROST LLP


By: _____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC