# EXHIBIT 1

Faisal Gill (SBN 263416)
Aimee Gill (SBN 326758)
Gill Law Firm
505 N Brand Blvd, Suite 1200
Glendale, CA 91203
310-418-6675
202-318-5331 (fax)
Fgill@glawoffice.com
Agill@glawoffice.com

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,<br><br>    Plaintiff<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC., et al.<br><br>    Defendants | CASE NO. 2:25-cv-3643<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC. and WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC'S SECOND AMENDED ANSWER AND COUNTERCLAIM<br><br>Complaint Filed:   April 24, 2025<br>Assigned to:   Hon. Mark C. Scarsi |

Defendants AMERICAN HEALTHCARE SYSTEMS CORP., INC. and WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC (hereinafter "AHS" and "Vista" or together as "Defendants"), by and through their undersigned counsel, hereby answers Plaintiff's Complaint (the "Complaint") filed in the above-captioned case by Plaintiff NORTHERN LIGHT MEDICAL MANAGEMENT, LLC ("Plaintiff"). Defendants deny each and every allegation set forth in the Complaint except for those allegations expressly and specifically admitted below. Defendants have

utilized the headings contained in Plaintiff's Complaint. To the extent Plaintiff's headings set forth legal or factual allegations that requires Defendants to answer, Plaintiff denies the allegations set forth therein.

**COMPLAINT**

**THE PARTIES**

1. Defendants have no information to admit or deny.
2. Admit.
3. Deny.
4. Deny.
5. Deny.
6. Deny.
7. Deny.

**JURISDICTION AND VENUE**

8. Deny.
9. Deny.
10. Deny.

**GENERAL ALLEGATIONS**

11. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.
12. Deny.
13. Deny.
14. Admit.

15. Deny as AHS denies that it voluntarily entered into the contract given that it relied on NLMM's fraudulent representations.

16. Admit.

17. Admit.

18. Defendants state that the document attached as Exhibit A of Plaintiff's Complaint speaks for itself.

19. Document speaks for itself.

20. Document speaks for itself.

21. Admit only so much as the document speaks for itself. Defendants state that Plaintiff knowingly reduced expected amounts on their pro forma in order to have Defendants essentially capitalize their company for them.

22. Deny.

23. Document speaks for itself.

24. Admit.

25. Deny.

26. Deny.

27. Deny.

28. Deny.

29. Deny.

30. Deny.

31. Admit only that NLMM agreed to pay these fees and it was not a pass through cost.

32. Admit only that NLMM paid the money and issued invoice. Defendants do not admit the validity or enforceability of the invoice.

33. Deny.

34. Deny.

35. Deny.

36. Deny.

37. Deny.

38. Deny.

39. Deny.

40. Deny.

41. Deny.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

42. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.

43. Deny.

44. Admit.

45. Deny in that NLMM was not entitled to compensation based on their fraudulent representations to induce AHS to sign contract and their material breach and failure to perform duties under the Contract.

46. Document speaks for itself.

47. Document speaks for itself.

48. Deny.

49. Deny.

50. Deny.

51. Deny.

52. Deny.

53. Deny in as far as it is not considered a pass through cost.

54. Admit.

55. Deny.

56. Deny. Defendants on multiple occasions notified NLMM of their failure to perform under the Contract.

57. Deny.

58. Deny.

59. Deny.

60. Deny.

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing

61. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.

62. Deny.

63. Deny.

64. Deny.

65. Deny. NLMM's performance was inconsistent, inadequate and unprofessional as documented through multiple communications between Vista and NLMM.

    a. Deny.

    b. Deny.

    c. Deny.

      d. Deny.

      e. Deny.

66. Deny.

67. Deny.

### THIRD CLAIM FOR RELIEF

### Common Count: Goods and Services Rendered

68. Deny.

69. Deny.

70. Deny.

71. Deny.

72. Deny.

73. Deny.

### FOURTH CLAIM FOR RELIEF

### Accounting

74. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.

75. Deny.

76. Deny.

77. Deny.

78. Deny.

79. Deny.

80. Deny.

81. Deny.

82. Deny.

83. Deny.

## AFFIRMATIVE DEFENSES

84. Failure of Consideration: The consideration promised by NLMM was not provided or was inadequate.

85. Estoppel: NLMM, through their actions, representations, or silence, induced AHS and Vista to believe certain facts and act upon them to their detriment.

86. Fraud: As detailed in Defendants' Counterclaim through paragraphs 88 through 122, NLMM made false representations or concealment of material facts with the intent to deceive, which results in damage to AHS and Vista.

87. Unclean Hands: NLMM acted unethically or in bad faith concerning the subject matter of the contract.

## COUNTERCLAIM

88. Defendant and Counterclaimant, AHS, provides management and support services to various hospitals nationwide in order to revitalize and strengthen their critical care for their patient communities.

89. Defendant Vista owns and operates a hospital in Waukegan, Illinois, with the majority of its patient population receiving care through Medicaid and federal funding.

90. In or around the summer of 2024, AHS was in need of radiology services for their hospital, Randolph Health, in North Carolina.

91. At the time, there was a shortage in radiology services and AHS was having a hard time finding critical services needed for continuation of patient care.

92. In a zoom meeting on or around July 11, 2024, NLMM, through Patrick Santore, Jr., Chief Executive Officer of NLMM, presented their company to AHS, including Faisal Gill, AHS's Chief Legal Officer, as a well experienced company with the ability to immediately provided highly qualified physicians for continuous and highly competent radiology coverage for their hospitals.

93. Both AHS and NLMM, through their respective agents in this conversation, understood that the radiology services proposed by NLMM included not only reading the charts given to NLMM, but also NLMM providing complete and accurate reports for further patient care and safety.

94. During this meeting, NLMM, through Santore, stated to AHS that they had doctors already recruited and ready to immediately provide their services for 24/7 coverage to AHS.

95. In the same conversation, NLMM, through Santore, further stated that they had the ability to help AHS recruit for needed services locally and to provide medical director services for their radiology department.

96. In the same conversation, NLMM, through Santore, repeatedly stated that they had the ability to immediately provide continuous radiology coverage with doctors already recruited by NLMM.

97. In the same conversation, NLMM, through Santore, stated that they had doctors recruited, vetted, and equipment ready in order to provide services immediately after signing a contract.

98. However, NLMM, namely Santore, knew these statements to be false.

ANSWER AND COUNTERCLAIM

99. It is clear that Santore knew these statements to be false because NLMM had issues providing 24/7 coverage to AHS fr4om the outset of their services.

100. Santore, on behalf of NLMM, made these statements with the intent to induce AHS into signing an Agreement with NLMM for the radiology services.

101. Specifically, he made the statement that they would immediately provide continuous 24/7 coverage without any intention of actually performing this promise.

102. This is clear by the fact that from the beginning, NLMM was unable to provide 24/7 coverage, and doctors who were on NLMM's calendar to AHS as working were not available and actually able to work for AHS at that time.

103. It is further clear as AHS, since the outset of NLMM's services, would consistently call NLMM because they did not have coverage and NLMM would send in temporary doctors, who would not complete their work and were later unreachable to finish their work.

104. They further made the statements in the pro forma invoices for the hospitals, knowing these statements to be false as they were woefully inadequate and clearly not expected costs from an experienced company.

105. AHS relied on NLMM's false statements to their detriment by signing the agreement and paying NLMM money to provide services.

106. Immediately after signing the contract and beginning their services, NLMM provided inaccurate, incomplete, and unprofessional services to AHS.

107. On numerous occasions, multiple staff from Vista notified NLMM about their incorrect reports, requesting addendums which would take an unreasonable amount of time to receive.

108. NLMM consistently had trouble fulfilling their duty to provide 2.5 FTE physicians for radiology services and had to provide a numerous amount of doctors who would fill in but would not complete their work and would become unreachable in order to follow up on getting an accurate and complete report.

109. NLMM continuously was untimely in the provision of their services, failing to meet the expected turnaround time for numerous cases.

110. NLMM's unprofessional and untimely work created risk to patient safety, often times leading to complaints from physicians and patients who did not receive their radiology reports in a timely manner.

111. AHS communicated notice to NLMM of their failure to provide adequate services under the agreement through various methods, including phone and email communication to Brian Schenker, Vista's point of contact for NLMM, and weekly meetings held with leadership of both entities.

112. During each of these communications, NLMM admitted that they needed to improve their services, but never actually took any efforts to improve.

113. Despite numerous notices of their clear breach of the agreement, NLMM never cured any defects in their performance, or lack thereof.

114. Further, NLMM agreed under the contract to provide a Medical Director for Radiology Services.

115. At both Randolph Health and Vista, NLMM never provided either facility with such services despite the extensive amount of duties they agreed to undertake under the agreement.

116. As such, NLMM breached the Master Services Agreement numerous times and caused AHS significant damages, in an amount to be determined at trial.

## First Claim for Relief

## Fraud in the Inducement

117. As explained above, in or around the summer of 2024, in an effort to induce AHS into entering a Master Services Agreement with NLMM, NLMM knowingly made multiple false statements to AHS regarding their experience and ability to provide adequate radiology services to AHS.

118. Specifically, during the conversation between Patrick Santore, Jr., CEO of NLMM, and Faisal Gill, Chief Legal Officer of AHS, on or around July 11, 2024, Santore stated that NLMM could immediately provide AHS with 24/7 radiology coverage with competent doctors already vetted and recruited by NLMM.

119. Santore further stated that NLMM would be able to immediately provide Medical Director of Radiology Services to AHS, but clearly Santore knew this to be false as NLMM never actually provided these services to AHS.

120. Santore knew these statements to be false, but made them in order to induce AHS into entering the contract for NLMM's services.

121. AHS relied on NLMM's knowingly false statements to their detriment, by entering into the Agreement and paying NLMM and vendors in an effort to integrate NLMM into AHS's system.

122. Immediately after entering into the Agreement, it became clear that NLMM was unable to adequately provide services to AHS and that NLMM knowingly made these false statements despite knowing them to be false.

123.  As a result, AHS and Vista suffered significant damages, in an amount to be determined at trial, but no less than $200,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants pray for judgment against Plaintiff/Counter defendant, as follows:

1. For general damages, according to proof at trial;
2. For special damages, according to proof at trial;
3. For compensatory damages, according to proof at trial;
4. For punitive and exemplary damages, according to proof at trial;
5. For pre-judgment and post-judgment interest at the maximum legal rate;
6. For attorneys' fees and costs, as permitted by law; and
7. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendants/Counterclaimants hereby demand a trial by jury on all issues and causes of action triable by a jury.

DATED: June 26, 2025        Respectfully submitted,

\_\_\_/s/ Faisal Gill_____
Faisal Gill
\_\_\_\_/s/ Aimee Gill_____
Aimee Gill

ANSWER AND COUNTERCLAIM

Attorneys for Defendants/Counterclaimants

PROOF OF SERVICE

I am over the age of 18 and not a party to the within action; I am employed by GILL LAW FIRM in the County of Los Angeles at 505 N. Brand Blvd., Suite 1200, Glendale, CA 91203.

On June 26, 2025, I served the foregoing document(s) described as:

Defendants' Second Amended Answer and Counterclaim

TO: Christopher Frost, chris@frostllp.com; Benjamin Kassis, ben@frostllp.com; David Tiraturyan, david1@frostllp.com

√ (BY E-MAIL OR ELECTRONIC TRANSMISSION) I caused the document(s) to be sent from e-mail address agill@glawoffice.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. Further, this document was filed through ECF e-filing services which provided a copy to all registered attorneys of record.

√ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 26, 2025, at Glendale, California.

                                                      __/s/ Aimee Gill_____

                                                      Aimee Gill