CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

Faisal Gill (SBN 263416)
fgill@glawoffice.com
Aimee Gill (SBN 326758)
agill@glawoffice.com
GILL LAW FIRM
505 N. Brand Blvd., Suite 1200
Glendale, California 91203
Telephone: (310) 418-6675
Facsimile: (202) 318-5331

Attorneys for Defendants and Counterclaimant
AMERICAN HEALTHCARE SYSTEMS
CORP., INC. and WAUKEGAN ILLINOIS
HOSPITAL COMPANY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,<br><br>      Plaintiff,<br><br>      vs.<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC., a Nevada corporation; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST, an Illinois limited liability company; DOES 1 through 50, inclusive,<br><br>      Defendants. | Case No. 2:25-cv-03643-MCS-BFM<br><br>*Assigned to: Hon. Mark C. Scarsi*<br><br>**JOINT RULE 26(f) REPORT AND PROPOSED SCHEDULING PLAN**<br><br><u>Scheduling Conference:</u><br>Date:    July 21, 2025<br>Time:    10:00 a.m.<br>Crtrm.: 7C, 7th Floor<br>      First Street Courthouse<br>      350 West 1st Street<br>      Los Angeles, California 90012 |

AMERICAN HEALTHCARE SYSTEMS CORP., INC., a Nevada corporation,

                Counterclaimant,

        vs.

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,

                Counter-Defendant.

Pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 26-1, and in accordance with the Court's May 28, 2025 Order Setting Scheduling Conference (ECF No. 21), Plaintiff Northern Light Medical Management, LLC ("Plaintiff" or "NLMM"), and Defendants American Healthcare Systems Corp., Inc. ("AHSC") and Waukegan Illinois Hospital Company, LLC d.b.a. Vista Medical Center East ("Vista") (collectively, "Defendants") submit the following Joint Report and Proposed Scheduling Plan.

Counsel  for the parties conferred telephonically on June 30, 2025, and discussed the subjects required by Federal Rule of Civil Procedure 26, Local Rule 26-1, and the Court's May 28, 2025 Order.

## I. Rule 26(f) and ECF No. 21 Requirements

### A. Statement of the Case

#### 1. Plaintiff's Statement of the Case

Plaintiff alleges that Defendants breached their payment obligations under a Master Services Agreement for Hospital-Based Radiology and the incorporated Facility Addenda (the "Agreement"). Under the Agreement, NLMM agreed to provide comprehensive radiology services—including onsite and remote radiological interpretations, teleradiology services, physician recruitment, and associated administrative support—to AHSC's hospital facilities, namely Vista, located in Waukegan, Illinois, and Randolph Health Hospital ("Randolph"), located in Asheboro, North Carolina.

Plaintiff performed its obligations under the Agreement by, *inter alia*, staffing the facility with qualified radiologists, ensuring continuous radiology coverage, and submitting timely invoices. Under the express terms of the Agreement, AHSC was obligated to remit monthly payments to Plaintiff for radiology services, initially fixed at $183,533.08 per month for the first four months of services performed at Vista, based on historical radiological interpretation averages.

Notwithstanding Plaintiff's performance, Defendants breached the Agreement by failing to pay invoices totaling at least $940,358.28, representing charges for fixed monthly payments, pass-through expenses, and other undisputed costs explicitly permitted under the Agreement. Specifically, Defendants failed to fully pay monthly service invoices for radiology services provided at Vista, making only one partial payment of $75,000 that was applied toward the first invoice. Despite multiple demands for payment, Defendants have not paid the remaining balance for these invoices (totaling $475,599.24), nor have Defendants paid additional invoiced pass-through costs totaling $464,759.04, including costs related to locum tenens coverage and radiology workstation equipment specifically permitted under the Agreement. Plaintiff also alleges that further sums will likely be due to it following a comprehensive reconciliation of actual interpretation volumes and data currently withheld by AHSC, estimated to be between $400,000 and $500,000.

Additionally, Defendants materially breached the Agreement by failing to timely cooperate with and pay for the integration of Plaintiff's technology platform with Vista's electronic health record system, Cerner, as required under Section 3.05 of the Agreement, which has impeded Plaintiff's ability to bill third parties and monitor radiologist performance. To mitigate the delay caused by AHSC's failure to timely fund the required Cerner integration, the parties agreed to split the integration costs up to a maximum of $25,000 (the "Cerner Agreement"). Despite this arrangement and Plaintiff's payment of $23,956.00 for the integration pursuant to an invoice sent by Vista, Defendants failed to pay their 50 percent share, and have since failed and refused to reimburse NLMM for the portion it paid.

On April 24, 2025, Plaintiff filed a Complaint in which it asserted claims for (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) a common count for goods and services rendered; and (iv) an accounting. On May 27, 2025, Defendants filed their Answer and Counterclaim in which AHSC asserted a counterclaim against Plaintiff, as well as affirmative defenses. AHSC

primarily alleges that Plaintiff failed to adequately perform its obligations under the Agreement and asserts a claim for fraudulent inducement based on generalized claims that Plaintiff misrepresented its staffing capabilities and ability to immediately provide qualified physicians. Plaintiff disputes all fraud allegations and affirmative defenses asserted by AHSC as factually unsupported, legally deficient, and substantively immaterial to AHSC's contractual obligation to remit the invoiced amounts.

2.    <u>Defendants' Statement of the Case</u>

Defendant and Counterclaimant, AHS, provides management and support services to various hospitals nationwide in order to revitalize and strengthen their critical care for their patient communities. Defendant Vista owns and operates a hospital in Waukegan, Illinois, with the majority of its patient population receiving care through Medicaid and federal funding.

In or around the summer of 2024, AHS was in need of radiology services for their hospital, Randolph Health, in North Carolina. At the time, there was a shortage in radiology services and AHS was having a hard time finding critical services needed for continuation of patient care. In a zoom meeting on or around July 11, 2024, NLMM, through Patrick Santore, Jr., Chief Executive Officer of NLMM, presented their company to AHS, including Faisal Gill, AHS's Chief Legal Officer, as a well experienced company with the ability to immediately provided highly qualified physicians for continuous and highly competent radiology coverage for their hospitals. Both AHS and NLMM, through their respective agents in this conversation, understood that the radiology services proposed by NLMM included not only reading the charts given to NLMM, but also NLMM providing complete and accurate reports for further patient care and safety.

During this meeting, NLMM, through Santore, stated to AHS that they had doctors already recruited and ready to immediately provide their services for 24/7 coverage to AHS. In the same conversation, NLMM, through Santore, further stated

that they had the ability to help AHS recruit for needed services locally and to provide medical director services for their radiology department. In the same conversation, NLMM, through Santore, repeatedly stated that they had the ability to immediately provide continuous radiology coverage with doctors already recruited by NLMM. In the same conversation, NLMM, through Santore, stated that they had doctors recruited, vetted, and equipment ready in order to provide services immediately after signing a contract.

However, NLMM, namely Santore, knew these statements to be false. It is clear that Santore knew these statements to be false because NLMM had issues providing 24/7 coverage to AHS fr4om the outset of their services. Santore, on behalf of NLMM, made these statements with the intent to induce AHS into signing an Agreement with NLMM for the radiology services. Specifically, he made the statement that they would immediately provide continuous 24/7 coverage without any intention of actually performing this promise.

This is clear by the fact that from the beginning, NLMM was unable to provide 24/7 coverage, and doctors who were on NLMM's calendar to AHS as working were not available and actually able to work for AHS at that time. It is further clear as AHS, since the outset of NLMM's services, would consistently call NLMM because they did not have coverage and NLMM would send in temporary doctors, who would not complete their work and were later unreachable to finish their work. They further made the statements in the pro forma invoices for the hospitals, knowing these statements to be false as they were woefully inadequate and clearly not expected costs from an experienced company.

AHS relied on NLMM's false statements to their detriment by signing the agreement and paying NLMM money to provide services. Immediately after signing the contract and beginning their services, NLMM provided inaccurate, incomplete, and unprofessional services to AHS.

On numerous occasions, multiple staff from Vista notified NLMM about their incorrect reports, requesting addendums which would take an unreasonable amount of time to receive. NLMM consistently had trouble fulfilling their duty to provide 2.5 FTE physicians for radiology services and had to provide a numerous amount of doctors who would fill in but would not complete their work and would become unreachable in order to follow up on getting an accurate and complete report. NLMM continuously was untimely in the provision of their services, failing to meet the expected turnaround time for numerous cases. NLMM's unprofessional and untimely work created risk to patient safety, often times leading to complaints from physicians and patients who did not receive their radiology reports in a timely manner.

AHS communicated notice to NLMM of their failure to provide adequate services under the agreement through various methods, including phone and email communication to Brian Schenker, Vista's point of contact for NLMM, and weekly meetings held with leadership of both entities. During each of these communications, NLMM admitted that they needed to improve their services, but never actually took any efforts to improve. Despite numerous notices of their clear breach of the agreement, NLMM never cured any defects in their performance, or lack thereof. Further, NLMM agreed under the contract to provide a Medical Director for Radiology Services. At both Randolph Health and Vista, NLMM never provided either facility with such services despite the extensive amount of duties they agreed to undertake under the agreement.

As such, NLMM breached the Master Services Agreement numerous times and caused AHS significant damages, in an amount to be determined at trial.

**B.    Subject Matter Jurisdiction**

The parties agree that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. NLMM is a Wyoming limited liability company with

its principal place of business in Hollywood, Florida. Defendant AHSC is a Nevada corporation with its principal place of business in Glendale, California. Defendant Vista is an Illinois limited liability company with its principal place of business in Illinois and/or California. None of Defendant Vista's members are citizens of Wyoming or Florida, and none of NLMM's members are citizens of Illinois, Nevada, or California.

### C. Legal Issues

#### 1. Plaintiff's Contentions:

Plaintiff contends that the key legal issues in this matter include, but are not limited to: (i) whether Defendants breached their payment obligations under the Agreement; (ii) whether Defendants breached the implied covenant of good faith and fair dealing by withholding payments, failing to cooperate on technology integration, and otherwise hindering Plaintiff's ability to perform its obligations under the Agreement; (iii) whether Plaintiff is entitled to recover under common counts for goods and services rendered or quantum meruit; (iv) whether Plaintiff is entitled to a full accounting and reconciliation under the terms of the Master Services Agreement, and if so, the extent of additional amounts that will become due to Plaintiff upon completion of such reconciliation; (v) the extent of Plaintiff's entitlement to damages; and (vi) whether AHSC's fraud counterclaim lacks merit.

#### 2. Defendants' Contentions:

Defendants contend that the key legal issues in this matter include, but are not limited to: (i) whether Plaintiff/Counter-Defendant fraudulently induced Defendant/Counter-Plaintiff into entering the agreement by knowingly making false statements to Defendant/Counter-Plaintiff regarding their ability to perform under the agreement and (ii) whether Plaintiff failed to perform its duties under the Agreement.

#### 3. Unusual Substantive, Procedural, or Evidentiary Issues:

At this time, the parties have neither identified nor do they foresee any unusual substantive, procedural, or evidentiary issues.

### D.    Parties and Evidence

####    1.    Parties:

The parties to this lawsuit are:

- NLMM – Plaintiff.
- AHSC – Defendant.
- Vista – Defendant.

####    2.    Corporate Disclosure:

NLMM is a limited liability company organized and existing under the laws of the State of Wyoming. NLMM has one subsidiary: Radiology Associates of South Carolina, LLC, organized and existing under the laws of the State of South Carolina. NLMM also has two affiliates: Northern Light Radiology Associates, Inc. and Northern Light Teleradiology LLC, both of which have overlapping corporate ownership with NLMM, and both of which are incorporated and existing under the laws of Wyoming. No publicly held company owns 10 percent or more of NLMM.

AHSC is a corporation organized and existing under the laws of the State of Nevada. AHSC has the following subsidiaries: American Healthcare Systems, LLC, organized and existing under the laws of the State of Virginia, American Health Systems Illinois, LLC, organized and existing under the laws of the State of Illinois, AHS IL Medical Group, LLC, organized and existing under the laws of the State of Illinois, AHS Vista, LLC, organized and existing under the laws of the State of Illinois, and AHS Sherman, LLC, organized and existing under the laws of the State of Texas. No publicly held company owns 10 percent or more of AHSC.

Vista is a limited liability company organized and existing under the laws of the State of Illinois. Vista has the following subsidiaries: Waukegan Illinois Hospital Company, LLC, a limited liability company organized and existing under the laws of the State of Illinois, and Waukegan Clinic Corporation, a corporation organized and existing under the laws of the State of Illinois. No publicly held company owns 10 percent or more of Vista.

3.    Plaintiff's Percipient Witnesses:

Based on the information presently known to Plaintiff, the following are potentially percipient witnesses:

- Patrick Santore Jr. – NLMM's Chief Executive Officer.
- Mark Rabinovich – NLMM's Executive Vice President and Vice President of Legal Affairs.
- Brian Schenker – NLMM's Director of Clinical Operations in Texas and Illinois.
- Jeane Mora – Corporate Controller.
- Dr. Craig Davishoff – Radiologist at Vista.
- Clark Warren – NLMM's Chief Information Officer.

4.    Defendants' Percipient Witnesses:

Based on the information presently known to Defendants, the following are potentially percipient witnesses:

- Mike Sarian – AHS's Chief Executive Officer.
- Faisal Gill – AHS's Chief Legal Officer.
- David Rosen – Former Senior VP/Medical Director of Vista.
- Michael Tartovsky – PACS Coordinator of Vista.
- Anthony Sunzeri – Chief Financial Officer of Vista.
- Michele Newby  - Oncology Nurse Navigator at Vista.
- Emilie Hoga – former Head of Radiology Department of Vista.

5.    Plaintiff's Key Evidence:

Based on the information presently known to Plaintiff, possible key documents and evidentiary materials include:

- The Master Services Agreement and incorporated Facility Addenda.
- Invoices issued by Plaintiff to Defendants for radiology services, pass-through costs, and technology integration expenses.

- Correspondence and email communications between Plaintiff's representatives and Defendants' representatives regarding invoicing, payments, and contractual performance.
- Payment records, including evidence of the partial payment made by AHSC and subsequent non-payment.
- Payroll records.
- Documentation of Plaintiff's incurred expenses for locum tenens coverage, radiology workstations, and related pass-through costs.
- Internal communications and correspondence reflecting Defendants' contemporaneous acknowledgment of services rendered and invoices received.
- The written agreement between Plaintiff and Defendants memorializing their obligation to share equally (50/50) the one-time integration cost for the Cerner platform.
- Evidence related to AHSC's failure to cooperate with the Cerner technology platform integration.
- Documentation of Plaintiff's staffing and credentialing records for radiologists who performed services at AHSC's facilities.
- Financial records relating to Plaintiff's damages, including unpaid invoices, consequential damages, and reconciliation records.
- Testimony and declarations from Plaintiff's representatives, including Plaintiff's CEO, financial executives, and operational managers, regarding contractual performance, invoicing, and Defendants' non-payment.

6.   <u>Defendants' Key Evidence:</u>

Based on the information presently known to Defendants, possible key documents and evidentiary materials include:

JOINT RULE 26(f) REPORT AND PROPOSED SCHEDULING PLAN

- Correspondence and email communications between Plaintiff's representatives and Defendants' representatives regarding Plaintiff's poor performance.

- Correspondence and email communications between Plaintiff's representatives and Defendants' representatives regarding Plaintiff's failure to complete work.

- Testimony and declarations from Defendant's representatives, including Defendant's CLO, financial executives, radiology department heads, employees who worked directly with Plaintiff, regarding Plaintiff's false statements regarding their ability to perform under contract and their poor performance.

- Financial records related to Defendant's damages.

**E.    Damages**

    1.    <u>Plaintiff's Position:</u>

Plaintiff presently estimates provable damages of at least $940,358.28, consisting of unpaid invoices for radiology services and contractually approved pass-through costs. Plaintiff also anticipates additional damages in an amount between $400,000.00 and $500,000.00, subject to confirmation through an accounting and reconciliation of radiological interpretation volumes pursuant to the parties' agreement. Plaintiff further seeks pre-judgment interest, costs, and any consequential damages arising from Defendants' breaches, with the precise amounts subject to proof at trial. Therefore, Plaintiff's preliminary estimate for its range of provable damages Plaintiff's preliminary estimate for its range of provable damages is between approximately $1,400,000 and approximately $2,000,000.

    2.    <u>Defendants' Position:</u>

Defendant completely disputes Plaintiff's entitlement to damages based on their actions of fraudulently inducing Defendant into the Agreement, and their subsequent failure to perform under the contract. Defendant presently estimates

provable damages of their counterclaim of at least $450,000 based on money paid and efforts spent in order to work under the agreement and money paid and efforts spent to correct the incorrect and incomplete work which was Plaintiff's responsibility under the Agreement.

**F.    Insurance**

NLMM does not have insurance coverage applicable to the claims or issues involved in this litigation.

**G.    Motions**

1.    Plaintiff's Position:

Plaintiff may seek leave to amend its complaint to add additional parties and/or claims relating to services provided at the other facility referenced in the Agreement (Randolph). Additionally, Plaintiff may move to add a claim for fraud, depending on information obtained through discovery. Plaintiff does not anticipate filing any motions to transfer venue.

2.    Defendants' Position:

Defendant does not anticipate filing any additional motions at this time.

**H.    Dispositive Motions**

Plaintiff intends to move to dismiss AHSC's fraud counterclaim on the basis that AHSC has failed to plead fraud with the specificity required by Federal Rule of Civil Procedure 9(b). Plaintiff further anticipates filing a motion for summary judgment or, alternatively, partial summary judgment as to its affirmative claims. Specifically, Plaintiff believes summary judgment may be appropriate regarding its claims for breach of contract and breach of the implied covenant of good faith and fair dealing due to Defendants' undisputed non-payment of invoiced amounts. Moreover, in the event AHSC's fraud counterclaim survives dismissal, Plaintiff anticipates also moving for summary judgment as to that claim.

Defendants anticipate filing an opposition to Plaintiff's Motion to Dismiss. Defendants further anticipate to file a motion for summary judgment or partial

summary judgment on Plaintiff's claims, based on Plaintiff's failure to perform under the Agreement.

**I.    Manual for Complex Litigation**

At this juncture, the parties do not believe any portion of the procedures of the Manual for Complex Litigation is applicable or appropriate.

**J.    Status of Discovery**

The parties have conferred regarding discovery but have not yet propounded any discovery requests. The parties intend to exchange their Rule 26(a)(1) Initial Disclosures by July 14, 2025.

**K.    Discovery Plan**

The parties anticipate propounding written discovery and taking depositions. Pursuant to Federal Rule of Civil Procedure 5(b)(2)(e), the parties agree to accept service of all documents by email.

For service on Plaintiff, documents shall be emailed to all of the following email addresses: chris@frostllp.com; ben@frostllp.com; david1@frostllp.com; and frosteservice@frostllp.com.

For service on Defendants, documents shall be emailed to all of the following email addresses: fgill@glawoffice.com, agill@glawoffice.com.

1.    <u>Changes to Rule 26(a) Disclosures</u>

The parties do not propose any changes to the timing, form, or other requirements for disclosures under Federal Rule of Civil Procedure 26(a), and Initial Disclosures will be exchanged by July 14, 2025.

2.    <u>Subjects on Which Discovery May be Needed</u>

Plaintiff anticipates needing discovery on the following subjects:

- Defendants' communications, internal discussions, and decision-making regarding the non-payment of invoices issued by Plaintiff for radiology services, pass-through costs, and technology integration expenses.

- Documentation and evidence of Defendants' purported performance issues or objections regarding Plaintiff's radiology services.
- Defendants' internal communications and documents related to the Cerner technology platform integration, including any communications with Oracle Corporation or other third-party vendors.
- Defendants' financial records and accounting information relevant to Plaintiff's invoices, as well as documentation relating to Defendants' capacity or willingness to satisfy their payment obligations.
- Credentialing, privileging, and staffing information relevant to Plaintiff's radiologists who provided services at Defendants' facilities.
- Any alleged misrepresentations or fraudulent inducements identified by Defendants, including supporting documents, communications, or witness statements.
- Documentation and information required to perform the contractual reconciliation of actual radiological interpretation volumes at Defendants' facilities.
- Agreements and contracts between Defendants and third-party vendors for radiology or related services, including teleradiology services, at Vista and Randolph.
- Defendants' policies, procedures, and internal guidelines concerning invoicing, vendor payments, and contract administration.

Plaintiff may seek additional discovery based on information obtained from Defendants or third parties as discovery progresses. The topics listed above are based on Plaintiff's current knowledge and understanding of the case and are not exhaustive. Plaintiff reserves the right to supplement, revise, or modify these topics as additional information becomes available.

Defendants anticipate needing discovery on the following subjects:

- Plaintiff's internal discussions, communications with third parties, and decision-making regarding performance under the Agreement.

- Plaintiff's communication, internal discussions, communications with third parties, and documentation reflecting Plaintiff's ability to perform under the Agreement.

- Plaintiff's financial records related to performance under the Agreement and their purported pass-through expenses.

- Internal discussions, communications with third parties, and documents regarding Plaintiff's vetting of doctors who they supplied to work for Defendant.

- Internal discussions, communications with third parties, and documents regarding credentialing information requested by Defendant.

- Communications and discussions with third parties regarding Plaintiff's quality of work performing under their contract.

3.    Whether Discovery Should be Conducted in Phases

The parties do not anticipate the need for phased discovery. However, the parties agree that document production and written discovery should proceed first, with depositions to follow after substantial completion of document production.

4.    Whether Discovery Should be Limited to Particular Issues

At this time, the parties do not propose limiting discovery to particular issues. Discovery should encompass all claims, defenses, and counterclaims asserted in the pleadings.

5.    Proposed Limits on Discovery

The parties do not propose any limits or modifications to the presumptive discovery limits set forth by the Federal Rules or the Local Rules.

6.    Other Orders That Should be Entered

The parties request the Court enter the following additional orders:

- A Stipulated Protective Order to govern the exchange of confidential and proprietary business information, including patient-related information subject to HIPAA and applicable state medical privacy laws.
- An ESI (electronically stored information) Protocol addressing the format, production, and handling of electronic discovery.

### 7. Electronic Discovery Considerations

The parties will meet and confer regarding: (i) search terms and custodians for electronic discovery; (ii) format of production (native format with load files preferred for Excel/database files; PDF format for other documents); (iii) privilege log protocols; (iv) cost-shifting for disproportionate ESI requests; and (v) preservation obligations and litigation hold procedures.

### L. Discovery Cut-off

The parties propose a final discovery cut-off date of May 26, 2026.

### M. Expert Discovery

The parties propose the following deadlines for expert witness disclosures and discovery:

- Close of Fact Discovery:              May 26, 2026
- Initial Expert Witness Disclosure:    March 11, 2026
- Rebuttal Expert Witness Disclosure:   April 20, 2026
- Expert Witness Discovery Cut-Off:     May 18, 2026

### N. Settlement Conference / Alternative Dispute Resolution ("ADR")

The parties have broached the topic of settlement but have not yet advanced beyond preliminary discussions or made any substantive progress. The parties request that any mandatory settlement conference or ADR proceeding be scheduled before the assigned Magistrate Judge relatively soon, ideally within a few months, but allowing sufficient time for preliminary discovery. Should the parties determine that an earlier conference would be productive, they will promptly inform the Court and request such a conference.

**O.    Trial Estimate**

The parties have requested a jury trial.

Plaintiff anticipates that a trial will take approximately 7–10 days.

Defendants anticipate that a trial will take approximately 5–7 days.

**P.    Trial Counsel**

Christopher Frost, Benjamin Kassis, and David Tiraturyan are expected to be trial counsel for Plaintiff.

Faisal Gill and Aimee Gill are expected to be trial counsel for Defendants.

**Q.    Independent Expert or Master**

The parties do not anticipate that the appointment of an independent scientific expert or special master pursuant to Federal Rule of Civil Procedure 53 will be necessary in this case.

**R.    Schedule Worksheet (Attached Below)**

The parties have completed the Court's Schedule of Pretrial and Trial Dates Worksheet, which is attached below. The proposed schedule substantially conforms to the deadlines suggested by the Court. At this time, the parties do not foresee any circumstances requiring a longer schedule. For the Court's ease of reference, the proposed dates included in the attached Worksheet are as follows:

- Trial Date (Jury Trial):    October 6, 2026
- Final Pretrial Conference & Hearing on Motions in Limine:    September 21, 2026
- Last Date to Hear Motion to Amend Pleadings/Add Parties:    November 3, 2025
- Non-Expert Discovery Cut-Off:    May 26, 2026
- Expert Disclosure (Initial):    March 11, 2026
- Expert Disclosure (Rebuttal):    April 20, 2026
- Expert Discovery Cut-Off:    May 18, 2026
- Last Date to Hear Motions:    June 29, 2026

- Deadline to Complete Settlement Conference:                    July 13, 2026
- Trial Filings (First Round):                    August 31, 2026
- Trial Filings (Second Round):              September 7, 2026

**S.    Other Issues**

The parties anticipate requesting entry of a stipulated protective order and an electronic discovery protocol. Notwithstanding the foregoing, the parties are not aware of any additional issues affecting the status or management of this case at this time.

DATED: July 7, 2025                    FROST LLP


By: _____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

DATED: July 7, 2025                    GILL LAW FIRM


By: _____/s/ Aimee Gill_____
FAISAL GILL
AIMEE GILL
Attorneys for Defendants and Counterclaimant
AMERICAN HEALTHCARE SYSTEMS
CORP., INC. and WAUKEGAN ILLINOIS
HOSPITAL COMPANY, LLC

1

## **ATTESTATION**

2       Pursuant to Local Rule 5-4.3.4(a)(2)(i), the undersigned filer hereby certifies

3   that all signatories listed above have concurred in the filing of this document.

4

5   DATED:  July 7, 2025          FROST LLP

6

7

8                                  By:  _____

9                                       DAVID TIRATURYAN

                                        Attorney for Plaintiff and Counter-Defendant

10                                      NORTHERN LIGHT MEDICAL

                                        MANAGEMENT, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JUDGE MARK C. SCARSI**
**<u>SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET</u>**

*Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.*
*The Court <u>ORDERS</u> the parties to make every effort to agree on dates.*

| Case No. | 2:25-cv-03643-MCS-BFM | Case Name: | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc., et al.* |
|---|---|---|---|

| Trial and Final Pretrial Conference Dates | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy | Court Order mm/dd/yyyy |
|---|---|---|---|
| Check one:  ☑ Jury Trial   or   ☐ Court Trial<br>(***Tuesday*** at 8:30 a.m., within 18 months after Complaint filed)<br>Estimated Duration:  <u>5-10</u>  Days | 10/6/2026 | 10/6/2026 | ☐ Jury Trial<br>☐ Court Trial<br>_____ Days |
| Final Pretrial Conference ("FPTC") [L.R. 16], Hearing on Motions in Limine<br>(***Monday*** at 2:00 p.m., at least 15 days before trial) | 9/21/2026 | 9/21/2026 | |

| Event [1]<br><u>Note</u>: Hearings shall be on Monday at 9:00 A.M. Other dates can be any day of the week. | Weeks Before FPTC | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy | Court Order mm/dd/yyyy |
|---|---|---|---|---|
| Last Date to <u>*Hear*</u> Motion to Amend Pleadings /Add Parties [*Monday*] | | 11/3/2025 | 11/3/2025 | |
| Non-Expert Discovery Cut-Off<br>(no later than deadline for *filing* dispositive motion) | 17 | 5/26/2026 | 5/26/2026 | |
| Expert Disclosure (Initial) | | 3/11/2026 | 3/11/2026 | |
| Expert Disclosure (Rebuttal) | | 4/20/2026 | 4/20/2026 | |
| Expert Discovery Cut-Off | 12[2] | 5/18/2026 | 5/18/2026 | |
| Last Date to <u>*Hear*</u> Motions [*Monday*]<br>• Rule 56 Motion due at least 5 weeks before hearing<br>• Opposition due 2 weeks after Motion is filed<br>• Reply due 1 week after Opposition is filed | 12 | 6/29/2026 | 6/29/2026 | |
| Deadline to Complete Settlement Conference [L.R. 16-15]<br><u>*Select one*</u>:  ☑ 1. Magistrate Judge *(with Court approval)*<br>☐ 2. Court's Mediation Panel<br>☐ 3. Private Mediation | 10 | 7/13/2026 | 7/13/2026 | ☐ 1. Mag. J.<br>☐ 2. Panel<br>☐ 3. Private |
| <u>Trial Filings (first round)</u><br>• Motions In Limine<br>• Memoranda of Contentions of Fact and Law [L.R. 16-4]<br>• Witness Lists [L.R. 16-5]<br>• Joint Exhibit List [L.R. 16-6.1]<br>• Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] *(court trial only)*<br>• Declarations containing Direct Testimony *(court trial only)* | 3 | 8/31/2026 | 8/31/2026 | |
| <u>Trial Filings (second round)</u><br>• Oppositions to Motions in Limine<br>• Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>• Joint/Agreed Proposed Jury Instructions *(jury trial only)*<br>• Disputed Proposed Jury Instructions *(jury trial only)*<br>• Joint Proposed Verdict Forms *(jury trial only)*<br>• Joint Proposed Statement of the Case *(jury trial only)*<br>• Proposed Additional Voir Dire Questions, if any *(jury trial only)*<br>• Evidentiary Objections to Decls. of Direct Testimony *(court trial only)* | 2 | 9/7/2026 | 9/7/2026 | |

[1]  The parties may seek dates for additional events by filing a separate Stipulation and Proposed Order.  <u>*Patent and ERISA cases in particular may need to vary from the above.*</u>

[2]  The parties may wish to consider cutting off expert discovery prior to the deadline for *filing* an MSJ.