1  CHRISTOPHER FROST (SBN 200336)
   chris@frostllp.com
2  BENJAMIN KASSIS (SBN 298844)
   ben@frostllp.com
3  DAVID TIRATURYAN (SBN 350995)
   david1@frostllp.com
4  FROST LLP
   10960 Wilshire Boulevard, Suite 2100
5  Los Angeles, California 90024
   Telephone: (424) 254-0441
6  Facsimile: (424) 600-8504

7  Attorneys for Plaintiff and Counter-Defendant
   NORTHERN LIGHT MEDICAL
8  MANAGEMENT, LLC

9           UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  NORTHERN LIGHT MEDICAL            Case No. 2:25-cv-03643-MCS-BFM
    MANAGEMENT, LLC, a Wyoming
13  limited liability company,        *Assigned to: Hon. Mark C. Scarsi*

14              Plaintiff,            **NORTHERN LIGHT MEDICAL
                                      MANAGEMENT, LLC'S NOTICE
15       vs.                          OF MOTION AND MOTION TO
                                      DISMISS SECOND AMENDED
16  AMERICAN HEALTHCARE               COUNTERCLAIM;
    SYSTEMS CORP., INC., a Nevada     MEMORANDUM OF POINTS AND
17  corporation; WAUKEGAN ILLINOIS    AUTHORITIES IN SUPPORT
    HOSPITAL COMPANY, LLC, d.b.a.     THEREOF**
18  VISTA MEDICAL CENTER EAST, an
    Illinois limited liability company; **[Fed. R. Civ. P. 9(b) & 12(b)(6)]**
19  DOES 1 through 50, inclusive,
                                      *Filed concurrently with Declaration of
20              Defendants.           David Tiraturyan and [Proposed]
                                      Order*
21  AMERICAN HEALTHCARE
    SYSTEMS CORP., INC., a Nevada     Hearing Information:
22  corporation,                      Date:    September 8, 2025
                                      Time:    9:00 a.m.
23              Counterclaimant,      Crtrm.:  7C (7th Floor)
                                               First Street Courthouse
24       vs.                                   350 West 1st Street
                                               Los Angeles, California 90012
25  NORTHERN LIGHT MEDICAL
    MANAGEMENT, LLC, a Wyoming
26  limited liability company,

27              Counter-Defendant.    Action Filed:  April 24, 2025
                                      Trial Date:    Not Set
28

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 8, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Mark C. Scarsi, located in the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, Plaintiff and Counter-Defendant Northern Light Medical Management, LLC ("Plaintiff" or "NLMM") will and hereby does move this Court for an order dismissing Defendant American Healthcare Systems Corp., Inc.'s ("AHS") Second Amended Counterclaim pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

This Motion is made on the grounds that AHS's Second Amended Counterclaim ("SACC") fails to state a claim upon which relief can be granted and fails to meet the heightened pleading standard for fraud under Rule 9(b). Specifically, the SACC is deficient because: (1) it impermissibly attempts to transform a breach of contract dispute into fraud, as AHS's own allegations confirm that NLMM performed services under the Agreement; (2) the alleged statements constitute mere puffery and non-actionable opinions about future performance rather than verifiable representations of existing fact; (3) AHS cannot establish justifiable reliance given the two-month gap between the alleged statements and contract execution, the subject agreement's comprehensive integration clause, and AHS's continued acceptance of services and payment after allegedly discovering the fraud; (4) the SACC fails to plead fraud with the requisite particularity under Rule 9(b), including the failure to allege facts showing Santore's knowledge of falsity at the time of the statements or NLMM's intent not to perform; and (5) the economic loss rule bars AHS's claim as it seeks only economic damages arising from disappointed contractual expectations.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

1    Pursuant to Local Rule 7-3 and Paragraph 9.c of this Court's Initial Standing
2  Order for Civil Cases, counsel for the parties participated in a remote-video prefiling
3  conference on July 22, 2025, during which the substance of NLMM's Motion to
4  Dismiss was discussed. Counsel engaged in a meaningful exchange regarding the
5  grounds asserted by NLMM for dismissal, including the alleged insufficiency of
6  AHS's fraud allegations under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil
7  Procedure. The parties were unable to resolve these issues informally, thereby
8  necessitating this Motion. Thus, the parties have complied with Local Rule 7-3 and
9  Paragraph 9.c of this Court's Initial Standing Order for Civil Cases.

11  DATED: July 28, 2025          FROST LLP



                                By: _____
                                    CHRISTOPHER FROST
                                    BENJAMIN KASSIS
                                    DAVID TIRATURYAN
                                    Attorneys for Plaintiff and Counter-Defendant
                                    NORTHERN LIGHT MEDICAL
                                    MANAGEMENT, LLC

1

# **<u>TABLE OF CONTENTS</u>**

2    I.    INTRODUCTION .................................................................................... 1

3    II.    FACTUAL BACKGROUND .................................................................. 2

4    III.    LEGAL STANDARDS ........................................................................... 5

5        A.    Failure to State a Claim Under Rule 12(b)(6) ............................... 5

6        B.    The Heightened Pleading Standard Under Rule 9(b) .................. 6

7    IV.    ARGUMENT .......................................................................................... 7

8        A.    The Court Should Dismiss the Counterclaim Because AHS Fails to State a Claim for Fraudulent Inducement Against NLMM. ...................... 7

9

10             1.    AHS's Own Allegations Establish That NLMM Performed Under the Contract, Precluding Any Fraud Claim. ........................................ 7

11             2.    The SACC Fails to Allege an Actionable Misrepresentation of Existing Fact. ................................................................................. 8

12

13             3.    AHS Fails to Adequately Plead Scienter or Intent Not to Perform. . 10

14             4.    The Alleged Statements Constitute Non-Actionable Puffery .......... 12

15             5.    AHS Cannot Establish Justifiable Reliance. ..................................... 13

16        B.    The Court Should Dismiss the Counterclaim for Failure to Satisfy Rule 9(b)'s Heightened Pleading Standard. .................................................... 16

17

18             1.    AHS Cannot Conclusively Specify When the Alleged Misrepresentations Occurred. ......................................................... 16

19             2.    AHS Fails to Plead the Circumstances of Each Alleged Misrepresentation with Particularity ................................................ 17

20

21             3.    AHS Fails to Allege How Any Statement Was False When Made .. 18

22        C.    The Economic Loss Rule Bars AHS's Fraud Claim. ................................ 19

23        D.    Leave to Amend Should be Denied. ........................................................ 21

V.    CONCLUSION ................................................................................... 22

24

25

26

27

28

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Thermal Scis. Corp v. Applied Materials Inc.*,
No. SACV 07-01384-JVS, 2009 WL 10868198 (C.D. Cal. Sept. 29, 2009) ................................................................................................. 7

*Apollo Grp., Inc. v. Avnet, Inc.*,
58 F.3d 477 (9th Cir. 1995) ............................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 5, 6, 11

*Best Auto Repair, Inc. v. Travelers Cas. Ins. Co. of Am.*,
616 F. Supp. 3d 1016 (C.D. Cal. 2022), *aff'd*, No. 22-55784, 2023 WL 5567176 (9th Cir. Aug. 29, 2023) ............................................... 5

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ............................................................ 6

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) .............................................................................. 6

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016) ............................................................ 5

*Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*,
118 F. Supp. 2d 1002 (C.D. Cal. 2000) ............................................ 10

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMX), 2017 WL 10363990 (C.D. Cal. Nov. 20, 2017) ......................................................................................... 18

*City Sols., Inc. v. Clear Channel Commc'ns*,
365 F.3d 835 (9th Cir. 2004) ........................................................... 14

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) ........................................................... 13

iv

*Cty. of Marin v. Deloitte Consulting LLP*,
    836 F. Supp. 2d 1030 (N.D. Cal. 2011) ..................................................... 12

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ................................................................... 19

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
    483 F. Supp. 3d 838 (C.D. Cal. 2020) ..................................................... 20

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) ..................................................... 6

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ................................................................... 13

*Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*,
    No. 2:11-CV-05883-JHN-CW, 2011 WL 13128301 (C.D. Cal. Oct. 25, 2011) .............................................................................................. 8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................ 6, 17

*Knappenberger v. City of Phoenix*,
    566 F.3d 936 (9th Cir. 2009) ................................................................... 22

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ................................................................. 22

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
    No. 07-CV-912 IEGBLM, 2007 WL 2206946 (S.D. Cal. July 27, 2007). .................................................................................................. 11, 12

*MegaFon PJSC v. Hewlett Packard Enter. Co.*,
    No. 18-CV-06463-NC, 2019 WL 1130481 (N.D. Cal. Mar. 12, 2019) ................................................................................................... 12

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ..................................................................... 7

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
    933 F.3d 1136 (9th Cir. 2019) ................................................................... 5

v

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................... 6, 16

*Newcal Indus., Inc. v. Ikon Office Sol.*,
  513 F.3d 1038 (9th Cir. 2008) .................................................................... 13

*NuCal Foods, Inc. v. Quality Egg LLC*,
  918 F. Supp. 2d 1023 (E.D. Cal. 2013) ........................................................ 19

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) .................................................................................. 13

*Pac. Contours Corp. v. Fives Machining Sys., Inc.*,
  No. SACV1800413DOCJDEX, 2018 WL 6204579 (C.D. Cal. Oct.
  29, 2018) ................................................................................................ 11

*Rich Prods. Corp. v. Kemutec, Inc.*,
  66 F. Supp. 2d 937 (E.D. Wis. 1999), *aff'd,* 241 F.3d 915 (7th Cir.
  2001) ...................................................................................................... 21

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ....................................................................... 5

*Smith v. Allstate Ins. Co.*,
  160 F. Supp. 2d 1150 (S.D. Cal. 2001) ........................................................ 2

*Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*,
  753 F. Supp. 3d 966 (C.D. Cal. 2024) ......................................................... 9

*Transamerica Life Ins. Co. v. Ponso*,
  No. 220CV03738MCSMRW, 2020 WL 6875181 (C.D. Cal. Nov.
  18, 2020) ................................................................................................. 6

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015)................................. 7, 10, 11, 12, 19

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
  660 F. Supp. 2d 1163 (C.D. Cal. 2009)......................................................... 14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................ 6, 16

*In re Winick*,
  610 B.R. 651 (S.D. Cal. 2019) ..................................................................... 10

vi

**California Cases**

*Aas v. Superior Ct.*,
    24 Cal. 4th 627 (2000)..................................................................8

*All. Mortg. Co. v. Rothwell*,
    10 Cal. 4th 1226 (1995)..............................................................14

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997), *as mod.* (July 30, 1997)........................9

*Everts v. Matteson*,
    21 Cal. 2d 437 (1942)................................................................13

*Hinesley v. Oakshade Town Ctr.*,
    135 Cal. App. 4th 289 (2005).....................................................14

*Lazar v. Superior Ct.*,
    12 Cal. 4th 631 (1996)...............................................................10

*Magpali v. Farmers Grp., Inc.*,
    48 Cal. App. 4th 471 (1996), *as mod. on denial of reh'g* (Aug. 20,
    1996)..........................................................................................11

*Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*,
    144 Cal. App. 4th 1175 (2006)...................................................15

*Rattagan v. Uber Techs., Inc.*,
    17 Cal. 5th 1 (2024)...................................................................20

*Rheingans v. Smith*,
    161 Cal. 362 (1911).....................................................................7

*Richard P. v. Vista Del Mar Child Care Serv.*,
    106 Cal. App. 3d 860 (1980).......................................................9

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979, 102 P.3d 268 (2004) ..................................19, 21

*Small v. Fritz Companies, Inc.*,
    30 Cal. 4th 167, 65 P.3d 1255 (2003) .........................................7

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153 (1991).....................................................9, 10

**Federal Rules**

Fed. R. Civ. P. 8(a) ................................................................................... 11

Fed. R. Civ. P. 9(b) .................................................... 6, 10, 11, 16, 17, 18, 19

Fed. R. Civ. P. 12(b)(6) ......................................................................... 5, 21

**Other Authorities**

Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 678 ......................................... 9

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED
COUNTERCLAIM

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

American Healthcare Systems Corp., Inc.'s ("AHS") Second Amended Counterclaim attempts to transform a garden-variety contract dispute into a fraud claim, but no amount of artful pleading can manufacture fraud where none exists.

AHS's own allegations tell the real story. When Northern Light Medical Management, LLC's ("NLMM") radiology services allegedly fell short of AHS's expectations, AHS did not cry fraud; instead, it continued accepting services for months, even making a $75,000 payment to NLMM in December 2024—nearly three months after services commenced and five months after the alleged misrepresentations. Only now, after facing NLMM's lawsuit for unpaid services and pass-through costs, does AHS attempt to recast these same performance complaints as fraudulent inducement. This transparent litigation tactic cannot withstand scrutiny.

The fatal defects in AHS's Second Amended Counterclaim are manifest. First, AHS admits the fact that dooms its fraud theory: ***NLMM performed under the Agreement***. AHS acknowledges that NLMM "would send in temporary doctors" when coverage issues arose, provided reports (albeit allegedly requiring "addendums"), and delivered services (though purportedly "untimely" and "unprofessional"). In essence, AHS's fraud claim is merely a breach-of-contract theory improperly recast as fraud, which, in any event, still lacks merit.

Second, despite three attempts at pleading, AHS still cannot satisfy Rule 9(b)'s basic requirements. AHS fails to specify when the alleged fraud occurred (wavering between "summer of 2024" and "on or around July 11, 2024"), what exactly was said, or how any statement was false when made.

Third, the fraud claim is barred by the economic loss rule because AHS cannot allege any violation of a duty independent from NLMM's contractual obligations, nor any harm distinct from the purely economic losses arising from the alleged breach of

the Agreement—particularly given that AHS's allegations merely reflect dissatisfaction with contractual performance.

Perhaps most telling is what AHS does not allege. Despite claiming fraud, AHS nowhere alleges that NLMM lacked radiologists in July 2024, that Mr. Santore knew of any impediments to performance when making the alleged statements, or that NLMM engaged in any conduct inconsistent with an intent to perform. Instead, AHS asks this Court to make a logical leap to infer fraud solely from its dissatisfaction with later performance. This Court should decline that invitation, as "fraudulent intent cannot be proven… by simply pointing to the defendant's subsequent failure to perform as promised." *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001).

Accordingly, this Court should grant NLMM's Motion and dismiss AHS's fraud claim with prejudice. After three opportunities to plead fraud, AHS has demonstrated that its claim suffers from incurable defects that no amount of repleading can fix. The fundamental problem is not poor drafting but the absence of any underlying fraud. As such, NLMM respectfully requests that the Court dismiss AHS's Second Amended Counterclaim without leave to amend.

## II.    FACTUAL BACKGROUND

NLMM is a Florida-based medical practice management company that specializes in providing comprehensive hospital-based radiology services to healthcare facilities nationwide. (*See* Compl. ¶¶ 12–13, ECF No. 1.) AHS is a healthcare management company that owns, operates, and manages hospitals and outpatient healthcare facilities in multiple states. (*See id.* ¶ 14; Second Am. Countercl. ["SACC"] ¶ 88, ECF No. 38.)

AHS alleges that "[i]n or around the summer of 2024," it was experiencing difficulty finding radiology services for its North Carolina facility due to a "shortage" in the market. (*Id.* ¶¶ 90–91.)

AHS claims that "[i]n a zoom meeting on or around July 11, 2024," NLMM's Chief Executive Officer, Patrick Santore, Jr., presented NLMM to AHS's Chief Legal Officer, Faisal Gill, as an experienced company capable of immediately providing qualified physicians for continuous radiology coverage. (*Id.* ¶ 92.) According to AHS, both parties, "through their respective agents," understood that the proposed services encompassed reading imaging studies as well as providing "complete and accurate reports for further patient care and safety." (*Id.* ¶ 93.)

During this single conversation—the date of which AHS cannot specify with certainty—AHS alleges Mr. Santore made the following specific representations: (1) that NLMM had "doctors already recruited and ready to immediately provide their services for 24/7 coverage" (*id.* ¶ 94); (2) that NLMM "had the ability to help AHS recruit for needed services locally and to provide medical director services" (*id.* ¶ 95); (3) that NLMM could "immediately provide continuous radiology coverage with doctors already recruited" (*id.* ¶ 96); and (4) that NLMM had "doctors recruited, vetted, and equipment ready in order to provide services immediately ***after signing a contract***" (*id.* ¶ 97 [emphasis added]).

AHS alleges, in conclusory fashion, that Mr. Santore "knew these statements to be false" and made them "with the intent to induce AHS into signing an Agreement." (*Id.* ¶¶ 98, 100.) However, the sole basis for alleging that Mr. Santore knew these statements were false is AHS's claim that "NLMM had issues providing 24/7 coverage to AHS fr[om] the outset of their services." (*Id.* ¶ 99.) AHS further claims that it "relied on NLMM's false statements to their [*sic*] detriment by signing the agreement and paying NLMM money to provide services." (*Id.* ¶ 105.)

On September 18, 2024—over two months after the alleged Zoom meeting took place—the parties entered into the subject Master Services Agreement for Hospital-Based Radiology (the "Agreement"). (*See* Compl. ¶ 15 & Ex. A, ECF Nos. 1 & 1-1.) AHS alleges that "[i]mmediately after signing the contract and beginning their

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM

services, NLMM provided inaccurate, incomplete, and unprofessional services." (SACC ¶ 106.)

Notably, AHS does not allege that NLMM failed to provide services altogether. Rather, AHS complains about the quality of services actually provided, including allegations that staff "notified NLMM about their incorrect reports, requesting addendums" (*id.* ¶ 107), that NLMM "had trouble fulfilling their duty to provide 2.5 FTE physicians" and used temporary doctors (*id.* ¶ 108), and that NLMM was "untimely in the provision of their services" (*id.* ¶ 109). According to AHS, these performance issues created "risk to patient safety" due to NLMM's allegedly "unprofessional and untimely work." (*Id.* ¶ 110.)

AHS alleges that it notified NLMM of these concerns and that NLMM acknowledged the need for improvement but allegedly did not sufficiently address the issues. (*Id.* ¶¶ 111–112.) AHS also claims NLMM never provided a Medical Director for radiology services at either facility. (*Id.* ¶¶ 114–115.)

Significantly, AHS characterizes NLMM's alleged conduct as contractual breaches throughout the SACC. AHS alleges that it provided NLMM "numerous notices of their clear breach of the agreement" and that "NLMM never cured any defects in their performance, or lack thereof." (*Id.* ¶ 113.) AHS concludes that "NLMM breached the Master Services Agreement numerous times and caused AHS significant damages, in an amount to be determined at trial." (*Id.* ¶ 116.)

Nevertheless, AHS continued accepting NLMM's services for months and made a partial payment of $75,000 to NLMM on December 10, 2024—nearly three months after services commenced and five months after the alleged misrepresentations. (*See* Compl. ¶ 27, ECF No. 1; Declaration of Mark Rabinovich ISO Appl. for Writ of Attachment ¶ 13, ECF No. 14-3.) Rather than pursuing its admitted breach of contract claim, AHS now seeks to recast these performance disputes as fraud in the inducement. (SACC ¶¶ 117–123.)

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM

Based solely on statements allegedly made "on or around July 11, 2024," AHS seeks damages "in an amount to be determined at trial, but no less than $200,000.00." (*Id.* ¶ 123.)

## III.   LEGAL STANDARDS

### A.   Failure to State a Claim Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may challenge a pleading on the ground of its "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Best Auto Repair, Inc. v. Travelers Cas. Ins. Co. of Am.*, 616 F. Supp. 3d 1016, 1019 (C.D. Cal. 2022), *aff'd*, No. 22-55784, 2023 WL 5567176 (9th Cir. Aug. 29, 2023) (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)).

"A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts 'to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories.'" *Id.* (quoting *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016)). Although district courts deciding motions to dismiss brought pursuant to Rule 12(b)(6) "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party[,]… conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019) (citations and quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

5

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To do so, a pleading must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," and must contain more than a mere "formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555, 545. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 555.

### B.    The Heightened Pleading Standard Under Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state ***with particularity*** the circumstances constituting fraud or mistake." (emphasis added). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted, alteration in original) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

To adequately give such notice, a plaintiff pleading fraud "must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Additionally, "a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999). In other words, "[t]he complaint must identify the 'who, what, when, where, and how' of the fraudulent misconduct, 'as well as what is false or misleading about' it, and 'why it is false.'" *Transamerica Life Ins. Co. v. Ponso*, No. 220CV03738MCSMRW, 2020 WL 6875181, at *3 (C.D. Cal. Nov. 18, 2020) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)) (Scarsi, J.); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

6

charged."). "[M]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

## IV.   ARGUMENT

### A.   <u>The Court Should Dismiss the Counterclaim Because AHS Fails to State a Claim for Fraudulent Inducement Against NLMM.</u>

"To plead a fraud claim, a party must allege (1) a knowingly false representation or fraudulent omission by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015) (citing *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173, 65 P.3d 1255, 1258 (2003)). Here, even accepting all of AHS's factual allegations as true, the SACC fails to state a legally cognizable claim for fraud.

#### 1.   AHS's Own Allegations Establish That NLMM Performed Under the Contract, Precluding Any Fraud Claim.

The fatal defect in AHS's SACC is straightforward: AHS alleges nothing more than deficient performance under a services contract, which cannot support a fraud claim. *See Advanced Thermal Scis. Corp v. Applied Materials Inc.*, No. SACV 07-01384-JVS (JWJX), 2009 WL 10868198, at *1 (C.D. Cal. Sept. 29, 2009) ("a simple failure to perform the contract, even if negligent or unreasonable, is not a basis for fraud."); *Rheingans v. Smith*, 161 Cal. 362, 366 (1911) ("The mere making of a promise, which the promisor afterwards fails or refuses to perform, does not constitute actionable fraud."). Thus, to transform a contract dispute into a fraud claim, AHS must allege either that NLMM never intended to perform when making the promise or that NLMM made misrepresentations of existing fact separate from the contractual promises. However, AHS does not sufficiently allege either.

Instead, AHS's counterclaim expressly acknowledges that NLMM *did* in fact perform under the Agreement. The SACC does not allege that NLMM failed to provide any radiology services or that it absconded with AHS's money. Rather, it

7

alleges that NLMM's performance was deficient. This critical distinction appears throughout the SACC.

For instance, AHS alleges that it "would consistently call NLMM because they did not have coverage," and in response, NLMM "would send in temporary doctors." (SACC ¶ 103.) This allegation confirms that NLMM responded to coverage gaps by providing doctors—precisely what it promised to do, even if not to AHS's satisfaction. Similarly, AHS alleges that "[i]mmediately after signing the contract and beginning their services, NLMM provided inaccurate, incomplete, and unprofessional services to AHS." (*Id.* ¶ 106.) The operative word here is "provided." In other words, AHS alleges that NLMM *provided* services, just in an allegedly inadequate manner. As a further example, AHS alleges that "NLMM consistently had trouble fulfilling their duty to provide 2.5 FTE physicians" and "had to provide a numerous amount of doctors who would fill in but would not complete their work." (*Id.* ¶ 108.) Again, this describes purported issues with NLMM's performance, *not fraud*. As such, AHS's attempt to paint its gripes with NLMM's performance cannot serve as a basis for tort damages, let alone fraud. *See Aas v. Superior Ct.*, 24 Cal. 4th 627, 643 (2000) (superseded by statute on other grounds) ("conduct amounting to a breach of contract becomes tortious when it also violates a duty independent of the contract arising from principles of tort law."). Nonetheless, even if AHS could overcome this fundamental defect in the SACC, its fraud claim would still fail for the additional reasons set forth below.

### 2. The SACC Fails to Allege an Actionable Misrepresentation of Existing Fact.

Even assuming AHS could somehow transform its breach allegations into a fraud claim, it fails to identify any actionable misrepresentation. "Fraudulent representations, to constitute ground for relief, must be as to existing and material facts; predictions of future events are ordinarily considered nonactionable expressions of opinion." *Indigo Grp. USA Inc v. Polo Ralph Lauren Corp.*, No. 2:11-CV-05883-

8

JHN-CW, 2011 WL 13128301, at \*3 (C.D. Cal. Oct. 25, 2011) (quoting *Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal. App. 3d 860, 865 (1980)). Specifically, "predictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) (quoting Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 678 at 779–80); *Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*, 753 F. Supp. 3d 966, 984 (C.D. Cal. 2024).

Here, every statement AHS attributes to Mr. Santore concerns future performance—*i.e.*, what NLMM would do *after* execution of a contract. According to the SACC, Mr. Santore stated that NLMM: (1) had doctors "ready to immediately provide their services for 24/7 coverage" (SACC ¶ 94); (2) "had the ability to help AHS recruit for needed services locally and to provide medical director services" (*id.* ¶ 95); (3) could "immediately provide continuous radiology coverage" (*id.* ¶ 96); and (4) had resources "ready in order to provide services immediately after signing a contract" (*id.* ¶ 97). Each statement explicitly or implicitly promises future action, or more specifically, the provision of services "after signing a contract."

California courts consistently hold that such promises of future performance cannot support fraud claims absent specific allegations of present intent not to perform. *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 973 (1997), *as mod.* (July 30, 1997) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."). The critical inquiry is the promisor's intent at the time of the promise, not whether performance later proved inadequate.

Even construing the alleged statements as representations about NLMM's then-existing capabilities rather than future performance, AHS fails to allege facts demonstrating falsity. Mr. Santore's alleged statement that NLMM had "doctors already recruited" (SACC ¶ 94) is not shown to be false. For instance, AHS's own

9

allegations confirm that when coverage gaps arose, NLMM "would send in temporary doctors." (*Id.* ¶ 103.) The ability to provide temporary doctors necessarily implies having recruited doctors available. Similarly, the alleged statement about having "the ability to help AHS recruit" (*id.* ¶ 95) is a representation of NLMM's capability, not a guarantee of success.

Ultimately, the SACC reveals nothing more than a healthcare company disappointed with its vendor's performance, which amounts to a quintessential contract dispute that cannot, and should not, be transformed into fraud through conclusory allegations and hindsight reasoning.

### 3. AHS Fails to Adequately Plead Scienter or Intent Not to Perform.

"A suit for fraud and deceit will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise."[1] *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991)). "[I]ntent not to perform cannot be proved simply by showing a subsequent failure to perform." *UMG Recordings*, 117 F. Supp. 3d at 1109.

"Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by

---

[1] Although AHS labels its claim as "Fraud in the Inducement," the substance of its allegations—that NLMM made promises about future performance "without any intention of actually performing" "to induce AHS into signing an Agreement" (SACC ¶¶ 101, 100)—constitutes promissory fraud. *See Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996) ("An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract."). This distinction, however, is immaterial here, as both theories require proof that the defendant lacked an intent to perform at the time the promise was made. *See id.* ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."); *see also In re Winick*, 610 B.R. 651, 659 (S.D. Cal. 2019) ("Promissory fraud and fraudulent inducement share the same elements.").

terms of the contract at formation." *Id.* at 1109–10 (quoting *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEGBLM, 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007)). Where "[t]he only allegation in the complaint that might give rise to an inference that the promise was made with no intention of performing is the fact that plaintiffs allegedly did not honor it," the claim fails because "nonperformance alone will not support a finding of promissory fraud." *Id.* at 1110.

Here, AHS attempts to satisfy this requirement through conclusory allegations that Mr. Santore "knew these statements to be false" (SACC ¶ 98) and "made the statement that they would immediately provide continuous 24/7 coverage without any intention of actually performing this promise." (*Id.* ¶ 101.) These bare assertions amount to nothing more than the "labels and conclusions" and "formulaic recitation of the elements" that fail to satisfy even Rule 8(a), let alone Rule 9(b). *See Twombly*, 550 U.S. at 555; *see also Pac. Contours Corp. v. Fives Machining Sys., Inc.*, No. SACV1800413DOCJDEX, 2018 WL 6204579, at *5 (C.D. Cal. Oct. 29, 2018), *report and recommendation adopted,* No. 818CV00413DOCJDEX, 2018 WL 6198461 (C.D. Cal. Nov. 28, 2018) ("in promissory fraud cases, mere allegations that the Defendant did not intend to perform, and in fact did not perform, without more, are insufficient.").

The SACC's sole factual basis for inferring Mr. Santore's fraudulent intent is that "NLMM had issues providing 24/7 coverage to AHS fr[om] the outset of their services." (SACC ¶ 99.) This temporal sleight of hand, using post-contract performance to infer pre-contract state of mind, is precisely what courts reject. *See Magpali v. Farmers Grp., Inc.*, 48 Cal. App. 4th 471, 481 (1996), *as mod. on denial of reh'g* (Aug. 20, 1996) ("something more than nonperformance is required to prove the defendant's intent not to perform his promise"). That "something more" must be facts showing Mr. Santore's state of mind in July 2024, not hindsight based on NLMM's allegedly deficient performance months later. Indeed, just as in *UMG Recordings*, where the court dismissed fraud claims based solely on subsequent

11

nonperformance, AHS's "reliance on nonperformance as circumstantial evidence of defendants' fraudulent intent at the time of contract formation is misplaced." 117 F. Supp. 3d at 1110 (quoting *Mat-Van*, 2007 WL 2206946, at *6).

Indeed, AHS fails to allege any facts suggesting Mr. Santore lacked intent to perform when he made the July 2024 statements. For instance, the SACC contains no allegations that NLMM lacked any radiologists or infrastructure in July 2024, that Mr. Santore knew of any impediments to performance at the time, that NLMM had a pattern of making false promises to other potential clients, that any contemporaneous documents or communications contradicted Mr. Santore's representations, or that NLMM took any actions inconsistent with an intent to perform. Instead, AHS asks the Court to infer fraudulent intent solely from alleged performance deficiencies months later, which cannot form the basis for a fraud claim.

Moreover, AHS's own allegations undermine any inference of fraudulent intent. AHS alleges that when coverage issues arose, NLMM "would send in temporary doctors" (SACC ¶ 103), and "NLMM admitted that they needed to improve their services" (*id.* ¶ 112). Thus, NLMM's efforts to address performance issues are wholly inconsistent with an intent never to perform. "Because [AHS] allege[s] insufficient facts to support an inference that [NLMM's] purported promise ...[were] made with no intention of performing," its fraud claim must be dismissed." *UMG Recordings*, 117 F. Supp. 3d at 1110.

### 4.    The Alleged Statements Constitute Non-Actionable Puffery.

"Language considered non-actionable puffery cannot form the basis for fraudulent inducement, negligent misrepresentation, or unfair competition claims because these 'vague, exaggerated, generalized or highly subjective statements regarding a product or business' are 'extremely unlikely to induce consumer reliance.'" *MegaFon PJSC v. Hewlett Packard Enter. Co.*, No. 18-CV-06463-NC, 2019 WL 1130481, at *5 (N.D. Cal. Mar. 12, 2019) (citing *Cty. of Marin v. Deloitte*

*Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011); *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008)).

Here, AHS's fraudulent inducement claim fails as a matter of law because its allegations reflect statements of puffery, *not* actionable fraud. Mr. Santore's alleged representation that NLMM was a "well experienced company with the ability to immediately provide[] highly qualified physicians for continuous and highly competent radiology coverage for their hospitals" (SACC ¶ 92) is paradigmatic puffery. Terms like "well experienced," "highly qualified," and "highly competent" are precisely the type of "generalized, vague, and unspecific assertions" that constitute "mere puffery upon which a reasonable consumer could not rely." *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (internal quotation marks omitted) (citing *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)).

Similarly, statements about NLMM's "ability" to provide services (SACC ¶¶ 92, 95, 96) are non-actionable opinions about capability rather than concrete factual representations. *See Cook, Perkiss & Liehe*, 911 F.2d at 245–46; *Everts v. Matteson*, 21 Cal. 2d 437, 451 (1942) ("a mere statement of opinion… does not constitute a basis for a complaint of fraud…"); *cf. Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) (in securities fraud context "a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong."). As such, these essentially promotional statements about corporate capabilities allegedly made during a preliminary Zoom meeting cannot support a fraud claim, particularly between sophisticated commercial parties.

### 5.    AHS Cannot Establish Justifiable Reliance.

Even if NLMM's purported statements could be construed as actionable representations, AHS cannot establish justifiable reliance. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct

13

which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004) (quoting *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)).

Here, the temporal gap between the alleged representations and the execution of the Agreement precludes any inference of reliance. AHS alleges that the statements were made "on or around July 11, 2024" (SACC ¶ 92), yet the parties did not execute the Agreement until September 2024. (Agreement at 27, ECF No. 1-1.) During this intervening period, sophisticated parties like AHS, represented by counsel, would have conducted due diligence and negotiated detailed contractual terms. Indeed, the Agreement is a sophisticated 37-page commercial contract containing detailed provisions governing, *inter alia*, staffing requirements, performance metrics, payment terms, dispute resolution procedures, and termination rights. (*See generally id.*) No reasonable factfinder could conclude that informal representations made months earlier during a preliminary Zoom meeting induced AHS to enter such a comprehensive written agreement.

Further, the Agreement's integration clause definitively precludes any reliance on prior representations. Section 11.06 of the Agreement expressly provides that the Agreement "constitutes the entire understanding between the parties concerning the subject matter hereof and supersedes any and all previous agreements between the parties relating thereto." (*Id.* § 11.06.) "[A]n integration clause may be relevant to reasonable reliance, ... which federal courts assess on motions to dismiss under the plausibility standard." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1176 n.15 (C.D. Cal. 2009) (citing *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 301–03 (2005)). Here, the integration clause renders any alleged reliance on Mr. Santore's July statements unreasonable as a matter of law. AHS cannot plausibly claim it relied on informal representations from a preliminary

14

Zoom meeting when it subsequently negotiated and signed a comprehensive agreement that explicitly superseded all prior discussions. The very purpose of such clauses is to prevent precisely the type of claim AHS now asserts—that oral statements made months before execution somehow induced it to enter into the Agreement. By agreeing to this provision, AHS acknowledged that only the written terms mattered, not any prior conversations about NLMM's capabilities or readiness to perform. This is particularly true where, as here, the contracting party is a sophisticated entity represented by its own Chief Legal Officer who understood the legal significance of an integration clause.

Finally, AHS's post-contract conduct belies any claim of reliance on the alleged misrepresentations. Despite claiming that NLMM's services were deficient "[i]mmediately after signing the contract" (SACC ¶¶ 106, 122), AHS continued accepting services for months *and* made a $75,000 payment in December 2024. (Compl. ¶ 27; *see also* SACC ¶ 105.) This course of dealing is inconsistent with a party that was fraudulently induced into a contract based on false promises. Indeed, California case law holds that "where a party, with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract, and waive all right of action for fraud, he cannot maintain an action for the original wrong practiced upon him. *Where the affirmance of the contract is equivalent to a ratification, all right of action is gone. ...* [Thus] where a party, with full knowledge, declines to repudiate a transaction known to him to be fraudulent, and fully and expressly ratifies it, he can neither rescind nor maintain an action for damages." *Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1192–93 (2006) (alterations in original, internal quotations omitted). Here, AHS's continued acceptance of NLMM's services and voluntary payment months into NLMM's provision of services—despite allegedly knowing of the purported deficiencies from the outset—negates any claim of reliance and constitutes ratification that precludes any fraud claim.

### B.     <u>The Court Should Dismiss the Counterclaim for Failure to Satisfy Rule 9(b)'s Heightened Pleading Standard.</u>

Despite having three opportunities to plead fraud—including two amendments—AHS still fails to satisfy Rule 9(b)'s particularity requirement. The Ninth Circuit has made abundantly clear that fraud allegations must specify "the who, what, when, where, and how" with granular detail. *Vess*, 317 F.3d at 1106. AHS's vague and conclusory allegations fall far short of this mandate.

#### 1.     AHS Cannot Conclusively Specify When the Alleged Misrepresentations Occurred.

Rule 9(b) requires clear specification of when alleged misrepresentations occurred. *See Neubronner*, 6 F.3d at 672 (requiring "times, dates, places… and other details of the alleged fraudulent activity."). Here, AHS's temporal allegations are so vague and inconsistent that NLMM cannot determine when the alleged fraud occurred.

AHS alleges the key statements were made "on or around July 11, 2024" (SACC ¶ 92), which fails to specify whether the meeting occurred on that date or some other unidentified date. This ambiguity is compounded by AHS's inconsistent terminology—referring to "[d]uring this meeting" (*id.* ¶ 94), then switching to "[i]n the same conversation" (*id.* ¶¶ 95–97). This shifting language leaves unclear whether AHS is alleging a single meeting, multiple meetings, or whether "meeting" and "conversation" refer to the same or different communications.

More problematic, however, is when AHS repleads its fraud claim, it alleges that "in or around the summer of 2024," NLMM made false statements to induce AHS to enter into the Agreement (*id.* ¶ 117), before then stating "[s]pecifically" that the statements occurred during "the conversation... on or around July 11, 2024" (*id.* ¶ 118). This inconsistency creates ambiguity about the scope of AHS's fraud claim. The broader "summer of 2024" timeframe followed by the word "specifically" suggests the July 11 conversation was merely one example among multiple allegedly

16

fraudulent communications throughout the summer. Yet AHS identifies no other communications, leaving NLMM unable to determine whether it must defend against statements from a single conversation or multiple unidentified interactions spanning several months. This failure to clearly delineate the temporal scope of the alleged fraud violates Rule 9(b)'s requirement that defendants receive "notice of the particular misconduct... so that they can defend against the charge…." *Kearns*, 567 F.3d at 1124.

## 2. AHS Fails to Plead the Circumstances of Each Alleged Misrepresentation with Particularity.

Beyond temporal vagueness, AHS fails to satisfy Rule 9(b)'s requirement to distinctly plead each alleged misrepresentation. Although AHS lists four categories of statements allegedly made by Mr. Santore (SACC ¶¶ 94–97), it treats them as an undifferentiated mass rather than pleading the specific circumstances of each representation. These imprecise and overlapping allegations prevent NLMM from understanding exactly what was said and when.

For instance, AHS claims Mr. Santore stated NLMM had "doctors already recruited and ready to immediately provide their services for 24/7 coverage" (*id.* ¶ 94) and then separately that he "repeatedly stated" NLMM could "immediately provide continuous radiology coverage with doctors already recruited" (*id.* ¶ 96). These allegations appear to describe the same representation phrased differently, yet AHS pleads them as distinct statements. This imprecision violates Rule 9(b) because it leaves unclear whether Mr. Santore made one statement that AHS is characterizing multiple ways or actually made repetitive statements.

AHS also makes a bare reference to additional "statements in the pro forma invoices for the hospitals" (*id.* ¶ 104), alleging these unidentified statements were "false as they were woefully inadequate and clearly not expected costs from an experienced company." This allegation exemplifies Rule 9(b) deficiencies, as AHS fails to identify: (1) what specific statements appeared in these invoices; (2) when the invoices were created or provided; (3) who prepared or presented them; (4) which

17

"hospitals" received them; (5) what made the costs "woefully inadequate"; or (6) how cost estimates could constitute fraudulent misrepresentations. Without these basic details required by Rule 9(b), NLMM cannot investigate or defend against this phantom allegation.

### 3. AHS Fails to Allege How Any Statement Was False When Made.

Perhaps most fundamentally, AHS fails to satisfy Rule 9(b)'s requirement to plead facts showing how each statement was false at the time it was made. *See Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2017 WL 10363990, at *3 (C.D. Cal. Nov. 20, 2017) ("The plaintiff must plead facts explaining why the statement was false when it was made.").

For each alleged misrepresentation, AHS provides zero contemporaneous facts demonstrating the falsity of the statements at the time they were made. Regarding NLMM having "doctors already recruited" (SACC ¶ 94), AHS alleges no facts showing NLMM lacked recruited doctors in July 2024. To the contrary, AHS's own allegation that NLMM "would send in temporary doctors" when coverage gaps arose (*id.* ¶ 103) affirmatively demonstrates NLMM did have recruited doctors available. Similarly, regarding NLMM's "ability to help AHS recruit" (*id.* ¶ 95), AHS provides no allegations about NLMM's recruiting infrastructure, experience, or resources that would show this statement was false when made.

AHS's attempt to establish falsity relies entirely on post-contract performance issues. HS claims NLMM "had issues providing 24/7 coverage to AHS fr[om] the outset of their services" (*id.* ¶ 99) and was "unable to provide 24/7 coverage" (*id.* ¶ 102). But these allegations about service quality after contract execution say nothing about whether Mr. Santore's statements were false in July 2024. Indeed, AHS's detailed complaints about NLMM's performance inadvertently prove that Mr. Santore's alleged statements were, in fact, true.

AHS alleges that "multiple staff from Vista notified NLMM about their incorrect reports, requesting addendums" (*id.* ¶ 107), which confirms NLMM provided radiology reports as promised, even if they required corrections. AHS further complains that "NLMM consistently had trouble fulfilling their duty to provide 2.5 FTE physicians" and "had to provide a numerous amount of doctors" (*id.* ¶ 108), which actually demonstrates NLMM's ability to provide multiple physicians when needed. The allegation that NLMM was "untimely in the provision of their services" (*id.* ¶ 109) again confirms services were provided, just not as promptly as AHS preferred. Even AHS's characterization of NLMM's work as "unprofessional and untimely" (*id.* ¶ 110) acknowledges that work was performed.

These performance complaints establish that NLMM possessed exactly what Mr. Santore represented: recruited doctors ready to provide services, the ability to deliver radiology coverage, and the resources to fulfill its contractual obligations. That AHS found the quality or timeliness of services unsatisfactory does not retroactively transform truthful statements about capabilities into fraud. Rule 9(b) demands facts showing the statements were false when made, not evidence of later disappointment with service quality. *See Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (requiring pleading "sufficient evidentiary facts… to explain why… statements were false when made… to satisfy the requirements of Rule 9(b)"). AHS has failed to meet this fundamental requirement.

### C.   The Economic Loss Rule Bars AHS's Fraud Claim.

"Generally, purely economic losses are not recoverable in tort." *UMG Recordings*, 117 F. Supp. 3d at 1103 (quoting *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013)). Thus, "a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort. Instead, the claimant is limited to recovery under the law of contract." *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995); *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988, 102 P.3d 268, 272 (2004) ("The economic loss

19

1  rule requires a purchaser to recover in contract for purely economic loss due to

2  disappointed expectations, unless he can demonstrate harm above and beyond a

3  broken contractual promise.").

4      Although the SACC alleges AHS relied on misrepresentations to enter into the

5  Agreement, "the economic loss rule turns not on what claims a plaintiff alleges, but

6  rather on the harm caused (whether it is purely economic) and on the nature of the

7  conduct that caused it, and more particularly on whether that conduct overlaps with a

8  contractual obligation or is independent of it." *In re Ford Motor Co. DPS6 Powershift*

9  *Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 849 (C.D. Cal. 2020).

10     Here, AHS's own allegations demonstrate that its purported harm is purely

11  economic and the challenged conduct directly overlaps with NLMM's contractual

12  obligations. Throughout the SACC, AHS characterizes NLMM's conduct as breach

13  of contract. AHS alleges it provided NLMM "numerous notices of their clear breach

14  of the agreement" (SACC ¶ 113) and concludes that "NLMM breached the Master

15  Services Agreement numerous times and caused AHS significant damages." (*Id.* ¶

16  116.) These breach allegations reveal the true nature of AHS's claim, which is its

17  disappointment with NLMM's contractual performance.

18     Indeed, AHS's specific grievances all concern NLMM's performance of

19  contractual duties: providing incorrect reports requiring addendums (*id.* ¶ 107),

20  having "trouble fulfilling their duty to provide 2.5 FTE physicians" (*id.* ¶ 108), being

21  "untimely in the provision of their services" (*id.* ¶ 109), and failing to provide a

22  Medical Director as "agreed under the contract" (*id.* ¶¶ 114–115). Each allegation

23  involves conduct that directly "overlaps with a contractual obligation" rather than

24  being "independent of it." *In re Ford*, 483 F. Supp. 3d at 849.

25     Although California law recognizes that fraud claims may survive the

26  economic loss rule in certain circumstances, this exception applies only where "the

27  plaintiff can establish the elements of the cause of action independently of the parties'

28  contractual rights and obligations." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 44

20

(2024) ("In other words, the question will turn on the nature of the alleged conduct, the provisions of the contract itself, and whether the conduct exposed a party to a risk of harm neither reasonably contemplated nor allocated by the parties before entering their agreement."). Here, AHS cannot meet this standard, as the alleged misrepresentations all concern NLMM's ability to perform the very services later memorialized in the Agreement (*e.g.*, providing 24/7 radiology coverage, recruiting physicians, and providing a medical director). These are not risks "neither reasonably contemplated nor allocated by the parties"; rather, ***they are the core subject matter of the Agreement itself***, which specifically allocated these risks through detailed provisions. Moreover, AHS's fraud claim is, in substance, a claim for promissory fraud based on contractual performance. AHS explicitly alleges that Mr. Santore "made the statement that they would immediately provide continuous 24/7 coverage without any intention of actually performing this promise." (SACC ¶ 101.) But promises regarding future performance that become the subject of a contract are precisely what the economic loss rule is designed to relegate to contract law. As the California Supreme Court explained in *Robinson*, "the economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" 34 Cal. 4th at 988 (quoting *Rich Prods. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999), *aff'd,* 241 F.3d 915 (7th Cir. 2001)).

In sum, AHS seeks only economic damages it claims to have lost from entering into and performing under the Agreement. (SACC ¶¶ 121, 123.) These are quintessential contractual losses arising from disappointed expectations about service quality. As such, the economic loss rule bars AHS from recasting these contractual grievances as tort claims merely by alleging that pre-contract statements induced it to enter into the Agreement.

### D.    <u>Leave to Amend Should be Denied.</u>

When dismissing claims under Rule 12(b)(6), "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM

cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). Here, amendment would be futile because AHS's fraud claim suffers from fundamental defects that cannot be cured. After three attempts AHS still cannot plead basic facts required for fraud, and its own allegations establish incurable legal defects. AHS admits NLMM performed under the Agreement, so no amendment can transform admitted performance into non-performance or intent not to perform. Similarly, no amendment can circumvent the economic loss rule when AHS's grievances inherently concern contractual performance and it seeks only economic damages from disappointed contractual expectations. Therefore, because "the pleading could not possibly be cured by the allegation of other facts," dismissal here should be with prejudice. *Knappenberger*, 566 F.3d at 942.

## V.    CONCLUSION

For the foregoing reasons, NLMM respectfully requests that the Court grant this Motion and dismiss the SACC *without* leave to amend.

DATED: July 28, 2025            FROST LLP

By: _____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Northern Light Medical Management, LLC certifies that this brief contains 6,967 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 28, 2025          FROST LLP

By: _____
DAVID TIRATURYAN
Attorney for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically generate and send notice of this filing to all attorneys of record who have appeared in this case and who are registered users of the Court's CM/ECF system. Parties may access this filing through the Court's electronic filing system.

DATED: July 28, 2025          FROST LLP

By: _____

DAVID TIRATURYAN
Attorney for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM