UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

================================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| Christianna Howard | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Petitioner: | Attorneys Present for Respondent: |
|---|---|
| N/A | N/A |

**Proceedings:** (In Chambers) Order Re: Plaintiff's Application for Writ of Attachment (ECF 14)

Before the Court is Plaintiff's Application for a writ of attachment. (ECF 14.) For the reasons stated below, Plaintiff's Application is **granted in part and denied in part**.

## I. Background

This is a breach of contract case. Plaintiff Northern Light Medical Management (NLMM) is a medical practice management company that provides radiology services to healthcare facilities. (ECF 14-2 ("Appl.") at 6.[1]) Defendant American Healthcare System Corp. (AHSC) manages healthcare facilities, including two at issue in this case: Vista Medical Center East and Randolph Health Hospital. (Appl. at 6.) In September 2024, the parties entered

---

[1] All page numbers refer to the PACER-generated numbers in the header of the document.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

==================================================================

into a written agreement in which NLMM agreed to provide radiology services at the two facilities for an agreed upon rate. (Appl. at 6; *see also* ECF 14-4 at 2 ("Contract").) The arrangement deteriorated within months of its initiation, and NLMM filed suit, claiming that Defendant owes close to a million dollars under the contract. (ECF 1 ("Compl.") ¶ 60.) That million-dollar figure is the aggregation of three categories of costs allegedly owed under the contract.

First, NLMM points to AHSC's agreement to make monthly payments of $183,533.08 for the first three months of its contract with Vista Medical Center. (Appl. at 6-7.) Defendant made one payment of $75,000 in December 2024 but has not made any other payment toward its balance, which stands at $475,599.24. (Appl. at 7.)

Second, NLMM claims that Defendant agreed, as part of the contract, to reimburse NLMM for certain costs of operations. (Appl. at 7; Compl. at 8.) Plaintiff alleges Defendant owes unpaid "pass-through" costs in the amount of $464,759.04. (Appl. at 7-8.)

Finally, pursuant to a separate agreement, NLMM agreed to pay 50% of the cost of integrating the two entities' technology platforms. (Appl. at 8.) NLMM paid its share but claims AHSC never did its part, and that Defendant's failure to uphold its end of the bargain thwarted progress on the project. (Appl. at 8.) It believes AHSC should return NLMM's $23,956 payment.

NLMM sent a formal demand letter in February 2025. (ECF 14-16 at 2.) When that did not spur AHSC to pay its invoices, NLMM filed a Complaint in this Court. (ECF 1.) AHSC counter-claimed, saying that NLMM materially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

================================================================

breached the contract and argues that NLMM's breaches relieve them of any obligation to pay. (ECF 19.)

NLMM filed the instant Application, which is fully briefed. (ECF 20, 29.) Argument was held on the matter on August 26, 2025. (ECF 63.) The matter is now ready for decision.

## II. Discussion

### A. Legal Standard

Plaintiffs in federal court may invoke whatever remedies are provided under the law of the State in which the federal court is located for "seizing a person or property to secure satisfaction of the potential judgment". Fed. R. Civ. P. 64(a). The effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 436 n.10 (1974).

California law provides for prejudgment writs of attachment. Attachment is a remedy for plaintiffs with a contractual claim to money. *See Blastrac, N.A. v. Concrete Solutions & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010). The plaintiff may have items of a defendant's property seized pre-judgment and held by a levying officer. *Id.*

To issue a writ of attachment under California law, a court must find all of the following: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

==================================================================

probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than recovery of the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero. Cal. Civ. Pro. Code § 484.090(a). The burden is on the applicant to establish each element by a preponderance of the evidence. *Blastrac*, 678 F. Supp. 2d at 1004-05.

Attachment is a "harsh remedy," because it permits seizure of defendant's property before the claim is adjudicated. *Martin v. Aboyan*, 148 Cal. App. 3d 826, 831 (1983). The elements are thus strictly construed against the applicant. *Pos–A–Traction, Inc. v. Kelly–Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000).

### A. The Claim Is One Upon Which an Attachment May Be Issued

A writ of attachment may only be issued "in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars." *See* Cal. Civ. Proc. Code. § 483.010(a). Some of NLMM's claims meet this standard, others do not.

#### 1. Fixed Monthly Payments

NLMM first claims entitlement to "fixed" monthly payment for radiology services. The Court finds Plaintiff is not entitled to a writ of attachment for this category of costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

===================================================================

Here, there is no dispute that NLMM's claim to monthly payments for radiology services is based on a contract; the contract provides for such payments to be made. A closer question is whether the claim is for a "fixed or readily ascertainable" amount. To meet that standard, "the contract sued on must furnish a standard by which the amount due may be clearly ascertained, and there must exist a basis upon which the damages can be determined by proof." *Lewis v. Steifel*, 98 Cal. App. 2d 648, 650 (1950). That does not necessarily mean that the amount owed must "appear on the face of the contract." *CIT Grp./Equip. Fin., Inc. v. Super DVD, Inc.*, 115 Cal. App. 4th 537, 540-41 (2004). But the amount owed must be measurable by reference to the contract itself, and the basis for computing damages must be reasonable and certain. *Id.*

Courts have found that standard met where the contract provides a monthly rate and where the court need only determine the period in which the contract was in force. *Id.* (holding that master lease and corresponding lease schedules provided clear formula for computation of damages: monthly rent multiplied by unexpired term). NLMM claims this contract is of that kind, in that the parties agreed on a monthly fee for services, at least for the first few months of the contract, such that this Court can determine the amount of the obligation simply by reference to the contract and the number of months for which invoices were issued. (App. at 11-12.)

The Court does not read the contract that way. The contract set up a formula: AHSC would pay NLMM a fixed fee per radiology interpretation conducted by NLMM doctors, minus credit for any amount that NLMM recovered from patients and insurance. (Contract § 5.01.) The contract

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

===================================================================

contemplated that the precise number of interpretations and the amount received in collections would not be known immediately. (*E.g.*, Contract § 5.02.A.5.) It thus provided that NLMM would send an invoice based on an "interpretation count" that was set by the contract. (Contract § 5.02.A.3.) For the first four months, NLMM would bill based on an interpretation count set a "historic average" stated in the facility-specific addendum. (Contract § 5.02.A.3.) But that invoiced amount was subject to an adjustment in the following month's invoice for any amount NLMM collected from patients. (Contract § 5.02.A.5.b.) And that number was subject to a "semi-annual true-up," in which the parties would compare the actual number of interpretations to the invoiced interpretations and account for any additional collections that had come in. (Contract § 5.02.A.6.)

With respect to Vista Medical Center, the initial fixed invoices were set at $183,533.08, based on an agreed-on historic average count of 5,798.83, and the average per interpretation of $31.65. (ECF 14-4 at 30.) NLMM thus billed $183,533.08 for each of the first three months of services at Vista. (ECF 14-5, 14-6, 14-7.)

What it is not reflected in the invoices, or anywhere else in the record, is whether any credit for collections was ever assessed and whether the "true-up" for the actual number of interpretations ever occurred. NLMM's briefing essentially concedes that it did not; its Rule 26(f) report states that it may well be entitled to *more* money once a full accounting is done. (ECF 35 at 4; *see also* ECF 14-3 at 5.) That may or may not be true as a factual matter—NLMM offers no factual basis for this assertion—and the fault for the lack of accounting might rest with AHSC. (ECF 35 at 4 (indicating that the accounting has not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

================================================================

occurred because the relevant data is in AHSC's hands).) But the fact that that accounting did not occur means that the amount ultimately owed under the contract is not "readily ascertainable"—both collections and number of interpretations are unknown variables that prevent the Court from assessing the amount owed with precision.

To be clear, some measure of uncertainty will not prevent a court from entering a writ of attachment. *Walker v. Phillips*, 205 Cal. App. 2d 26, 31 (1962). Here, however, the unknown variables are the building blocks of the formula set up by the contract. Under such circumstances, the Court cannot find that the amount due is fixed or readily ascertainable. *See Constr. Laborers Tr. Funds for S. California Admin. Co. v. W. Coast Structures, Inc.*, No. ED CV 18-490-JGB (SPx), 2019 WL 4148354, at *8 (C.D. Cal. June 21, 2019) (writ of attachment properly denied where contract set out a formula for payment and significant variables within that formula were unknown).

Failure to meet any of the four requirements is sufficient to deny the writ as to that claim. The Court thus concludes that a writ of attachment is not appropriate as to the $475,599.24 purportedly owed for the invoices attached as Exhibits B-D.

### 2. Pass-Through Costs

The second category of claims is for pass-through costs. (App. at 12.) Each facility to be covered under the contract had its own addendum, with a "proforma" that outlined anticipated operational costs at that location. (Contract §§ 1.03.I, 5.03.) The contract provided that if actual costs in certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**  2:25-cv-03643-MCS-BFM                **Date:**  September 5, 2025

**Title:**  *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al*

================================================================

categories exceeded those estimated by the parties, the costs would "pass-through" to AHSC. (Contract § 5.03.)

For example, the proforma for Vista stated a "labor cost allowance" of $246,715.83 per month. (ECF 14-4 at 30.) NLMM paid for labor costs, including physician labor, locum tenes coverage, and teleradiology work, up to that amount. (Contract § 5.03.B.) Under the terms of the contract, any excess labor costs would pass through to AHSC. (Contract § 5.03.B.)

NLMM points to four invoices for excess labor costs: $28,721.74 for October 2024; $41,449.39 and $51,710 for November 2024, and $212,364.64 for December 2024. (ECF 14-8, 14-9, 14-10, 14-12.) Based on these four invoices, NLMM seeks $333,795.77.

The invoice for services provided in October 2024 predates the effective date of the written agreement: the contract states that the agreement was effective November 1, 2024. (Contract § 9.01; ECF 29-1 at 4.) NLMM's Executive Vice President Mark Rabinovich provides a declaration suggesting that the parties agreed to modify that contract, and Vista permitted NLMM's doctors to start working in October with their labor being "reimbursed on a dollar-for-dollar basis." (ECF 29-1 at 4.) The parties' contract prohibited modification except by a written instrument signed by both parties, and no such written instrument is before the Court. (Contract § 11.06.) In any event, assuming there was a valid modification, Mr. Rabinovich's brief statement of the terms of the agreement for the month of October 2024 does not provide the Court enough information to enforce it. The Court thus excludes the amount invoiced for October 2024.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

========================================================================

The remaining numbers do fall within the period of the contract. The contract provides a definite means of ascertaining this number—total labor costs minus the labor allotment in the proforma. (Contract § 5.03.) AHSC complained that NLMM had not adequately supported this aspect of its Application, saying that it had never been presented with evidence showing that these invoices had properly accounted for the proforma's labor allotment. (ECF 20.) In Reply, Plaintiff provided a declaration signed by NLMM's Executive Vice President indicating that he had verified that the labor allotment had been credited and providing documentation of the labor costs for December 2024. (ECF 29-1 at 2, ECF 29-2.)

The Court thus finds that this number is one to which Plaintiff is entitled under the contract, in an amount readily ascertainable under the contract. This number meets the first criterion.

The same is true of the costs allocated to workstations. The contract provided that if the number of workstations acquired for physicians exceeded the number anticipated in the proforma, the cost associated with that excess shall be passed through to ACHS. (Contract § 5.03.D.) The proforma for Vista reflected three workstations at $6,000 each, for a total of $18,000. (ECF 14-4 at 30.) In the end, NLMM stood up sixteen workstations at a total cost of $124,557.26; it billed AHSC that amount, minus the $18,000 workstation allotment in the proforma, or $106,557.26. (ECF 20-3 at 6-7.) That amount is allotted in the contract, and the amount appears to be readily ascertainable, based on the invoices provided by Defendant. The first criterion is therefore met as to this pass-through cost as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

==================================================================

### 3. Technology Implementation Costs

Finally, NLMM includes in its calculation $23,958, which it claims it paid Vista to facilitate integration of its technology with Vista's platform. (App. at 8.)

The initial contract between the parties provided that NLMM could, in its reasonable discretion, integrate its technology platform with the system in place at Vista, and that AHSC would provide "commercially reasonably cooperation" with that integration. (Contract § 3.05.) According to NLMM, however, AHSC failed to pay money it owed to Oracle, the company that managed Vista's own technology platform, and that delinquency hindered the parties' ability to integrate their systems. (App. at 8.) A memorandum signed by Vista's CEO after the contract was entered reflects NLMM's agreement to pay 50% of one-time integration costs, up to a maximum of $25,000, for purposes of integrating AHSC's system with NLMM's platform. (ECF 14-13 at 2.)

NLMM claims that it paid its portion to Vista, but that Vista never paid Oracle, and thus the integration of the two technology systems never went forward. (App. at 8.) Based on those facts, NLMM believes it should be reimbursed for the money it put into the pot. AHSC claims that it did pay its portion of Oracle's bill. (ECF 20-3 at 2 (Decl. of Vista Healthcare CFO); ECF 20-4 at 3 (Decl. of Faisal Gill, Chief Legal Officer).) Setting the factual dispute aside, NLMM has not shown that it has a contractual claim to this money.

The memorandum does not reference any provision of the initial contract, and it certainly is not incorporated into the initial contract. (ECF 14-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

================================================================

13 at 2.) Any entitlement NLMM may have to a refund of this money is not a claim under the initial contract. To the extent NLMM's argument is that the memorandum is an independent contract, the memorandum does not obligate AHSC to pay any amount to Oracle, and NLMM does not allege that AHSC violated any of its obligations under that agreement.

Without prejudging whether NLMM is entitled to repayment of the funds it sent to AHSC, then, the Court cannot say that NLMM is entitled to that money under any contractual provision presently before the court. NLMM essentially admitted as much during the hearing; it stated that its entitlement to return of these funds is "equitable," based on the parties' understanding of how the funds were to be used. Be that as it may, NLMM has not shown entitled to these funds as a contractual matter, and thus is not entitled to a writ of attachment as to these funds.

In sum, the only amounts that meet the first criterion are the pass-through labor and workstation costs.

### 2. Probable Validity of the Claim

With respect to those costs, the Court next considers the probable validity of NLMM's claims. To assess the probable validity of a plaintiff's claims, a court looks to "'the relative merits of the positions of the respective parties and make[s] a determination of the probable outcome of the litigation.'" *Blastrac*, 678 F. Supp. 2d at 1005 (quoting *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1120 (1985)). This element is satisfied where the plaintiff has shown it is more likely than not to obtain a judgment against the defendant. Cal. Civ. Proc. Code § 481.190.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

==================================================================

Here, the plain language of the contract requires AHSC to pay the pass-through costs. (Contract § 5.03.) AHSC raises nonfrivolous arguments about whether they received the expected benefit of their bargain with NLMM. (Opp'n at 5.) In particular, AHSC asserts that it believed NLMM was prepared to immediately staff their facilities primarily with full-time radiologists, and the pro forma does tend to suggest that the parties envisioned that staffing model. (*See* ECF 14-4 at 30.) Doing so may well have limited both the enormous locum tenes costs and the number of workstations required. Still, the contract anticipated that the actual costs might exceed the parties' assumptions and assigned those excess costs to AHS, without any limitation. (Contract § 5.03(B), (E).) Neither the existence of excess costs, nor Plaintiff's anecdotal evidence about problems with coverage and delays in interpretations (Opp'n at 4), make it more likely than not that the contract is invalid.

As such, and based on the arguments and record currently before the Court, NLMM has shown it is more likely than not to obtain a judgment against AHSC as to the pass-through costs.

### 3. Purpose of Attachment

For the Court to issue a writ of attachment, Plaintiff must show that the attachment is not sought for a purpose other than recovery of the claim upon which the attachment is based. Cal. Civ. Pro. Code § 484.090(a). The writ of attachment is designed to "secure and insure the payment of any judgment that may be recovered in the successful prosecution of an action in order that the ends of successful litigation are not fruitlessly pursued or frustrated." *Loeb*, 166 Cal. App. 3d at 1118. There is no basis in the record to find that NLMM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-cv-03643-MCS-BFM | **Date:** | September 5, 2025 |
| **Title:** | *Northern Light Medical Management, LLC v. American Healthcare Systems Corp., Inc. et al* | | |

================================================================

has any other purpose than securing payment in the event of a judgment in its favor.

### 4. Amount to be Secured

The amount to be secured is greater than zero, satisfying the fourth requirement.

### III. Conclusion

Accordingly, the Court finds that requirements of the California Code of Civil Procedure have been met as to the pass-through costs described above, and Plaintiff's Application for a right to attach order against Defendant is **granted** in the amount of $412,081.29. Plaintiff must show proof of an undertaking in the amount of $10,000.00 before the writ of attachment will issue. The Court reiterates that its determination is based solely on the arguments made in the briefing and at the hearing, and on the factual record currently before the Court, and that this Order has "no effect on the determination of any issues in the action." Cal. Civ. Proc. Code § 484.100; *Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*, 18 Cal. App. 5th 881, 889 (2017) (whether a plaintiff's claims are "actually valid" is determined in a subsequent proceeding and not affected by the court's order on the applications for prejudgment attachment).

**IT IS SO ORDERED.**

cc: Counsel of Record

Initials of Preparer: ch