Varand Gourjian, Esq. (SBN 205344)
Email: varand@gourjianlaw.com;
Armen F. Papazian, Esq. (SBN 209989), of counsel
Emai: armen@papazianlawfirm.com
Tara Karamians, Esq. (SBN 331329)
Email: tara@gourjianlaw.com;
Alec Galustian, Esq. (SBN 360045)
Email: Alec@gourjianlaw.com
**GOURJIAN LAW GROUP, P.C.**
101 N. Brand Blvd., Suite 1220
Glendale, California 91203
Telephone: (818) 956-0100

Attorneys for Defendants: AMERICAN HEALTHCARE SYSTEMS CORP., INC. and WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC., et al.<br><br>Defendants. | CASE NO. 2:25-cv-3643<br><br>*Assigned for all purposes to Hon. Mark C. Scarsi*<br><br>Complaint Filed: April 24, 2025<br><br>**AMERICAN HEALTHCARE SYSTEMS CORP., INC. AND WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC'S THIRD AMENDED ANSWER AND COUNTERCLAIM**<br><br>Trial Date: Not Set |

/ / /

/ / /

/ / /

/ / /

---

1

THIRD AMENDED ANSWER AND COUNTERCLAIM

Defendants AMERICAN HEALTHCARE SYSTEMS CORP., INC. and WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC (hereinafter "AHS" and "Vista" or together as "Defendants"), by and through their undersigned counsel, hereby answer Plaintiff's Complaint (the "Complaint") filed in the above-captioned case by Plaintiff NORTHERN LIGHT MEDICAL MANAGEMENT, LLC ("Plaintiff"). Defendants deny each and every allegation set forth in the Complaint except for those allegations expressly and specifically admitted below. Defendants have utilized the headings contained in Plaintiff's Complaint. To the extent Plaintiff's headings set forth legal or factual allegations that requires Defendants to answer, Plaintiff denies the allegations set forth therein.

## COMPLAINT

## THE PARTIES

1. Defendants have no information to admit or deny.
2. Admit.
3. Deny.
4. Deny.
5. Deny.
6. Deny.
7. Deny.

## JURISDICTION AND VENUE

8. Deny.
9. Deny.
10. Deny.

## GENERAL ALLEGATIONS

11. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.

12. Deny.
13. Deny.
14. Admit.
15. Deny as AHS denies that it voluntarily entered into the contract given that it relied on NLMM's fraudulent representations.
16. Admit.
17. Admit.
18. Defendants state that the document attached as Exhibit A of Plaintiff's Complaint speaks for itself.
19. Document speaks for itself.
20. Document speaks for itself.
21. Admit only so much as the document speaks for itself. Defendants state that Plaintiff knowingly reduced expected amounts on their pro forma in order to have Defendants essentially capitalize their company for them.
22. Deny.
23. Document speaks for itself.
24. Admit.
25. Deny.
26. Deny.
27. Deny.
28. Deny.
29. Deny.
30. Deny.
31. Admit only that NLMM agreed to pay these fees and it was not a pass through cost.
32. Admit only that NLMM paid the money and issued invoice. Defendants do

THIRD AMENDED ANSWER AND COUNTERCLAIM

not admit the validity or enforceability of the invoice.

33. Deny.

34. Deny.

35. Deny.

36. Deny.

37. Deny.

38. Deny.

39. Deny.

40. Deny.

41. Deny.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

42. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.

43. Deny.

44. Admit.

45. Deny in that NLMM was not entitled to compensation based on their fraudulent representations to induce AHS to sign contract and their material breach and failure to perform duties under the Contract.

46. Document speaks for itself.

47. Document speaks for itself.

48. Deny.

49. Deny.

50. Deny.

51. Deny.

52. Deny.

53. Deny in as far as it is not considered a pass through cost.
54. Admit.
55. Deny.
56. Deny. Defendants on multiple occasions notified NLMM of their failure to perform under the Contract.
57. Deny.
58. Deny.
59. Deny.
60. Deny.

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing

61. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.
62. Deny.
63. Deny.
64. Deny.
65. Deny. NLMM's performance was inconsistent, inadequate and unprofessional as documented through multiple communications between Vista and NLMM.
    a. Deny.
    b. Deny.
    c. Deny.
    d. Deny.
    e. Deny.
66. Deny.
67. Deny.

## THIRD CLAIM FOR RELIEF

### Common Count: Goods and Services Rendered

68. Deny.
69. Deny.
70. Deny.
71. Deny.
72. Deny.
73. Deny.

## FOURTH CLAIM FOR RELIEF

### Accounting

74. Defendants restate their responses from all of the foregoing paragraphs as though fully set forth herein.
75. Deny.
76. Deny.
77. Deny.
78. Deny.
79. Deny.
80. Deny.
81. Deny.
82. Deny.
83. Deny.

## AFFIRMATIVE DEFENSES

84. Failure of Consideration: The consideration promised by NLMM was not provided or was inadequate.
85. Estoppel: NLMM, through their actions, representations, or silence, induced AHS and Vista to believe certain facts and act upon them to their

detriment.

86. Fraud: NLMM made false representations or concealment of material facts with the intent to deceive, which results in damage to AHS and Vista.

87. Unclean Hands: NLMM acted unethically or in bad faith concerning the subject matter of the contract.

## AMERICAN HEALTHCARE SYSTEMS CORP., INC.'S THIRD AMENDED COUNTERCLAIM

88. Defendant and Counterclaimant, AHS, provides management and support services to various hospitals nationwide in order to revitalize and strengthen their critical care for their patient communities.

89. Defendant Vista owns and operates a hospital in Waukegan, Illinois, with the majority of its patient population receiving care through Medicaid and federal funding.

90. In or around the summer of 2024, AHS was in need of radiology services for their hospital, Randolph Health, in North Carolina.

91. At the time, there was a shortage in radiology services and AHS was having a hard time finding critical services needed for continuation of patient care.

92. In a zoom meeting on or around July 11, 2024, NLMM, through Patrick Santore, Jr., Chief Executive Officer of NLMM, presented their company to AHS, including Faisal Gill, AHS's Chief Legal Officer, as a well experienced company with the ability to immediately provided highly qualified physicians for continuous and highly competent radiology coverage for their hospitals.

93. Both AHS and NLMM, through their respective agents in this conversation, understood that the radiology services proposed by NLMM included not

only reading the charts given to NLMM, but also NLMM providing complete and accurate reports for further patient care and safety.

94. During this meeting, NLMM, through Santore, stated to AHS that they had doctors already recruited and ready to immediately provide their services for 24/7 coverage to AHS.

95. In the same conversation, NLMM, through Santore, further stated that they had the ability to help AHS recruit for needed services locally and to provide medical director services for their radiology department.

96. NLMM, through Santore, made the representation that they had the ability to immediately provide continuous radiology coverage with doctors already recruited by NLMM.

97. In the same conversation, NLMM, through Santore, stated that they had doctors recruited, vetted, and equipment ready in order to provide services immediately after signing a contract.

98.

99. Santore, on behalf of NLMM, made these statements with the intent to induce AHS into signing an Agreement with NLMM for the radiology services.

100. Specifically, he made the statement that they would immediately provide continuous 24/7 coverage without any intention of actually performing this promise.

101. This is clear by the fact that from the beginning, NLMM was unable to provide 24/7 coverage, and doctors who were on NLMM's calendar to AHS as working were not available and actually able to work for AHS at that time.

102. It is further clear as AHS, since the outset of NLMM's services, would

consistently call NLMM because they did not have coverage and NLMM would send in temporary doctors, who would not complete their work and were later unreachable to finish their work.

103. They further made the statements in the pro forma invoices for the hospitals, knowing these statements to be false as they were woefully inadequate and clearly not expected costs from an experienced company.

104. AHS relied on NLMM's false statements to their detriment by signing the agreement and paying NLMM money to provide services.

105. On or about September 18, 2024, NLLM and AHS entered into that certain Master Service Agreement for Hospital-Based Radiology (the "MSA").

106. Pursuant to section 2.01 of the MSA, NLLM was to perform Services (as defined in the MSA), including, but not limited to those listed in section 2.01(I): "Providing and maintaining a sufficient number of Physicians on Healthcare Organization's Medical Staff with appropriate clinical privileges to provide the Services described in paragraphs A through H of this Section 2.01 twenty-four (24) hours per day, seven (7) days a week, fifty-two (52) weeks per yea subject, to any special requirements set forth in applicable Facility Addendum[.]"

107. Pursuant to the Addendum to the MSA, NLLM was required to provide "Two and One-Half (2.5) full-time Physicians", constituting one physician on-site, one physician remote working Monday to Friday from 12 PM to 8 PM, one physician remote working Monday to Friday from 1 PM to 5 PM (this is a ½ FTE).

108. Notwithstanding AHS' compliance and fulfillment of all their obligations under the MSA, immediately after signing the MSA and beginning their Services, NLMM provided inaccurate, incomplete, and unprofessional

services to AHS.

109. Despite Santore's representations, NLMM had issues providing 24/7 coverage to AHS from the outset of their services.

110. On numerous occasions, multiple staff from Vista notified NLMM about their incorrect reports, requesting addendums which would take an unreasonable amount of time to receive.

111. NLMM consistently had trouble fulfilling their duty to provide 2.5 FTE physicians for radiology services and had to provide numerous amount of doctors who would fill in but would not complete their work and would become unreachable in order to follow up on getting an accurate and complete report.

112. NLMM continuously was untimely in the provision of their Services, failing to meet the expected turnaround time for numerous cases.

113. NLMM's unprofessional and untimely work created risk to patient safety, often times leading to complaints from physicians and patients who did not receive their radiology reports in a timely manner.

114. AHS did not excuse NLLM's failure to perform said Services, as AHS communicated notice to NLMM of their failure to provide adequate services under the agreement through various methods, including phone and email communication to Brian Schenker, Vista's point of contact for NLMM, and weekly meetings held with leadership of both entities.

115. During each of these communications, NLMM admitted that they needed to improve their services, but never actually took any efforts to improve.

116. Despite numerous notices of their clear breach of the agreement, NLMM never cured any defects in their performance, or lack thereof.

117. Further, NLMM agreed under the contract to provide a Medical Director

for Radiology Services.

118. At both Randolph Health and Vista, NLMM never provided either facility with such Services despite the extensive amount of duties they agreed to undertake under the agreement.

119. As such, NLMM breached the Master Services Agreement numerous times and caused AHS significant damages, in an amount to be determined at trial.

## FIRST CLAIM FOR RELIEF

### Breach of Written Contract

### (*Against Northern Light Medical Management, LLC*)

120. Counterclaimant AHS re-alleges and incorporates by this reference paragraphs 88 through 119 of this Counterclaim as though fully set forth herein.

121. On or around the summer of 2024, in an effort to induce AHS into entering a Master Services Agreement with NLMM, NLMM knowingly made multiple promises to AHS regarding their experience and ability to provide adequate radiology services to AHS.

122. Specifically, during the conversation between Patrick Santore, Jr., CEO of NLMM, and Faisal Gill, Chief Legal Officer of AHS, on or around July 11, 2024, Santore stated that NLMM could immediately provide AHS with 24/7 radiology coverage with competent doctors already vetted and recruited by NLMM.

123. Santore further stated that NLMM would be able to immediately provide Medical Director of Radiology Services to AHS.

124. In reliance of these statements, AHS and NLMM entered into that certain Medical Services Agreement for Hospital-Based Radiology executed on or

about September 18, 2024 and as modified in writing by that certain Initial Facility Addendum dated September 17, 2024, and the Facility Addendum: Vista Medical Center dated September 17, 2024, (collectively, the "MSA").

125. Despite AHS's fulfillment of its obligations under the MSA, NLMM was unable to adequately provide Services to AHS pursuant to Section 2.01 of the MSA..

126. Specifically, NLLM failed to provide and maintain a sufficient number of Physicians with appropriate clinical privileges pursuant to section 2.01(I) of the MSA.

127. On numerous occasions, multiple staff from Vista notified NLMM about their incorrect reports, requesting addendums which would take an unreasonable amount of time to receive.

128. NLMM consistently had trouble fulfilling their duty to provide 2.5 FTE physicians for radiology services and had to provide a numerous amount of doctors who would fill in but would not complete their work and would become unreachable in order to follow up on getting an accurate and complete report.

129. NLMM was also continuously failing to meet the expected turnaround time for numerous cases.

130. NLMM's obligations under the MSA and accompanying addendums was not excused or waived.

131. NLMM's unprofessional and untimely work created risk to patient safety, often times leading to complaints from physicians and patients who did not receive their radiology reports in a timely manner.

132. As a result of this breach, AHS and Vista suffered significant damages, in an amount to be determined at trial, but no less than $200,000.00.

## SECOND CLAIM FOR RELIEF

## Breach of the Implied Covenant of Good Faith and Fair Dealing

(*Against Northern Light Medical Management, LLC*)

133. Counterclaimant AHS re-alleges and incorporates by this reference paragraphs 88 through 132 of this Counterclaim as though fully set forth herein.

134. The MSA constitutes a valid, binding, and enforceable contract between AHS and NLMM.

135. Implied within each of the MSA is a covenant of good faith and fair dealing, requiring that neither party engage in conduct that unfairly frustrates, interferes with, or deprives the other of the benefits of the agreement.

136. At all times relevant hereto, AHS performed all, or substantially all, of its obligations under the MSA.

137. Despite AHS' performance under the MSA, NLMM frustrated AHS through its unreasonable and bad faith conduct in its refusal to properly staff the positions required by the MSA, while it contended that it was doing so. Said contentions were made without any basis, and in an effort to force AHS to pay its improper invoices.

138. NLMM's conduct violated the implied covenant of good faith and fair dealing by depriving AHS of the full benefits it reasonably anticipated under these contracts. Indeed, NLMM's actions were objectively unreasonable and inconsistent with AHS' justified expectations.

139. As a direct, foreseeable, and legal result of the NLMM's breach of the covenant of good faith and fair dealing, AHS suffered substantial damages, including consequential and incidental damages, in an amount to be determined at trial.

140. As a further direct, proximate and legal result of the conduct of NLMM, as set forth herein, AHS has been caused to expend substantial sums of money for attorney's fees, costs, and other litigation costs which are recoverable pursuant to applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant prays for judgment against Plaintiff/Counter defendant, as follows:

1. For general damages, according to proof at trial;
2. For special damages, according to proof at trial;
3. For compensatory damages, according to proof at trial;
4. For pre-judgment and post-judgment interest at the maximum legal rate;
5. For attorneys' fees and costs, as permitted by law; and
6. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant/Counterclaimant hereby demand a trial by jury on all issues and causes of action triable by a jury.

DATED: September 04, 2025

Respectfully submitted,
**GOURJIAN LAW GROUP, P.C.**

/s/ Tara Karamians
Tara Karamians, Esq.
*Attorneys for Defendants/ Counterclaimants*
**GOURJIAN LAW GROUP, P.C.**
101 N. Brand Blvd., Suite 1220
Glendale, California 91203
Telephone: (818) 956-0100
tara@gourjianlaw.com

# **CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA   )
                      )  ss.:
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My address is 101 N. Brand Blvd. Suite 1220, Glendale, CA 91203.

On September 8, 2025, I served the foregoing document(s) described as:

**AMERICAN HEALTHCARE SYSTEMS CORP., INC. AND WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC'S THIRD AMENDED ANSWER AND COUNTERCLAIM**

on the interested parties as follows:

Christopher Frost
Benjamin Kassis
David Tiraturyan
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, CA 90024
chris@frostllp.com
ben@frostllp.com
david1@frostllp.com
*Attorneys for Plaintiff*

☒ (OFFICE MAIL) I am readily familiar with my firm's or other business' practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence would be deposited with the United States Postal Service that same day. I placed true copies of the above-entitled document in envelopes addressed as shown above and sealed and placed them for collection and mailing on the date stated below, following ordinary business practices. (C.C.P. §1013a(3))

☐ (BY ELECTRONIC SERVICE) via e-mail transmission to counsel and/or party at the email address identified above.

☐ (BY CERTIFIED MAIL) I caused such envelope with postage thereon fully prepaid, via certified mail -- return receipt requested, to be placed in the United States mail at Glendale, California.

☐ (BY PERSONAL SERVICE) I caused such document to be personally served on all parties at _____.

Executed on September 8, 2025, at Glendale, California.

☒ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

-1-

PROOF OF SERVICE