CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
RACHEL DUBOFF (SBN 343844)
rduboff@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC., a Nevada corporation; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST, an Illinois limited liability company; DOES 1 through 50, inclusive,<br><br>　　　　　Defendants.<br><br>―――――――――――――――――<br><br>AND RELATED COUNTERCLAIM | Case No. 2:25-cv-03643-MCS-(BFMx)<br><br>*Assigned to: Hon. Mark C. Scarsi*<br><br>**NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT GOOD FAITH AND FAIR DEALING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>*Filed concurrently with Declaration of David Tiraturyan; [Proposed] Order*<br><br>Hearing Information:<br>Date:　　October 20, 2025<br>Time:　　9:00 a.m.<br>Crtrm.:　7C (7th Floor)<br><br>Action Filed:　April 24, 2025<br>Trial Date:　　July 28, 2026 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 20, 2025, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Mark C. Scarsi, located in the First Street Courthouse, 350 West 1st Street, Courtroom 7C, 7th Floor, Los Angeles, California 90012, Plaintiff and Counter-Defendant Northern Light Medical Management, LLC ("Plaintiff" or "NLMM") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Second Claim for Relief for breach of the implied covenant of good faith and fair dealing asserted in Defendant and Counterclaimant American Healthcare Systems Corp., Inc.'s ("AHS") Third Amended Counterclaim.

This Motion is made on the grounds that AHS's Second Claim for Relief for breach of the implied covenant of good faith and fair dealing fails to state a claim upon which relief can be granted because it is duplicative of and superfluous to AHS's First Claim for Relief for breach of written contract, as both claims are predicated on an identical alleged breach—*i.e.*, NLMM's purported failure to properly staff the radiology positions required under the Master Services Agreement for Hospital-Based Radiology. Under California law, where a claim for breach of the implied covenant is based on the same conduct as a claim for breach of an express term of a contract, the implied covenant claim should be dismissed as superfluous. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000) ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous."); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."); *Schertzer v. Bank of Am.*, NA, 109 F.4th 1200, 1213–14 (9th Cir. 2024). The Second Claim for Relief therefore fails as a matter of law and should be dismissed with prejudice.

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS COUNTERCLAIM FOR
BREACH OF THE IMPLIED COVENANT GOOD FAITH AND FAIR DEALING

Moreover, AHS's addition of the breach of the implied covenant of good faith and fair dealing claim exceeded the scope of the parties' stipulation for AHS to amend its counterclaim, which was limited to substituting a breach of contract claim for the previously asserted fraud claim, thus providing an additional ground for dismissal.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of David Tiraturyan, all pleadings, papers, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Pursuant to Local Rule 7-3 and Paragraph 9.c if this Court's Initial Standing Order for Civil Cases, counsel for the parties participated in a telephonic pre-filing conference on September 15, 2025, during which the substance of NLMM's Motion was discussed. Counsel engaged in a meaningful exchange regarding the grounds for dismissal of AHS's Second Claim for Relief. However, the parties were unable to resolve the issues informally, thereby necessitating this Motion.

DATED: September 22, 2025    FROST LLP


By: _____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
RACHEL DUBOFF
Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 2

III. LEGAL STANDARD ............................................................................... 4

IV. ARGUMENT............................................................................................ 5

    A.   AHS's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Superfluous to Its Breach of Contract Claim and Should Therefore Be Dismissed. ..................................................................... 5

    B.   AHS Cannot Salvage Its Implied Covenant Claim Through Alternative Theories ........................................................................................... 8

    C.   AHS's Pre-Contract Inducement Allegations Sound in Fraud and Cannot Rescue Its Implied Covenant Claim. ............................................... 11

    D.   NLMM Did Not Stipulate to AHS's Filing of a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing..................................... 12

    E.   The Court Should Dismiss the Implied Covenant Claim With Prejudice and Without Leave to Amend. ....................................................... 13

V.  CONCLUSION ...................................................................................... 14

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS COUNTERCLAIM FOR
BREACH OF THE IMPLIED COVENANT GOOD FAITH AND FAIR DEALING

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................4, 5, 8, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................4, 5, 8, 9

*Best Auto Repair, Inc. v. Travelers Cas. Ins. Co. of Am.*,
  616 F. Supp. 3d 1016 (C.D. Cal. 2022), *aff'd*, No. 22-55784, 2023
  WL 5567176 (9th Cir. Aug. 29, 2023) ...................................................4

*Burachek v. Chase Home Fin., LLC*,
  No. CIV. 2:12-1771 WBS, 2012 WL 3778970 (E.D. Cal. Aug. 31,
  2012) ...................................................................................................6

*R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*,
  631 F.3d 1117 (9th Cir. 2011) .............................................................14

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
  824 F.3d 1156 (9th Cir. 2016) ...............................................................4

*Daniels v. Specialized Loan Servicing, LLC*,
  No. 2:22-CV-06776-MCS-PD, 2025 WL 576588 (C.D. Cal. Feb.
  10, 2025) .............................................................................................7

*Daniels v. Specialized Loan Servicing, LLC*,
  No. 2:22-CV-06776-MCS-PD (C.D. Cal. Mar. 18, 2025), ECF No.
  174 .....................................................................................................7

*Diaz v. Fed. Express Corp.*,
  373 F. Supp. 2d 1034 (C.D. Cal. 2005) ...................................................6

*Doe v. Howe Mil. Sch.*,
  227 F.3d 981 (7th Cir. 2000) ...............................................................14

*Env't Furniture, Inc. v. Bina*,
  No. CV 09-7978 PSG JCX, 2010 WL 5060381 (C.D. Cal. Dec. 6,
  2010) (Gutierrez, J.) .............................................................................7

*Foman v. Davis*,
    371 U.S. 178 (1962) ...................................................................... 14

*Landucci v. State Farm Ins. Co.*,
    65 F. Supp. 3d 694 (N.D. Cal. 2014)........................................... 1, 5, 7

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ....................................................... 14

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    194 F.3d 980 (9th Cir. 1999) ....................................................... 14

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
    933 F.3d 1136 (9th Cir. 2019) ...................................................... 4

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ....................................................... 4

*Schertzer v. Bank of Am., NA*,
    109 F.4th 1200 (9th Cir. 2024) .................................................... 5

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g,* 275
    F.3d 1187 (9th Cir. 2001) ........................................................... 8

*Tyler v. Travelers Com. Ins. Co.*,
    499 F. Supp. 3d 693 (N.D. Cal. 2020).......................................... 6, 7

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................... 11

*Zepeda v. PayPal, Inc.*,
    777 F. Supp. 2d 1215 (N.D. Cal. 2011)......................................... 6

**California Cases**

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990).................................................. 5, 7, 8

*Digerati Holdings, LLC v. Young Money Ent., LLC*,
    194 Cal. App. 4th 873 (2011) .................................................. 9, 10

*Guz v. Bechtel Nat. Inc.*,
    24 Cal. 4th 317 (2000) ............................................................ 1, 5

*Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*,
    41 Cal. App. 5th 357 (2019) ...................................................................................... 8

**Federal Rules**

Fed. R. Civ. P. 9(b) ............................................................................................. 11, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 4, 12

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS COUNTERCLAIM FOR
BREACH OF THE IMPLIED COVENANT GOOD FAITH AND FAIR DEALING

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

After three rounds of pleading, American Healthcare Systems Corp., Inc. ("AHS") has abandoned its meritless fraud claim and now attempts to salvage its affirmative case by pairing a breach of contract claim with a duplicative claim for breach of the implied covenant of good faith and fair dealing. This tactical retreat confirms that AHS's grievances with Northern Light Medical Management, LLC ("NLMM") amount to alleged contractual performance issues that cannot support independent tort theories.

Nevertheless, AHS's Second Claim for Relief for breach of the implied covenant of good faith and fair dealing fails because it is entirely superfluous to its breach of contract claim. Both claims rest on identical factual allegations—*i.e.*, that NLMM allegedly failed to properly staff radiology positions as required by the Master Services Agreement for Hospital-Based Radiology (the "Agreement"). AHS does not identify any conduct by NLMM that frustrated the benefits of the Agreement beyond the express breaches already alleged. Instead, AHS simply repackages the same staffing complaints under a different legal theory, seeking duplicative recovery for a single alleged wrong.

California law is clear that where a claim for breach of the implied covenant merely echoes an express breach of contract claim without alleging distinct conduct that unfairly frustrates the contract's benefits, the implied covenant claim should be dismissed as redundant. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014); *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000). Thus, parties cannot multiply their theories of recovery by restating alleged contract breaches as violations of the implied covenant of good faith and fair dealing. This principle applies with particular force here, where AHS's pleading reveals that its implied covenant claim adds nothing beyond what is already captured in its breach of contract allegations.

Therefore, because AHS cannot maintain both a breach of contract claim and an implied covenant claim where both arise from identical conduct, the Court should dismiss AHS's superfluous implied covenant claim with prejudice.

## II.    FACTUAL BACKGROUND

NLMM is a Florida-based medical practice management company that specializes in providing comprehensive hospital-based radiology services to healthcare facilities nationwide. (*See* Compl. ¶¶ 12–13, ECF No. 1.) AHS is a healthcare management company that owns, operates, and manages hospitals and outpatient healthcare facilities in multiple states. (*See id.* ¶ 14; Third Am. Countercl. ¶ 88, ECF No. 38.)

AHS alleges that "[i]n or around the summer of 2024," it was experiencing difficulty finding radiology services for its North Carolina facility due to a "shortage" in the market. (Third Am. Countercl. ¶¶ 90–91.) According to AHS, during a Zoom meeting "on or around July 11, 2024," NLMM's Chief Executive Officer presented NLMM as capable of immediately providing qualified physicians for continuous radiology coverage. (*Id.* ¶¶ 92, 94–97.)

On September 18, 2024—over two months after the alleged Zoom meeting took place—the parties entered into the subject Master Services Agreement for Hospital-Based Radiology (the "Agreement"). (Third Am. Countercl. ¶ 105; *see* Compl. ¶ 15 & Ex. A (Agreement).) Under the Agreement, NLMM agreed to provide comprehensive radiology services at two AHS facilities: Vista Medical Center East ("Vista") in Waukegan, Illinois, and Randolph Health Hospital in Randolph, North Carolina. (Agreement at 27–30, § 1.03; Compl. ¶¶ 15–16; *see* Third Am. Countercl. ¶¶ 105–106.) Among other things, the Agreement required NLMM to "[p]rovid[e] and maintain[] a sufficient number of Physicians on [AHS]'s Medical Staff … to provide the Services… twenty-four (24) hours per day, seven (7) days a week, fifty-two (52) weeks per yea [*sic*] – subject to any specific requirements set forth in applicable Facility Addendum." (Third Am. Countercl. ¶ 106; Agreement § 2.01(I).)

The Agreement's Facility Addendum for Vista specified that NLMM would provide "Two and One-Half (2.5) full-time Physicians." (Third Am. Countercl. ¶ 107; Agreement at 29.)

In exchange, AHS agreed to pay NLMM monthly invoices for the first four months in the fixed amount of $183,533.08 per month for Vista, subject to later reconciliation through a semi-annual "True-Up" process. (Agreement at 29 & § 5.02.A; Compl. ¶¶ 18–20.) AHS also agreed to reimburse NLMM for certain pass-through costs exceeding anticipated operational allowances. (Agreement § 5.03; Compl. ¶¶ 21–23.)

AHS now alleges that following execution of the Agreement, it had service-related concerns with NLMM's performance. (Third Am. Countercl. ¶¶ 108–113.) Specifically, AHS claims NLMM had "issues providing 24/7 coverage" (*id.* ¶ 109), that staff "notified NLMM about their incorrect reports, requesting addendums" (*id.* ¶ 110), and that NLMM "consistently had trouble fulfilling their duty to provide 2.5 FTE physicians" (*id.* ¶ 111). AHS alleges it communicated these concerns to NLMM through "phone and email communication" and "weekly meetings." (*Id.* ¶ 114.)

However, AHS acknowledges that when coverage issues arose, NLMM "would send in temporary doctors." (*Id.* ¶ 102.) AHS also confirms that NLMM provided reports and, when requested, furnished addendums, though AHS characterizes the timing as taking "an unreasonable amount of time." (*Id.* ¶ 110.) According to AHS, during their communications, "NLMM admitted that they needed to improve their services," which contradicts its later allegation about NLMM's purported "refusal to properly staff the positions required by the [Agreement]." (*Id.* ¶¶ 115, 137.)

Based on these allegations, AHS now asserts two counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Both claims, however, are premised on NLMM's alleged failure to properly staff radiology positions as required by the Agreement. (*Id.* ¶¶ 119–140.)

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may challenge a pleading on the ground of its "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Best Auto Repair, Inc. v. Travelers Cas. Ins. Co. of Am.*, 616 F. Supp. 3d 1016, 1019 (C.D. Cal. 2022), *aff'd*, No. 22-55784, 2023 WL 5567176 (9th Cir. Aug. 29, 2023) (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)).

"A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts 'to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories.'" *Id.* (quoting *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016)). Although district courts deciding motions to dismiss brought pursuant to Rule 12(b)(6) "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party[,]… conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019) (citations and quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To do so, a pleading must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," and must contain more than a mere "formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555, 545. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the

4

complaint's allegations are true." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. AHS's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Superfluous to Its Breach of Contract Claim and Should Therefore Be Dismissed.

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made.*" *Guz*, 24 Cal. 4th at 349 (italics in original). In other words, "the covenant prevents a party from acting in bad faith to frustrate the contract's *actual* benefits." *Id.* at 353 n.18 (italics in original).

However, California law is equally clear that "where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Id.* at 327; *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."); *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1213 (9th Cir. 2024) (affirming summary judgment of implied covenant claim where rendered superfluous by breach of contract claim); *Landucci*, 65 F. Supp. 3d at 716 ("[A] claim alleging breach of the implied covenant of good faith and fair dealing cannot be based on the same breach as the contract claim, or else it will be dismissed." (internal quotation marks omitted)).

Here, AHS's Second Claim for Relief is a textbook example of an impermissibly duplicative claim for breach of the implied covenant. A comparison of AHS's two claims reveals they are functionally identical in all material respects. In

FROST

its breach of contract claim, AHS alleges that NLMM "failed to provide and maintain a sufficient number of Physicians with appropriate clinical privileges pursuant to section 2.01(I) of the MSA" (Third Am. Countercl. ¶ 126), had "trouble fulfilling their duty to provide 2.5 FTE physicians" (*id.* ¶ 128), and failed to meet "expected turnaround time for numerous cases" (*id.* ¶ 129). On the other hand, in its implied covenant claim, AHS alleges that NLMM "frustrated AHS through its unreasonable and bad faith conduct ***in its refusal to properly staff the positions required by the [Agreement]***." (*Id.* ¶ 137) (emphasis added).

Both claims thus rest on the same core allegation of NLMM's alleged failure to adequately staff radiology positions as required by the Agreement, and therefore, the implied covenant claim should be dismissed. *See, e.g.*, *Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1066 (C.D. Cal. 2005) (dismissing breach of implied covenant claim where it was duplicative of breach of contract claim); *Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701–02 (N.D. Cal. 2020) ("[B]ecause Plaintiff's claim for breach of contract and her claim for breach of the covenant of good faith and fair dealing are based on the same allegation…, the bad faith claim is duplicative of Plaintiff's contract claim and may be dismissed."); *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011) (finding breach of implied covenant claim superfluous to breach of contract claim).

AHS attempts to distinguish its implied covenant claim by adding conclusory language about "unreasonable and bad faith conduct" and alleging that NLMM's actions were done "in an effort to force AHS to pay its improper invoices." (Third Am. Countercl. ¶ 137.) But, as explained further below, these bare assertions cannot transform a breach of contract claim into a viable implied covenant claim. *See Burachek v. Chase Home Fin., LLC*, No. CIV. 2:12-1771 WBS, 2012 WL 3778970, at *4 (E.D. Cal. Aug. 31, 2012) (granting motion to dismiss as to breach of implied covenant of good faith and fair dealing claim where "conclusory allegations [] simply d[id] not meet federal pleading standards."). The dispositive question is whether the

challenged conduct goes *beyond* the alleged breach of express terms. Here, it does not.[1]

This is not a case where the implied covenant claim targets "conscious and deliberate act[s]" that, while not breaching an express term, "unfairly frustrate[] the agreed common purposes and disappoint[] the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau*, 222 Cal. App. 3d at 1395. Rather, AHS ties its Second Claim for Relief to NLMM's "refusal to properly staff the positions required by the MSA" (Third Am. Countercl. ¶ 137), which is the very same alleged conduct underlying its breach of contract claim (*see id.* ¶ 126). To the extent AHS alleges that NLMM failed to staff radiology positions while "contend[ing] that it was doing so," or that NLMM's alleged "refusal to properly staff the positions" somehow "frustrated AHS," those formulations are rhetorical flourishes that can be disregarded absent sufficient facts that demonstrate conduct independent of an express contractual duty. *See Env't Furniture, Inc. v. Bina*, No. CV 09-7978 PSG JCX, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010)

---

[1] This Court recently addressed an analogous situation involving duplicative breach of contract and implied covenant claims. In *Daniels v. Specialized Loan Servicing, LLC*, No. 2:22-CV-06776-MCS-PD, 2025 WL 576588, at *7 (C.D. Cal. Feb. 10, 2025), the Court observed that "[p]laintiffs typically cannot prevail on claims for breach of the covenant of good faith and fair dealing when they are 'based on the same allegations' as the breach of contract claim." (citing *Tyler*, 499 F. Supp. 3d at 701–02 and *Landucci*, 65 F. Supp. 3d at 716). Although the Court ultimately ordered supplemental briefing to address whether the plaintiff had presented sufficient evidence of bad faith conduct distinct from the breach allegations, the Court expressed skepticism and noted that the plaintiff "primarily recites evidence of [defendant's] actions that are relevant to the issue of breach of contract but do not suggest any bad faith." *Id.* Following supplemental briefing, the Court ultimately granted summary judgment on the plaintiff's implied covenant claim. *See Daniels*, No. 2:22-CV-06776-MCS-PD (C.D. Cal. Mar. 18, 2025), ECF No. 174. The present case presents an even clearer example of impermissible duplication, as AHS's implied covenant claim is premised on the same alleged conduct forming the basis of its breach of contract claim, without any factual allegations demonstrating NLMM's bad faith conduct beyond the alleged breach itself.

7

(Gutierrez, J.) (dismissing implied covenant counterclaim with prejudice and explaining that "[t]he point of *Careau* is not that inserting certain language into a complaint will make an implied covenant claim suddenly viable, but that a Plaintiff must allege *facts* establishing the bad faith breach of the implied covenant." (italics in original)). AHS alleges no such facts here. Its implied covenant claim is merely a repackaging of its breach of contract claim, dressed in conclusory language about "frustration" and "bad faith," without identifying any conduct that deprived AHS of benefits beyond those secured by the Agreement's express staffing provisions.[2]

**B.** **AHS Cannot Salvage Its Implied Covenant Claim Through Alternative Theories**

Even if AHS attempts to recharacterize its implied covenant claim in opposition to this Motion, any such effort would fail for multiple independent reasons.

First, AHS's allegation that NLMM acted "in an effort to force AHS to pay [NLMM's] improper invoices" (Third Am. Countercl. ¶ 137) does not create a distinct claim because this claimed motive for allegedly breaching the staffing requirements

---

[2] Likewise, AHS's allegation that "[a]t all times relevant hereto, AHS performed all, or substantially all, of its obligations under the [Agreement]" (Third Am. Countercl. ¶ 136) is a bare legal conclusion that is not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("The court need not… accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."). It is also facially inconsistent with the pleadings because NLMM's Complaint alleges AHS failed to pay at least $940,358.28 in contractually agreed-upon invoices and made only a single partial payment of $75,000, with no pleaded excuse or contractual basis to withhold payment. (*See* Compl., ¶¶ 25–41.) When a party owes nearly a million dollars under a contract—exclusive of any additional amounts due through reconciliation—and has paid less than 8% of that amount, it cannot plausibly claim to have performed "all, or substantially all" of its obligations. *See Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*, 41 Cal. App. 5th 357, 364 (2019) (substantial performance requires "that there be no wilful departure from the terms of the contract, and that the defects be such as may be easily remedied or compensated, so that the promisee may get practically what the contract calls for." (citations omitted)).

does not identify any conduct that frustrated contract benefits beyond the breach itself.[3]

Second, AHS cannot manufacture a distinct implied covenant claim by alleging that NLMM's conduct was "objectively unreasonable and inconsistent with AHS' justified expectations." (Third Am. Countercl. ¶ 138.) These formulaic recitations and conclusory assertions merely restate the elements of an implied covenant claim without identifying any conduct beyond the alleged breach of express staffing obligations. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…" (citations omitted)); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (cleaned up)).

*Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal. App. 4th 873 (2011) is instructive. There, the Court of Appeal examined whether breach of contract and implied covenant claims had different gravamens despite both incorporating

---

[3] In fact, AHS's characterization of the invoices as "improper" is nonsensical. The subject invoices were not only proper but were specifically mandated by Section 5.02.A.3 of the Agreement, which required NLMM to invoice AHS monthly based on interpretation counts, with the first four invoices "fixed to the historic average counts, as identified in the Proforma for such a Facility." For instance, the Vista Facility Addendum incorporated into the Agreement set the first four invoices at a fixed amount of $183,533.08 per month, based on a historical average of 5,798.83 interpretations. (Agreement at 29.) These amounts were specifically agreed-upon figures in the Agreement, subject to later reconciliation through the True-Up process described in Section 5.02.A.6. AHS cannot now claim that invoices issued pursuant to the express terms of the Agreement it negotiated and signed were somehow "improper." To the extent AHS believed NLMM was not performing adequate services to justify these invoices, its remedy was to invoke the cure and termination provisions in Section 9.02 of the Agreement, which required AHS to provide written notice of a breach and allow NLMM thirty days to cure, or to seek reconciliation through the True-Up process (*see* Agreement, §§ 9.02.B, 5.02.A.6)—not to refuse payment of validly issued invoices and then claim NLMM's conduct somehow constituted a bad faith breach of the implied covenant of good faith and fair dealing.

similar factual allegations, ultimately finding that the claims *did* have distinct gravamens because they targeted fundamentally different conduct. Specifically, the breach of contract claim alleged defendants' failure to comply with express contractual obligations by failing to appear for interviews, provide first-priority access, and furnish video and photographic materials. *Id.* at 884–85. By contrast, the implied covenant claim alleged entirely separate conduct concerning defendants' "efforts to undermine or prevent the potential sale and distribution of the film… by informing distributors that the film was unauthorized and could be subject to future litigation and by seeking an injunction." *Id.* at 885. These were qualitatively different actions and omissions, as one set involved passive non-compliance with express duties while the other involved active external interference with the contract's benefits through communications to third parties and litigation conduct *not* addressed by the contract's express terms. *Id.* at 885–86.

Here, no such distinction exists. When examined holistically, AHS's implied covenant claim alleges only that NLMM "refus[ed] to properly staff the positions required by the [Agreement], while it contended that it was doing so" and that these "contentions were made without any basis, and in an effort to force AHS to pay its improper invoices." (Third Am. Countercl. ¶ 137.) This is simply an alleged breach of express staffing requirements, with the core conduct concerning NLMM's alleged failure to provide adequate staffing as required by the Agreement remaining the same. In other words, the allegation that NLMM claimed to be meeting its staffing obligations does not transform this into the type of distinct conduct that allowed separate claims to proceed in *Digerati*. There, the defendants were alleged to have engaged in affirmative acts wholly outside their contractual obligations to frustrate the plaintiff's ability to distribute its film. Here, AHS alleges only that NLMM failed to meet its express staffing duties while "contend[ing] that it was doing so"—conduct that, if proven, would establish a mere knowing breach of contract. Because both

claims challenge NLMM's alleged failure to staff positions as contractually required, they share the same gravamen and are therefore duplicative of one another.

### C. AHS's Pre-Contract Inducement Allegations Sound in Fraud and Cannot Rescue Its Implied Covenant Claim.

"In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103–04.

Here, to the extent AHS gestures at pre-contract statements from July 2024 (Third Am. Compl. ¶¶ 92–103, 121–123), those averments are inducement allegations that "sound in fraud" under *Vess* and therefore must satisfy the heightened pleading standard of Rule 9(b). AHS abandoned any standalone fraud claim in its Third Amended Counterclaim; thus, it cannot repurpose fraud-sounding rhetoric to expand a contract-performance theory policed by the implied covenant.

In any event, AHS's inducement averments fall well short of Rule 9(b). They rely on conclusory assertions of falsity and intent (*e.g.*, "without any intention of actually performing," "knew these statements to be false") without the required "who, what, when, where, and how" identification or showing *why* the statements were false when made. *Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (citation omitted)). For instance, AHS alleges that "[i]n a zoom meeting on or around July 11, 2024," NLMM's CEO said that NLMM could immediately provide 24/7 coverage, but AHS pleads no particularized facts explaining how NLMM knew that statement was false *at the time* beyond retrospective allegations of inadequate performance.

(Third Am. Countercl. ¶¶ 92, 94, 96–101.) Further, the implied covenant claim's allegation that NLMM's "contentions were made without any basis, and in an effort to force AHS to pay its improper invoices" is pure *ipse dixit* and certainly not a particularized averment of fraud.

Because these remnants of AHS's discarded fraud theory are not pled with Rule 9(b) particularity and concern pre-contract inducement (not post-contract performance), they cannot supply the distinct factual basis necessary to sustain an implied covenant claim. The implied covenant governs performance of the Agreement—not pre-contract statements—and any fraud-sounding averments should be disregarded in evaluating AHS's Second Claim for Relief.

### D. <u>NLMM Did Not Stipulate to AHS's Filing of a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.</u>

AHS has also overstepped the bounds of the parties' agreement when it added an implied covenant claim to its Third Amended Counterclaim because the record demonstrates that NLMM's stipulation to AHS's Third Amended Counterclaim was expressly limited to the substitution of a breach of contract claim for the previously asserted fraud claim. During the parties' August 15, 2025 meet-and-confer regarding AHS's Second Amended Counterclaim, counsel for NLMM stated that if AHS substituted the fraud claim for a breach of contract claim, NLMM would likely file an answer as opposed to a motion to dismiss. (Tiraturyan Decl. ¶ 3.) This representation was based on NLMM's position that a properly pleaded breach of contract claim would not be subject to dismissal under Rule 12(b)(6).

Consistent with this understanding, on August 29, 2025, AHS's counsel confirmed via email that AHS would be "amending the counter claim to substitute in a breach of contract claim for the promissory fraud claim." (Tiraturyan Decl. ¶ 5, Ex. A.) Further, the parties' Joint Stipulation for AHS to amend its Counterclaim, filed on September 4, 2025, similarly stated that "following review of the case, AHS's counsel confirmed that AHS intends to amend its counterclaim and file a Third

Amended Counterclaim to assert a claim for Breach of Contract in lieu of its previously asserted Fraud claim." (ECF No. 64 at 2:17–20.) Notably absent from either party's communications or the Joint Stipulation was any mention of adding a claim for breach of the implied covenant of good faith and fair dealing. Moreover, during the parties' September 15, 2025 pre-filing conference, NLMM's counsel stated that NLMM had not stipulated to the addition of any claim beyond the breach of contract claim. (Tiraturyan Decl. ¶ 14.)

Although NLMM did not oppose the filing of the Third Amended Counterclaim to avoid a further delay in these proceedings, this should not be misconstrued as NLMM's consent to the implied covenant claim. AHS's counsel provided the proposed Third Amended Counterclaim to NLMM's counsel on September 4, 2025—the day before NLMM's response to the Second Amended Counterclaim would have been due, and the same day the Joint Stipulation was filed. (Tiraturyan Decl. ¶¶ 6–10, Ex. A.) Given the timing constraints, NLMM agreed to the filing of the document; however, the Joint Stipulation expressly preserved NLMM's right to challenge any claims therein, stating that NLMM "does not concede, admit, or waive any objections to the sufficiency, validity, or accuracy of any allegations" and "expressly reserves all rights, defenses, and arguments, including but not limited to the right to bring motions challenging any and all claims." (ECF No. 64, at 2:26–3:3, 3:12–14; *see also* Order re: Joint Stipulation to Allow AHS to File Third Am. Countercl., ECF No. 65, ¶ 5.)

Accordingly, AHS's addition of an implied covenant claim that exceeded the scope of the parties' agreed-upon stipulation provides an independent ground for dismissal, separate from the claim's substantive failure as a matter of law for the reasons stated above.

**E.** **The Court Should Dismiss the Implied Covenant Claim With Prejudice and Without Leave to Amend.**

Courts "may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

13

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend.").

Should the Court grant this Motion, dismissal of the implied covenant claim should be with prejudice. AHS has already amended its counterclaim three times, most recently abandoning its fraud theory in favor of contract-based claims. The problem is not deficient pleading but the fundamental legal impossibility of maintaining an implied covenant claim based on conduct that would, if proven, violate an express contractual term. No amendment could cure this defect because AHS's grievance is inherently about NLMM's alleged failure to meet the Agreement's express staffing requirements, and AHS cannot identify any conduct by NLMM that frustrated contract benefits beyond those secured by the Agreement's express terms. Put simply, because the Agreement comprehensively addresses staffing requirements, there is no gap for the implied covenant to fill.

"[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark." *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1124 (9th Cir. 2011) (quoting *Doe v. Howe Mil. Sch.*, 227 F.3d 981, 990 (7th Cir. 2000)). Here, granting further leave to amend would result in a fifth iteration of AHS's counterclaim. Dismissal of the implied covenant claim should therefore be with prejudice.

## V.    CONCLUSION

For the foregoing reasons, NLMM respectfully requests that the Court grant the Motion and enter an order dismissing AHS's Second Claim for Relief for breach of the implied covenant of good faith and fair dealing with prejudice.

DATED: September 22, 2025          FROST LLP

By: _____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
RACHEL DUBOFF
Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Northern Light Medical Management, LLC certifies that this brief contains 4,872 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 22, 2025    FROST LLP

By: _____
DAVID TIRATURYAN
Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

16

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION TO DISMISS COUNTERCLAIM FOR
BREACH OF THE IMPLIED COVENANT GOOD FAITH AND FAIR DEALING

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically generate and send notice of this filing to all attorneys of record who have appeared in this case and who are registered users of the Court's CM/ECF system. Parties may access this filing through the Court's electronic filing system.

DATED: September 22, 2025     FROST LLP

By: _____
DAVID TIRATURYAN
Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC