CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
RACHEL DUBOFF (SBN 343844)
rduboff@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, a Wyoming limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC., a Nevada corporation; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST, an Illinois limited liability company; DOES 1 through 50, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. 2:25-cv-03643-MCS-(BFMx)<br><br>*Assigned to: Hon. Mark C. Scarsi*<br><br>**NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>Hearing Information:<br>Date:   October 20, 2025<br>Time:   9:00 a.m.<br>Crtrm.: 7C (7th Floor)<br><br>Action Filed:   April 24, 2025<br>Trial Date:   July 28, 2026 |

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. AHS's Opposition Relies on Allegations Absent from the Third Amended Counterclaim ................................................................................ 2

        1. The Court Should Disregard AHS's Extra-Pleading "Scheme" Rhetoric ................................................................................................ 2

        2. The Third Amended Counterclaim Alleges No Abuse of Contractual Discretion Under *Carma* .................................................. 4

        3. AHS's "Improper Invoice" Argument Contradicts the Agreement's Express Terms .................................................................. 5

    B. AHS's Conclusory Allegations Cannot Transform its Breach of Contract Allegations Into an Implied Covenant Claim ............................... 6

    C. Rule 15 Does Not Excuse AHS's Addition of a Claim NLMM Never Agreed To ............................................................................................... 8

III. CONCLUSION .................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aliafgerad v. Bates*,
    783 F. Supp. 3d 1218 (C.D. Cal. 2025) ................................................................. 3

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) ................................................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 8

*Barnes v. Campbell Soup Co.*,
    No. C 12-05185 JSW, 2013 WL 5530017 (N.D. Cal. July 25, 2013) ................... 6

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ................................................................................... 5

*Celador Int'l Ltd. v. Walt Disney Co.*,
    347 F. Supp. 2d 846 (C.D. Cal. 2004) ................................................................... 6

*Env't Furniture, Inc. v. Bina*,
    No. CV 09-7978 PSG JCX, 2010 WL 5060381 (C.D. Cal. Dec. 6, 2010) ........................................................................................................................ 7

*Pineda v. Nissan N. Am., Inc.*,
    No. CV 22-239-DMG (JCX), 2022 WL 2920416 (C.D. Cal. July 25, 2022) ........................................................................................................................ 2

*Schaffer Fam. Invs., LLC v. Sonnier*,
    120 F. Supp. 3d 1028 (C.D. Cal. 2015) ................................................................. 3

*Schertzer v. Bank of Am., NA*,
    109 F.4th 1200 (9th Cir. 2024) ............................................................................... 6

*Schneider v. California Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ............................................................................... 2

*Soundgarden v. UMG Recordings, Inc.*,
    No. LACV1905449JAKJPRX, 2020 WL 1815855 (C.D. Cal. Apr. 6, 2020) ....................................................................................................................... 7

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................. 2

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .............................................................................. 4

**California Cases**

*Bionghi v. Metro. Water Dist. of So. California*,
   70 Cal. App. 4th 1358 (1999) ............................................................................... 6

*Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*,
   2 Cal. 4th 342 (1992) .................................................................................. 4, 5, 6

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................... 3, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 2, 5

Fed. R. Civ. P. 15 .................................................................................................. 8

## I. INTRODUCTION

AHS's[1] Opposition tries to salvage its duplicative claim for breach of the implied covenant of good faith and fair dealing by recharacterizing the same alleged staffing deficiencies as a "bad-faith scheme of feigned compliance." But this attempt fails for the simple reason that the Opposition relies on allegations that either do not appear in the Third Amended Counterclaim or are merely conclusory restatements of the breach of contract claim supplemented with additional rhetoric.

Here, the question for the Court is narrow: whether AHS may preserve an implied covenant claim that rises and falls on the same alleged staffing shortfalls as its breach of contract claim.

First, Rule 12(b)(6) confines the Court's analysis to the four corners of the Third Amended Counterclaim, not the post-hoc embellishments AHS tries to shoehorn into its Opposition. Second, even taken as pled, the implied covenant claim is duplicative because it challenges conduct the breach of contract claim already addresses, and the implied covenant claim identifies no independently actionable conduct, bad faith, or abuse of contractual discretion beyond its conclusory allegations. Third, AHS's "improper invoices" refrain cannot manufacture bad faith where the Agreement required fixed initial invoices and provided an avenue for reconciliation and a notice-and-cure mechanism to address the purported service deficiencies AHS now alleges.

Finally, although AHS argues the Court authorized its filing of the Third Amended Counterclaim, NLMM's stipulation was based on AHS's representation that it would substitute its fraud claim for breach of contract, not add a new implied covenant claim. As such, NLMM faced a Hobson's choice: accept the exceeded scope or delay proceedings further, risk blowing up the stipulation entirely, and be forced to

---

[1] Counterclaimant American Healthcare Systems Corp., Inc. is referred to herein as "AHS" and Counter-Defendant Northern Light Medical Management, LLC is referred to as "NLMM."

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

move against the Second Amended Counterclaim on one day's notice after relying on AHS's representations.

At bottom, AHS's implied covenant claim is a repackaged breach of contract claim that alleges no facts sufficient to state an independent basis for relief. Accordingly, the Court should dismiss the claim with prejudice.

## II. ARGUMENT

### A. AHS's Opposition Relies on Allegations Absent from the Third Amended Counterclaim.

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also Pineda v. Nissan N. Am., Inc.*, No. CV 22-239-DMG (JCX), 2022 WL 2920416, at *2 (C.D. Cal. July 25, 2022) ("Plaintiffs have not pled this fact in their Complaint and may not amend their pleading through a brief filed in opposition to a motion to dismiss."); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").

#### 1. The Court Should Disregard AHS's Extra-Pleading "Scheme" Rhetoric.

The Court should evaluate the sufficiency of AHS's implied covenant claim based on the allegations *actually pleaded*, not the embellished narrative AHS now attempts to construct through briefing.

AHS's Opposition makes sweeping assertions about NLMM's purported bad faith. It claims NLMM "deliberately misrepresented that it was meeting [its] obligations while knowing it was not" (Opp'n at 4:27–5:1) and engaged in "dishonest, misleading and bad faith tactics" (*id.* at 5:17–18). The Opposition characterizes NLMM's conduct as a "conscious and calculated effort to feign compliance" and a "bad-faith scheme." (Opp'n at 2:17–18, 5:5–6.) These are serious allegations of

intentional deception, yet the Third Amended Counterclaim contains no such factual allegations.[2]

The only allegation in the Third Amended Counterclaim that even attempts to address bad faith appears in paragraph 137, which states in entirely conclusory fashion that NLMM "frustrated AHS through its unreasonable and bad faith conduct in its refusal to properly staff the positions required by the Agreement, while it contended that it was doing so." This single sentence, devoid of any factual support, cannot sustain the elaborate narrative of deliberate misrepresentation and calculated deception that AHS now constructs in its Opposition. Critically, nowhere in the Third Amended Counterclaim does AHS allege that NLMM made specific misrepresentations about meeting its obligations. Nor does it identify any particular statements, communications, or assurances by NLMM that were false, nor does it allege when, where, or how NLMM supposedly "deliberately misrepresented" its performance or "misrepresent[ed] staffing levels while failing to provide the required 2.5 full-time equivalent physicians."[3] *See Schaffer Fam. Invs., LLC v. Sonnier*, 120 F.

---

[2] The recent decision in *Aliafgerad v. Bates*, 783 F. Supp. 3d 1218, 1226–27 (C.D. Cal. 2025) (Vera, J.), is directly on point. There, the court dismissed an implied covenant claim as duplicative because it "repeat[ed] the same allegations as [the plaintiff's] breach of contract claim," even though in opposition the plaintiff articulated a distinct bad-faith theory that, "***if pled in her complaint***, would support a plausible implied covenant claim." *Id.* at 1227 (emphasis in original). Like *Aligharad*, AHS now attempts to inject unpled theories and allegations through briefing rather than pleading.

[3] To the extent AHS attempts to rely on alleged misrepresentations, its Third Amended Counterclaim primarily references pre-contract statements from July 2024 (*see* Third Am. Countercl. ¶¶ 92–97), which concern inducement to enter the Agreement rather than performance under it. As discussed in NLMM's moving papers, these pre-contract allegations both fail to satisfy Rule 9(b)'s particularity requirements and are irrelevant to establishing a breach of the implied covenant, which governs the performance of existing contractual obligations, not pre-contract negotiations. (*See* Mot. to Dismiss, ECF No. 78, § IV.C.) Having abandoned its fraud

Supp. 3d 1028, 1037–38 (C.D. Cal. 2015) ("Where a claim alleges a course of fraudulent conduct as its basis, the claim is said to be "grounded in fraud" and must satisfy Federal Rule of Civil Procedure 9(b)." (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003))).

Rather, the allegations actually pleaded tell a different story entirely. For instance, AHS alleges that NLMM "provide[d] numerous amount of doctors who would fill in" (Third Am. Countercl. ¶ 111), which demonstrates NLMM's efforts to address staffing issues as opposed to any deliberate obstruction. AHS also alleges that NLMM "admitted that they needed to improve their services" (*id.* ¶ 115); however, AHS does not plead that NLMM "refus[ed] to cure deficiencies even after admitting the need to prove [*sic*]" (Opp'n at 5:24–26). These allegations, taken as true, establish at most that NLMM struggled to meet its contractual obligations and acknowledged these struggles. Nor does the Third Amended Counterclaim allege the other rhetoric AHS now deploys (*e.g.*, "feigned compliance," a "conscious and calculated effort" to deceive, "obstruction," or "frustrat[ing] AHS's ability to secure alternative providers."). Those phrases appear nowhere in the Third Amended Counterclaim; they exist only in the Opposition. As such, the Court should disregard them.

### 2. The Third Amended Counterclaim Alleges No Abuse of Contractual Discretion Under *Carma*.

AHS also relies on *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 372 (1992), for the proposition that "[t]he covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." (Opp'n at 4:15–20). However, the Third Amended Counterclaim never alleges that NLMM exercised any contractual discretion in its purported bad faith, much less that any such discretion was abused to

---

claim, AHS cannot resurrect these pre-contract inducement theories through an implied covenant claim.

frustrate AHS's rights. Instead, AHS alleges only shortfalls in performing fixed, express duties under the Agreement such as staffing requirements, report turnaround times, and Medical Director services. Those obligations are prescribed in the Agreement in mandatory terms. (*See, e.g.*, Agreement, ECF No. 1-1, § 2.01(I) (staffing), § 2.02(G) (turnaround time expectations), § 2.03 (Medical Director)).[4] AHS pleads no facts suggesting NLMM exercised a contractual option or discretionary right by, for example, withholding true-up information or otherwise leveraging a contractually conferred choice to appropriate AHS's benefits.

### 3. AHS's "Improper Invoice" Argument Contradicts the Agreement's Express Terms.

Finally, the Opposition's refrain about "improper invoices" cannot fill the gap either. Paragraph 137's statement that NLMM's "contentions were made… in an effort to force AHS to pay its improper invoices" is a naked conclusion, not a factual averment. It also makes no sense under the Agreement's payment architecture, which required NLMM to issue the first four invoices for Vista at a fixed monthly amount subject to reconciliation through the Collection Adjustment and semi-annual True-Up processes. (Agreement, § 5.02.A.6; *see also* § 9.02.B (providing notice-and-cure procedures that could address performance concerns)). Contractually mandated invoices are not "improper" merely because AHS disagrees with performance, particularly where the Agreement provides specific mechanisms to address that disagreement. Indeed, as the California Supreme Court stated in *Carma*: "We are aware of no reported case in which a court has held the covenant of good faith may

---

[4] "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

be read to prohibit a party from doing that which is expressly permitted by an agreement." *Carma*, 2 Cal. 4th at 374.

Accordingly, AHS cannot amend its pleading by opposition brief to conjure a "scheme" where none is pled. *See Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, at *2 (N.D. Cal. July 25, 2013) ("Plaintiffs cannot unilaterally use their Opposition as an opportunity to amend and raise new arguments to cure deficiencies in their Complaint."). Evaluated on the four corners of the Third Amended Counterclaim, AHS's implied covenant claim alleges the same purported shortcoming in staffing that animates its breach of contract claim. As addressed below and in NLMM's moving papers, that sort of duplication is superfluous and the Court should dismiss the implied covenant claim on that basis.

### B. AHS's Conclusory Allegations Cannot Transform its Breach of Contract Allegations Into an Implied Covenant Claim.

"[I]f the plaintiff's allegations of breach of the covenant of good faith do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1213–14 (9th Cir. 2024) (internal quotation marks omitted) (quoting *Bionghi v. Metro. Water Dist. of So. California*, 70 Cal. App. 4th 1358, 1370 (1999)); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (same).

"There are three exceptions to this rule: (1) where a breach of a consensual contract claim is not alleged ...; (2) where the plaintiff is seeking recovery in tort…; and (3) where the plaintiff alleges that the defendant acted in bad faith to frustrate the contract's benefits." *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (citations omitted).

AHS invokes the third exception for "bad faith" frustration of contractual benefits, but its pleading does not plausibly bring the claim within that narrow

category. An implied covenant claim cannot "be stated through conclusory allegations as to the bad faith of the defendant." *Soundgarden v. UMG Recordings, Inc.*, No. LACV1905449JAKJPRX, 2020 WL 1815855, at *17 (C.D. Cal. Apr. 6, 2020) (Kronstadt, J.) "Instead, plaintiffs must plead facts showing bad faith and demonstrating a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act." *Id.* (quoting *Env't Furniture, Inc. v. Bina*, No. CV 09-7978 PSG JCX, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010)).

Here, AHS alleges that "NLMM frustrated AHS through its unreasonable and bad faith conduct in its refusal to properly staff the positions required by the MSA, while it contended that it was doing so." (Third Am. Countercl. ¶ 137.) This, however, is the same conduct underlying the breach of contract claim, which alleges that "NLMM failed to provide and maintain a sufficient number of Physicians with appropriate clinical privileges" (*id.* ¶ 126) and "consistently had trouble fulfilling their duty to provide 2.5 FTE physicians" (*id.* ¶ 128). Adding the word "refusal" and merely alleging that NLMM "contended" it was meeting obligations does not transform a breach of express staffing requirements into bad faith frustration of contract benefits. Moreover, as discussed above, AHS's own allegations negate any inference of bad faith "refusal." (*see supra*, § II.A.2; Third Am. Countercl. ¶ 102 ("NLMM would send in temporary doctors"); ¶ 111 ("NLMM … had to provide numerous amount of doctors who would fill in"); ¶ 115 ("NLMM admitted that they needed to improve their services")). These allegations do not plausibly suggest the "conscious and deliberate acts" necessary to satisfy the bad faith exception. *Soundgarden*, 2020 WL 1815855, at *17.

Moreover, the conclusory assertion that NLMM's "contentions were made without any basis, and in an effort to force AHS to pay its improper invoices" (Third Am. Countercl. ¶ 137) adds nothing. This bare legal conclusion, unsupported by any facts showing that NLMM acted with intent to deceive or engaged in conduct

designed to deprive AHS of benefits beyond those secured by the express staffing provisions, cannot save AHS's duplicative claim.

Paragraph 138 is equally conclusory, offering only boilerplate recitations that NLMM's conduct "violated the implied covenant," "depriv[ed] AHS of the full benefits it reasonably anticipated," and was "objectively unreasonable and inconsistent with AHS' justified expectations." (Third Am. Countercl. ¶ 138.) These are textbook legal conclusions that merely parrot the legal standard for an implied covenant claim without any supporting facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Critically, paragraph 138 fails to identify what "full benefits" AHS was deprived of beyond the express staffing requirements, how NLMM's conduct was "objectively unreasonable" apart from the alleged breach, or what "justified expectations" existed outside the Agreement's express terms. Without factual content giving these legal conclusions plausibility, paragraph 138 cannot distinguish the implied covenant claim from the breach of contract claim.

The implied covenant is not a vehicle for punitive re-labeling of breach of contract theories—it exists to fill contractual gaps, not multiply claims. Thus, because AHS's implied covenant claim and breach of contract claim both challenge NLMM's alleged failure to provide required staffing under the Agreement, and because AHS's conclusory allegations fail to establish the conscious and deliberate frustration of contractual benefits necessary to invoke the bad faith exception, the Court should dismiss the implied covenant claim as superfluous.

**C.     Rule 15 Does Not Excuse AHS's Addition of a Claim NLMM Never Agreed To.**

AHS also relies on the liberal standard for granting leave to amend set forth in Federal Rule of Civil Procedure 15. But that misses the point. NLMM does not dispute that Rule 15 favors amendment; rather, NLMM objects to AHS's bait-and-switch

tactics that forced NLMM to choose between accepting an undisclosed claim or derailing these proceedings further.

During the parties' August 15, 2025 meet-and-confer regarding AHS's Second Amended Counterclaim, NLMM agreed not to oppose substitution of a breach of contract claim for AHS's now-abandoned fraud claim. (Tiraturyan Decl. ISO Mot. to Dismiss, ECF No. 78-1, ¶ 3.) AHS's counsel confirmed that understanding on August 29, 2025, expressly stating that AHS would be "amending the counter claim to substitute in a breach of contract claim for the promissory fraud claim." (*Id.* ¶ 5, Ex. A at 6.) That was the agreement. No mention was made of adding an implied covenant claim. Yet, on September 4, 2025 (the eve of NLMM's deadline to respond to the Second Amended Counterclaim), AHS sent over a proposed Third Amended Counterclaim that, for the first time, included a breach of implied covenant claim. (*Id.* ¶¶ 6–10, Ex. A at 2.) NLMM thus faced an untenable choice: reject the stipulation and respond to the Second Amended Counterclaim on one day's notice after reasonably relying on AHS's representations, or accept the exceeded scope to avoid further delay and the greater prejudice. NLMM chose the latter.

AHS's argument that the Court's Order authorized filing "in its entirety as drafted" (Opp'n at 7:12-13), while true, is disingenuous. The Court approved what was before it. However, NLMM is now forced to defend an additional, legally defective claim simply because AHS obscured the scope of its intended amendment and then—whether intentionally or by happenstance—exploited timing constraints to slip in an undisclosed claim.

### III.  CONCLUSION

For the foregoing reasons, and for the reasons set forth in NLMM's moving papers, the Court should dismiss AHS's Second Claim for Relief for breach of the implied covenant of good faith and fair dealing with prejudice.

DATED: October 6, 2025        FROST LLP

By: _____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
RACHEL DUBOFF
Attorneys for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Northern Light Medical Management, LLC certifies that this brief contains 2,567 words, which complies with the word limit set forth in Section 9.d. of this Court's Initial Standing Order.

DATED: October 6, 2025        FROST LLP

By: _____
DAVID TIRATURYAN
Attorney for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC

# CERTIFICATE OF COMPLIANCE

I hereby certify that on October 6, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically generate and send notice of this filing to all attorneys of record who have appeared in this case and who are registered users of the Court's CM/ECF system. Parties may access this filing through the Court's electronic filing system.

DATED: October 6, 2025        FROST LLP

By: _____
DAVID TIRATURYAN
Attorney for Plaintiff and Counter-Defendant
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC